## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 20-31973 (MI)** |
| | § | |
| **CARBO CERAMICS INC.**, *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

### DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Paul E. Heath (TX 09355050)
Matthew W. Moran (TX 24002642)
Garrick C. Smith (TX 24088435)
Matthew D. Struble (TX 24102544)
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201

David S. Meyer (admitted *pro hac vice*)
Michael A. Garza (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
The Grace Building
1114 Avenue of the Americas
New York, New York  10036-7708

**PROPOSED COUNSEL FOR THE DEBTORS**

**Dated: April 8, 2020**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. (0013); StrataGen, Inc. (5205); and Asset Guard Products Inc. (6422).  The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is:  575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

US 6918838

# TABLE OF CONTENTS

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION**
**OF TIME, AND GOVERNING LAW** ........................................................................1

| | | |
|---|---|---|
| A. | *Defined Terms* .......................................................................................1 |
| B. | *Rules of Interpretation* ........................................................................14 |
| C. | *Computation of Time* ...........................................................................14 |
| D. | *Governing Law* .....................................................................................14 |
| E. | *Reference to Monetary Figures* ............................................................15 |
| F. | *Reference to the Debtors or the Reorganized Debtors* ..........................15 |
| G. | *Consent Rights of the Supporting Lenders* ...........................................15 |
| H. | *Controlling Document* ..........................................................................15 |

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,**
**AND PRIORITY CLAIMS** ....................................................................................15

| | | |
|---|---|---|
| A. | *Administrative Claims* ..........................................................................16 |
| B. | *Professional Compensation* ..................................................................16 |
| C. | *DIP Facility Claims* ..............................................................................17 |
| D. | *Priority Tax Claims* ..............................................................................18 |
| E. | *Statutory Fees* ......................................................................................18 |

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........18

| | | |
|---|---|---|
| A. | *Summary of Classification* ....................................................................18 |
| B. | *Treatment of Claims and Interests* ........................................................19 |
| C. | *Special Provision Governing Unimpaired Claims* ................................22 |
| D. | *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* ....22 |
| E. | *Elimination of Vacant Classes* .............................................................23 |
| F. | *Subordinated Claims* ............................................................................23 |
| G. | *Right to Convert any Chapter 11 Case* .................................................23 |

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN** ..........................................23

| | | |
|---|---|---|
| A. | *Sources of Plan Consideration* .............................................................23 |
| B. | *Restructuring Transactions* ..................................................................25 |
| C. | *Vesting of Assets in the Reorganized Debtors* ......................................25 |
| D. | *Plan Administrator and Liquidating Trust* ...........................................26 |
| E. | *U.S. Federal Income Tax Treatment of the Liquidating Trust for the* *Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations* ..............28 |
| F. | *Corporate Action* .................................................................................29 |
| G. | *Continued Corporate Existence* ...........................................................30 |
| H. | *Cancellation of Existing Securities and Agreements* ............................30 |
| I. | *New Organizational Documents* ...........................................................31 |
| J. | *Directors and Officers of the Reorganized Debtors* .............................32 |

i

|   |   |   |
|---|---|---|
| K. | *Effectuating Documents; Further Transactions* | 32 |
| L. | *Exemption from Certain Taxes and Fees* | 32 |
| M. | *Exemption from Registration Requirements* | 32 |
| N. | *Preservation of Causes of Action* | 33 |
| O. | *Director and Officer Liability Insurance* | 34 |
| P. | *Retiree Benefits* | 34 |

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 34**

|   |   |   |
|---|---|---|
| A. | *Assumption and Rejection of Executory Contracts and Unexpired Leases* | 34 |
| B. | *Claims Based on Rejection of Executory Contracts or Unexpired Leases* | 35 |
| C. | *Cure of Defaults and Objections for Assumed Executory Contracts and Unexpired Leases* | 35 |
| D. | *Indemnification Obligations* | 36 |
| E. | *Insurance Policies* | 37 |
| F. | *Modifications, Amendments, Supplements, Restatements, or Other Agreements* | 37 |
| G. | *Reservation of Rights* | 37 |
| H. | *Nonoccurrence of Effective Date* | 37 |
| I. | *Contracts and Leases Entered into After the Petition Date* | 37 |

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 38**

|   |   |   |
|---|---|---|
| A. | *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions* | 38 |
| B. | *Disbursing Agent* | 39 |
| C. | *Delivery of Distributions and Unclaimed Property* | 39 |
| D. | *Distributions on Account of Claims Allowed After the Effective Date* | 41 |
| E. | *Compliance with Tax Requirements* | 41 |
| F. | *Surrender of Cancelled Instruments or Securities* | 41 |
| G. | *Allocations* | 41 |
| H. | *No Postpetition Interest on Claims* | 41 |
| I. | *Setoffs and Recoupment* | 41 |
| J. | *Claims Paid or Payable by Third Parties* | 42 |

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS ...................................................................... 43**

|   |   |   |
|---|---|---|
| A. | *Allowance of Claims and Interests* | 43 |
| B. | *Claims and Interests Administration Responsibilities* | 43 |
| C. | *Estimation of Claims* | 43 |
| D. | *Adjustment to Claims Without Objection* | 44 |
| E. | *Disallowance of Claims* | 44 |
| F. | *No Distributions Pending Allowance* | 44 |
| G. | *Distributions After Allowance* | 45 |
| H. | *Single Satisfaction of Claims* | 45 |

US 6918838

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...................45**
    A.    *Compromise and Settlement of Claims, Interests, and Controversies*...................45
    B.    *Discharge of Claims and Termination of Interests*................................................45
    C.    *Term of Injunctions or Stays*................................................................................46
    D.    *Release of Liens* ...................................................................................................46
    E.    *Releases by the Debtors* .......................................................................................46
    F.    *Releases by Holders of Claims and Interests*........................................................48
    G.    *Exculpation* ..........................................................................................................49
    H.    *Injunction* .............................................................................................................50
    I.    *Protection Against Discriminatory Treatment*......................................................50
    J.    *Recoupment* ..........................................................................................................50
    K.    *Subordination Rights* ...........................................................................................51
    L.    *Reimbursement or Contribution* ..........................................................................51

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THE PLAN ...........................................................................51**
    A.    *Conditions Precedent to Confirmation* ................................................................51
    B.    *Conditions Precedent to the Effective Date* .........................................................51
    C.    *Waiver of Conditions* ...........................................................................................53
    D.    *Substantial Consummation* ...................................................................................53
    E.    *Effect of Non-Occurrence of Conditions to the Confirmation Date or the*
          *Effective Date* .......................................................................................................53

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .......................53**
    A.    *Modification and Amendments* .............................................................................53
    B.    *Effect of Confirmation on Modifications* ..............................................................53
    C.    *Revocation or Withdrawal of the Plan*.................................................................54

**ARTICLE XI.**
**RETENTION OF JURISDICTION .............................................................................54**

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS.............................................................................56**
    A.    *Immediate Binding Effect* .....................................................................................56
    B.    *Additional Documents* ..........................................................................................56
    C.    *Reservation of Rights* ...........................................................................................57
    D.    *Successors and Assigns* ........................................................................................57
    E.    *Service of Documents*...........................................................................................57
    F.    *Term of Injunctions or Stays* ...............................................................................58
    G.    *Entire Agreement* .................................................................................................58
    H.    *Exhibits* ................................................................................................................58
    I.    *Nonseverability of Plan Provisions* ......................................................................58
    J.    *Votes Solicited in Good Faith* ..............................................................................58

US 6918838

K.  *Dissolution of any Committee* ................................................................................59
L.  *Request for Expedited Determination of Taxes* ...................................................59
M.  *Closing of Chapter 11 Cases* ...............................................................................59
N.  *No Stay of Confirmation Order* ............................................................................59
O.  *Waiver or Estoppel* ..............................................................................................59

US 6918838

## INTRODUCTION

CARBO Ceramics Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases jointly propose this chapter 11 plan of reorganization. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof or the Bankruptcy Code or Bankruptcy Rules. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, projections of future operations, and prepetition sale process, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "***Administrative and Priority Claims Reserve***" means a reserve to be funded by the applicable Supporting Lenders in a reasonable and appropriate amount, which amount shall be subject to the Supporting Lenders' approval in their sole discretion, for the payment of Administrative Claims pursuant to Article II.A, Priority Tax Claims pursuant to Article II.D, and Other Priority Claims in Class 1.

2.    "***Administrative Claim***" means a Claim (other than DIP Facility Claims) for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.    "***Administrative Claims Bar Date***" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

4.    "***Affiliate***" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

US 6918838

5.      "*Allowed*" means with respect to any Claim:  (a) any Claim, proof of which is timely Filed on or before the applicable Bar Date (or that pursuant to the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Court (including pursuant to any stipulation approved by the Court); *provided that* with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court or such an objection is so interposed and the Claim has been Allowed by a Final Order; *provided further* that any Claim described in clauses (a), (b), and (c) above shall not include any Claim on account of a right, option, warrant, right to convert, or other right to purchase an Interest. Except as otherwise specified in the Plan or an order of the Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  Any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely Filed, is not considered Allowed and is hereby expunged without further action and without any further notice to or action, order, or approval of the Court.

6.      "*Asset Guard*" means Asset Guard Products Inc., a Delaware corporation and a Debtor in the Chapter 11 Cases.

7.      "*Asset Guard Interests*" means all Interests in Asset Guard prior to the Effective Date.

8.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court other than the Local Rules.

11.      "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the General Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

12.      "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).  For the avoidance of doubt, any day that would otherwise constitute a Business Day notwithstanding any shelter in place or similar order resulting from the COVID-19 crisis shall nonetheless be a Business Day.

13.      "*CARBO*" means CARBO Ceramics Inc., a Delaware corporation and a Debtor in the Chapter 11 Cases.

14.　　"***CARBO Interests***" means all Interests in CARBO prior to the Effective Date.

15.　　"***Cash***" means the legal tender of the United States of America or the equivalent thereof.

16.　　"***Causes of Action***" means any action, claim, cause of action, controversy, third-party claim, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law.  For the avoidance of doubt, a "Cause of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including any Avoidance Action; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

17.　　"***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court; and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Court.

18.　　"***Claim***" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

19.　　"***Claims Register***" means the official register of Claims against and Interests in the Debtors maintained by the Notice and Claims Agent.

20.　　"***Class***" means a category of Claims against or Interests in the Debtors as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.　　"***Committee***" means any official committee (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

22.　　"***Confirmation***" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

23.　　"***Confirmation Date***" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

24.　　"***Confirmation Hearing***" means the hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

US 6918838

25.     "**_Confirmation Order_**" means the order of the Court, in form and substance acceptable to the Debtors and the Supporting Lenders in all respects, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "**_Consummation_**" means the occurrence of the Effective Date.

27.     "**_Court_**" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

28.     "**_Cure Claim_**" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

29.     "**_D&O Liability Insurance Policies_**" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy" or other fiduciary policy) of any of the Debtors with respect to directors, managers, officers, and employees of any of the Debtors.

30.     "**_Debtors_**" means, collectively, the following:  CARBO, StrataGen, and Asset Guard.

31.     "**_Definitive Documentation_**" means the definitive documents and agreements governing the Restructuring Transactions and shall include:  (a) the Plan (and all exhibits thereto) and the Confirmation Order; (b) the Disclosure Statement; (c) the solicitation materials with respect to the Plan; (d) the Liquidating Trust Agreement; (e) the New Organizational Documents (f) the Exit Facility Documents, if applicable; and (g) any other documents included in the Plan Supplement.  Any document that is included within this definition of "Definitive Documentation," including any amendment, supplement, or modification thereof, shall contain terms and conditions consistent with the Restructuring Support Agreement and shall each be in form and substance acceptable to the Debtors and the Supporting Lenders in all respects.

32.     "**_DIP Credit Agreement_**" means that certain _Senior Secured Super Priority Debtor-in-Possession Credit Agreement_ dated as of March 30, 2020 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

33.     "**_DIP Facility_**" means the senior secured superpriority multiple draw term loan facility provided by the DIP Lenders on the terms and conditions set forth in the DIP Facility Documents.

34.     "**_DIP Facility Claim_**" means any Claim held by the DIP Lenders arising under or related to the DIP Facility on account of the loans made thereunder and associated fees.

35.     "**_DIP Facility Documents_**" means the DIP Credit Agreement and all other agreements, documents, instruments, and amendments related thereto, including the DIP Orders

4

and any guaranty agreements, pledge and collateral agreements, Uniform Commercial Code financing statements or other perfection documents, intercreditor agreements, subordination agreements, fee letters, and any other security agreements.

36.     "*DIP Facility Treatment Election*" has the meaning set forth in Article II.C hereof.

37.     "*DIP Lenders*" means the lenders party to the DIP Facility from time to time.

38.     "*DIP Lender/Prepetition Lender Equity Distribution*" means 100% of the Reorganized CARBO Interests, such Interests to be issued and outstanding pursuant to this Plan on the Effective Date.

39.     "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

40.     "*Disallowed*" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed.

41.     "*Disbursing Agent*" means, as applicable, (a) the Debtors, solely with respect to distributions that are required to be made on the Effective Date or thereafter by the Debtors or the Reorganized Debtors as contemplated under the Plan, (b) the Plan Administrator, solely with respect to the GUC Cash Pool and any amounts to be distributed from the Liquidating Trust, or (c) any Person or Entity designated or retained by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, in their sole discretion and without the need for further order of the Court.

42.     "*Disclosure Statement*" means the disclosure statement for the Plan, as may be amended, supplemented, or modified from time to time in accordance with the Restructuring Support Agreement, including all exhibits and schedules thereto, which is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

43.     "*Disputed*" means, with respect to any Claim or Interest, that such Claim or Interest is not yet Allowed.

44.     "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims are eligible to receive distributions hereunder, which, unless otherwise specified, shall be the Confirmation Date or such other date as designated in a Final Order of the Court.

45.     "*Effective Date*" means the date that is a Business Day selected by the Debtors, in consultation with the Supporting Lenders, on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan becomes effective.

46.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

47.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

48.     "**_Exculpated Party_**" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each Released Party; (d) the Committee and the current and former members of the Committee; and (e) with respect to each of the foregoing parties under (a) through (d), such party and each of its Affiliates, predecessors, successors, assigns, subsidiaries, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' or Entities' respective heirs, executors, estates, and nominees, in each case solely in their capacity as such.

49.     "**_Executory Contract_**" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.     "**_Exit Facility_**" means, if applicable, a senior secured term loan facility in an aggregate amount equal to the amount each Holder of a DIP Facility Claim elects to convert into loans under the Exit Facility pursuant to Article II.C, such facility to be on the terms and conditions set forth in the Exit Facility Term Sheet and otherwise acceptable to the Debtors and the Supporting Lenders in all respects.

51.     "**_Exit Facility Documents_**" means, if applicable, the credit agreement and all other agreements, documents, instruments, and amendments related thereto, including any guarantee agreements, pledge and collateral agreements, Uniform Commercial Code financing statements or other perfection documents, intercreditor agreements, subordination agreements, fee letters, and any other security agreements with respect to the Exit Facility, each of which shall be in form and substance acceptable to the Debtors and the Exit Facility Lenders.

52.     "**_Exit Facility Lenders_**" means the lenders party to the Exit Facility, if any, from time to time.

53.     "**_Exit Facility Term Sheet_**" means, if applicable, that certain term sheet, in form and substance acceptable to the Exit Facility Lenders in all respects, filed in the Plan Supplement and incorporated herein by reference.

54.     "**_Federal Judgment Rate_**" means the federal judgment rate in effect as of the Petition Date, compounded annually.

55.     "**_File_**," "**_Filed_**," or "**_Filing_**" means file, filed, or filing in the Chapter 11 Cases with the Court or, with respect to the filing of a Proof of Claim or proof of Interest, with the Notice and Claims Agent or the Court through the PACER or CM/ECF website.

56.     "**_Final DIP Order_**" means the order of the Court authorizing, among other things, on a final basis, the Debtors to enter into the DIP Facility Documents and incur postpetition obligations under the DIP Facility.

57.     "**_Final Order_**" means (a) an order or judgment of the Court, as entered on the docket in any of the Chapter 11 Cases (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of)

6

any order or judgment entered by the Court (or any other court of competent jurisdiction, including in an appeal taken) in any of the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

58.     "*General Bar Date*" means the date to be set by the Court as the last date for Filing a Proof of Claim.

59.     "*General Unsecured Claim*" means, with respect to a Debtor, any Unsecured Claim against such Debtor (including, for the avoidance of doubt, the Prepetition Lender Deficiency Claims and any Claim arising from the rejection of an Executory Contract or Unexpired Lease) that is not otherwise paid in full or otherwise satisfied during the Chapter 11 Cases pursuant to an order of the Court, other than a Professional Fee Claim, an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, or an Intercompany Claim.

60.     "*Governmental Bar Date*" means the date that is the 180th day after the Petition Date.

61.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

62.     "*GUC Cash Pool*" means Cash to be contributed by one or more of the Supporting Lenders in an amount equal to the sum of (a) $500,000, to be allocated to fund distributions to the Holders of Allowed General Unsecured Claims against CARBO, and  (b)(i) the lesser of (x) $1,500,000 and (y) such amount as is necessary to render all Allowed General Unsecured Claims against Asset Guard and StrataGen Unimpaired, or (ii) in the Supporting Lenders' sole discretion, such higher amount as necessary to render all Allowed General Unsecured Claims against Asset Guard and StrataGen Unimpaired.  At the DIP Lenders' election, and in their sole discretion, all or a portion of the GUC Cash Pool may be funded with any unused Commitments (as defined in the DIP Credit Agreement) under the DIP Facility as of immediately prior to the Effective Date; *provided* that notwithstanding the foregoing, and for the avoidance of doubt, the funding in full of the GUC Cash Pool shall be the responsibility of the applicable Supporting Lenders and is a condition precedent to the occurrence of the Effective Date, as set forth in Article IX.B.10 hereof.

63.     "*GUC Cash Pool Account*" means an interest bearing account with a banking institution selected by the Debtors, in consultation with the Supporting Lenders and the Committee, if any, established no later than two Business Days prior to the Effective Date and

funded by the applicable Supporting Lenders on the Effective Date in the amount of the GUC Cash Pool.

64.    "*Holder*" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

65.    "*Impaired*" means, with respect to a Class of Claims or Interests, such Class of Claims or Interests is not Unimpaired.

66.    "*Indemnification Obligations*" means each of the Debtors' indemnification obligations for the current and former directors, managers, and officers of the Debtors, whether set forth in the Debtors' bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts.

67.    "*Intercompany Claim*" means any Claim held against one Debtor by another Debtor.

68.    "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

69.    "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests or units of any Debtor, including any options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

70.    "*Interim Compensation Order*" means the order to be entered by the Court establishing procedures for compensation of Professionals.

71.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 37].

72.    "*Internal Revenue Code*" means title 26 of the United States Code, 26 U.S.C. §§ 1–9834.

73.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

75.    "*Liquidating Trust*" means that certain trust to be established on the Effective Date for the benefit of the Holders of Allowed General Unsecured Claims.

US 6918838

76.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to this Plan, substantially in the form filed as part of the Plan Supplement.

77.    "*Liquidating Trust Assets*" means (i) the Liquidating Trust Expense Reserve, (ii) the Avoidance Actions not otherwise released under the Plan, and (iii) the GUC Cash Pool Account.  For the avoidance of doubt, no Avoidance Actions released pursuant to Article VIII of the Plan shall be included in the Liquidating Trust Assets.

78.    "*Liquidating Trust Expense Reserve*" means $100,000 of Cash to be funded by the applicable Supporting Lenders to the Liquidating Trust on the Effective Date to allow the Plan Administrator to maintain the Liquidating Trust Assets and to comply with the Plan Administrator's obligations under the Plan.

79.    "*Liquidating Trust Interest*" means a beneficial interest in the Liquidating Trust issued to Holders of Allowed General Unsecured Claims on the Effective Date on account of such Claims.

80.    "*List of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall be included in the Plan Supplement.  For the avoidance of doubt, the List of Retained Causes of Action shall not include any Causes of Action against any Released Parties.

81.    "*Local Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas.

82.    "*New Board*" means the board of directors of Reorganized CARBO appointed by the Supporting Lenders effective as of the Effective Date.

83.    "*New Organizational Documents*" means the form of the certificates or articles of incorporation, certificates of formation, bylaws, operating agreements, or such other applicable formation, organizational, and governance documents of each of the Reorganized Debtors, which shall be in form and substance acceptable to the Supporting Lenders in all respects.

84.    "*Notice and Claims Agent*" means Epiq Corporate Restructuring, LLC, the notice, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases, or its successor in that capacity.

85.    "*Other Priority Claim*" means any Claim against a Debtor other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such claim has not already been paid during the Chapter 11 Cases.

86.    "*Other Secured Claim*" means any Secured Claim other than the Prepetition Lender Secured Claims.

87.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

9

88.    "*Petition Date*" means March 29, 2020, the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases.

89.    "*Plan*" means this chapter 11 plan of reorganization, as the same may be further amended, supplemented, or modified from time to time in accordance with the terms hereof and the terms of the Restructuring Support Agreement, including the Plan Supplement and all exhibits, supplements, appendices, and schedules thereto, each of which shall be in form and substance acceptable to the Debtors and the Supporting Lenders in all respects.

90.    "*Plan Administrator*" means the Person selected by the Debtors, with the consent of the Supporting Lenders, who shall act as the trustee of the Liquidating Trust and shall be responsible for reconciling General Unsecured Claims after the Effective Date, effectuating distributions on account thereof from the GUC Cash Pool, and providing all related services as set forth in Article IV.D of the Plan.

91.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement), each of which shall be in form and substance acceptable to the Debtors and the Supporting Lenders in all respects, to be Filed by the Debtors no later than three Business Days before the deadline to File objections to the Plan, including the following, as applicable:  (a) the Liquidating Trust Agreement; (b) the New Organizational Documents; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the identity of the members of the New Board and the officers of Reorganized CARBO as of the Effective Date; (e) the List of Retained Causes of Action; (f) the Exit Facility Documents, if applicable; and (g) any other documentation necessary or advisable to effectuate the Restructuring Transactions or that is contemplated by the Plan.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date solely in accordance with, and to the extent permitted by, the Restructuring Support Agreement.

92.    "*Prepetition Agent*" means Wilks Brothers, LLC, in its capacity as administrative agent under the Prepetition Credit Agreement.

93.    "*Prepetition Credit Agreement*" means that certain Amended and Restated Credit Agreement, dated as of March 2, 2017, as amended by that certain First Amendment to Amended and Restated Credit Agreement, dated as of June 7, 2018, and that certain Second Amendment to Amended and Restated Credit Agreement and Joinder, dated as of June 20, 2019, by and among CARBO, as borrower, the guarantors party thereto, the Prepetition Lenders, and the Prepetition Agent.

94.    "*Prepetition Credit Documents*" means the Prepetition Credit Agreement and all other agreements, documents, instruments, and amendments related thereto, including any guarantee agreements, pledge and collateral agreements, Uniform Commercial Code financing statements or other perfection documents, intercreditor agreements, subordination agreements, fee letters, and any other security agreements.

95.    "*Prepetition Lenders*" means the lenders party to the Prepetition Credit Agreement.

10

96.     "**Prepetition Lender Claim**" means any Claim against the Debtors arising under the Prepetition Credit Documents.

97.     "**Prepetition Lender Deficiency Claim**" means any Unsecured deficiency Claim arising under the Prepetition Credit Documents, which is hereby deemed an Allowed Class 4 General Unsecured Claim against each Debtor and which the Prepetition Lenders, with the consent of the Debtors, have agreed to limit to $[_____], solely for purposes of voting and distributions with respect to Class 4.

98.     "**Prepetition Lender Secured Claim**" means any Secured Claim arising under the Prepetition Credit Documents.

99.     "**Prepetition Loan Obligations**" means, collectively, (i) the aggregate principal amount owed under the Prepetition Credit Documents, *plus* (ii) any fees, expenses, and other amounts required to be paid or reimbursed by the Debtors under the Prepetition Credit Documents.

100.    "**Priority Tax Claim**" means any Claim entitled to priority, whether Secured or Unsecured, against a Debtor of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

101.    "**Pro Rata**" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

102.    "**Professional**" means an Entity employed pursuant to a Final Order of the Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

103.    "**Professional Fee Claims**" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Court.  To the extent the Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Professional Fee Claim.

104.    "**Professional Fee Escrow Account**" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date pursuant to Article II.B.

105.    "**Professional Fee Reserve Amount**" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.3.

106.    "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

11

107.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

108.    "*Released Party*" means each of the following:  (a) the Debtors; (b) each Debtors' respective current and former officers, directors, managers, and employees, each solely in their capacity as such and not in any other capacity, including as a holder of any notes issued by a Debtor; (c) the Reorganized Debtors; (d) the Prepetition Agent and the Prepetition Lenders, solely in their capacity as such; (e) the DIP Lenders, solely in their capacity as such; (f) the Committee and the current and former members of the Committee, solely in their capacity as such; and (g) with respect to each of the foregoing parties under (a) through (f), such party and each of its Affiliates, predecessors, successors, assigns, subsidiaries, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' or Entities' respective heirs, executors, estates, and nominees, in each case solely in their capacity as such.  Notwithstanding the foregoing, any Person or Entity that opts out of the releases set forth in Article VIII.F of the Plan shall not be a Released Party.

109.    "*Releasing Party*" means each of the following solely in its capacity as such: (a) the Holders of all Claims or Interests that vote to accept the Plan; (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; (c) the Holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein; (d) the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (e) the Released Parties.

110.    "*Reorganized Asset Guard*" means Asset Guard or any successor thereto, by merger, consolidation, or otherwise on or after the Effective Date.

111.    "*Reorganized Asset Guard Interests*" means the Interests in Reorganized Asset Guard to be preserved, retained and outstanding pursuant to the Plan on the Effective Date, which Interests will be reinstated and retained by Reorganized CARBO on the Effective Date.

112.    "*Reorganized CARBO*" means CARBO or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

113.    "*Reorganized CARBO Interests*" means the Interests in Reorganized CARBO to be issued and outstanding pursuant to the Plan on the Effective Date.

114.    "*Reorganized Debtors*" means, collectively, Reorganized CARBO, Reorganized Asset Guard, and Reorganized StrataGen.

115.    "*Reorganized StrataGen*" means StrataGen or any successor thereto, by merger, consolidation, or otherwise on or after the Effective Date.

116.    "*Reorganized StrataGen Interests*" means the Interests in Reorganized StrataGen to be preserved, retained, and outstanding pursuant to the Plan on the Effective Date, which Interests will be reinstated and retained by Reorganized CARBO on the Effective Date.

117.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated March 28, 2020, by and among the Debtors and the Supporting Lenders, as amended, modified, or supplemented, from time to time.

118.    "*Restructuring Transactions*" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, or contemplated by the Restructuring Support Agreement and the Plan, including the Plan Supplement.

119.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected  by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date, which schedule shall be subject to the consent of the Supporting Lenders.

120.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

121.    "*Secured*" means, when referring to a Claim, a Claim that is:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

122.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

123.    "*Security*" or "*Securities*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

124.    "*StrataGen*" means StrataGen, Inc., a Delaware corporation and a Debtor in the Chapter 11 Cases.

125.    "*StrataGen Interests*" means all Interests in StrataGen prior to the Effective Date.

126.    "*Supporting Lenders*" has the meaning set forth in the Restructuring Support Agreement.

127.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

128.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, such Class consists of Claims or Interests that are "unimpaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

US 6918838

129.    "***Unsecured***" means, when referring to a Claim, a Claim that is not Secured.

130.    "***U.S. Trustee***" means the Office of the United States Trustee Region 7 for the Southern District of Texas.

131.    "***U.S. Trustee Fees***" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

132.    "***Voting Deadline***" means [_____], 2020 at 5:00 p.m. Prevailing Central Time.

133.    "***Voting Record Date***" means [_____], 2020.

B.      *Rules of Interpretation*

        For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan and the Restructuring Support Agreement; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Cases.

C.      *Computation of Time*

        Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

        Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State

US 6918838

of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* corporate, partnership, or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Consent Rights of the Supporting Lenders*

Notwithstanding anything herein to the contrary, any and all approval, consent, or similar rights of the Supporting Lenders set forth in the Restructuring Support Agreement, including with respect to the form and substance of the Plan and the Plan Supplement, the Definitive Documents, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.

H.      *Controlling Document*

Except as otherwise set forth herein or in the Confirmation Order, in the event of an inconsistency between the Plan, the Restructuring Support Agreement, the Disclosure Statement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

US 6918838

A.     *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the latest of:  (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided that* Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or their respective assets or property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date or such other date fixed by the Court.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim that is Allowed prior to the occurrence of the Effective Date.

B.     *Professional Compensation*

1.     <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Reorganized Debtors no later than 45 days after the Effective Date. Each such final request will be subject to approval by the Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, and once approved by the Court, shall be promptly paid from the Professional Fee Escrow Account up to its full Allowed amount.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of all Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be promptly paid by the Reorganized Debtors without any further action or order of the Court.

Except as otherwise provided in the Plan, Professionals may be paid in accordance with the Interim Compensation Order.

US 6918838

2.      Professional Fee Escrow Account

Immediately prior to the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  At the DIP Lenders' election, and in their sole discretion, all or a portion of the Professional Fee Reserve Amount may be funded with any unused Commitments (as defined in the DIP Credit Agreement) under the DIP Facility as of immediately prior to the Effective Date.  The Professional Fee Escrow Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals, including with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  The funds in the Professional Fee Escrow Account shall not be considered property of the Estates or of the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be turned over to the Reorganized Debtors without any further action or order of the Court.

3.      Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors in writing via email no later than five Business Days before the Effective Date, *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not timely provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  Notwithstanding anything to the contrary, the Debtors, subject to the approval of the Supporting Lenders, will determine the Professional Fee Reserve Amount.

4.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or Reorganized Debtors shall be authorized to, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred on or after the Effective Date by the Professionals (including any fees related to the preparation of Professional fee applications).  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Court.

C.      *DIP Facility Claims*

Notwithstanding anything to the contrary herein, on the Effective Date, in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of its DIP Facility

Claim, each Holder of a DIP Facility Claim shall, at its election and in its sole discretion, voluntarily: (i) receive, together with its recovery on account of its Allowed Prepetition Lender Secured Claim, its Pro Rata share of the DIP Lender/Prepetition Lender Equity Distribution; (ii) convert all of its DIP Facility Claims into the loans under the Exit Facility; and/or (iii) elect to receive any combination of (i) and (ii) (such election, a "**DIP Facility Treatment Election**"). Each Holder of a DIP Facility Claim shall submit its DIP Facility Treatment Election in writing to counsel for the Debtors no later than three Business Days before the Confirmation Hearing. Upon the indefeasible payment or satisfaction in Cash and/or in the form of the DIP Lender/Prepetition Equity Distribution and/or the loans under the Exit Facility, on the Effective Date, all Liens granted to secure the Allowed DIP Facility Claims shall be terminated and of no further force and effect.

D.     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

E.     *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall pay any and all such fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a final decree is issued, whichever occurs first. The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall File quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     *Summary of Classification*

Claims and Interests, except for Administrative Claims, Professional Fee Claims, Cure Claims, DIP Facility Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, and the classifications set forth in Classes 1 through 8 shall be deemed to apply separately to each Debtor. For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be 8

Classes for each Debtor); *provided that* any Class that is vacant as to a particular Debtor will be treated in accordance with Article III.E below.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Lender Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote |
| 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote |
| 7 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 8 | CARBO Interests | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Interests*

    1.    <u>Class 1 – Other Priority Claims</u>

        a.    *Classification*:  Class 1 consists of Other Priority Claims.

        b.    *Treatment*:    On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each Holder thereof shall receive, at the Debtors' election, either (i) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (ii) such other treatment as may be agreed to by such Holder and the Debtors.

        c.    *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of an Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan.

    2.    <u>Class 2 – Other Secured Claims</u>

        a.    *Classification*:  Class 2 consists of Other Secured Claims.

        b.    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Other Secured Claim, each Holder of such Claim shall receive, at the Debtors' election, either (i) Cash equal to the full Allowed amount of its

Other Secured Claim on the later of (x) the Effective Date and (y) the date payment on account of such Claim is due, (ii) Reinstatement of such Holder's Allowed Other Secured Claim, (iii) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such Holder, or (iv) such other treatment as may be agreed to by such Holder and the Debtors.

c.     *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of an Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims will not be entitled to vote to accept or reject the Plan.

3.     Class 3 – Prepetition Lender Secured Claims

a.     *Classification*:  Class 3 consists of the Prepetition Lender Secured Claims.

b.     *Allowance*:  On the Effective Date, the Prepetition Lender Claims in Class 3 shall be deemed Allowed in the amount of not less than $[_____].

c.     *Treatment*:   On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Prepetition Lender Secured Claim, each Holder of an Allowed Prepetition Lender Secured Claim shall receive, together with its recovery on account of its DIP Facility Claims (except to the extent that all or any portion of such DIP Facility Claims are converted into loans under the Exit Facility), its Pro Rata share of the DIP Lender/Prepetition Lender Equity Distribution.

d.     *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Prepetition Lender Secured Claims will be entitled to vote to accept or reject the Plan.

4.     Class 4 – General Unsecured Claims

a.     *Classification*:  Class 4 consists of all Allowed General Unsecured Claims.

b.     *Treatment*:   On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim against a Debtor shall receive its Pro Rata share of (i) the portion of the GUC Cash Pool allocated to Holders of Allowed General Unsecured Claims of such Debtor, pursuant to the Plan, and (ii) as applicable, the Liquidating Trust Interests to the extent allocated to Holders of Allowed General Unsecured Claims of such Debtor pursuant to the Plan.

For each Debtor as to which Class 4 General Unsecured Claims votes to accept the Plan, the Supporting Lenders will waive their right to a distribution on account of their respective Prepetition Lender Deficiency

20

Claims against such Debtor, and for each Debtor as to which Class 4 General Unsecured Claims votes to reject the Plan, the Supporting Lenders will retain their respective right to receive recovery on account of their Prepetition Lender Deficiency Claims against such Debtor. For the avoidance of doubt, the Supporting Lenders shall retain their right to vote on account of their respective Prepetition Lender Deficiency Claims.

c. *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed General Unsecured Claims will be entitled to vote to accept or reject the Plan.

5. Class 5 – Intercompany Claims

a. *Classification*: Class 5 consists of all Intercompany Claims.

b. *Treatment*: On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Intercompany Claim, each Intercompany Claim shall, at the Reorganized Debtors' election, be (i) Unimpaired and Reinstated or (ii) Impaired and cancelled and released without any distribution.

c. *Voting*: Intercompany Claims are either Unimpaired, in which case the Holders of such Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, no Holder of an Intercompany Claim will be entitled to vote to accept or reject the Plan.

6. Class 6 – Intercompany Interests

a. *Classification*: Class 6 consists of all Intercompany Interests.

b. *Treatment*: Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' election, shall be cancelled. No distribution shall be made on account of any Intercompany Interests.

To the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the Holders of the Reorganized CARBO Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, each Intercompany Interest shall continue to be owned by the Reorganized Debtor, the predecessor Entity of which owned such Intercompany Interest prior to the Effective Date.

US 6918838

c.   *Voting*:  Intercompany Interests are either Unimpaired, in which case the Holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, in which case the Holders of such Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, no Holder of an Intercompany Interest will be entitled to vote to accept or reject the Plan.

7.   <u>Class 7 – Section 510(b) Claims</u>

a.   *Classification*:  Class 7 consists of all Section 510(b) Claims.

b.   *Treatment*:  On the Effective Date, all Section 510(b) Claims shall be cancelled, released, discharged, and extinguished.  Holders of Section 510(b) Claims shall not receive any distribution on account thereof.  The Debtors believe that no Section 510(b) Claims exist.

c.   *Voting*:  Section 510(b) Claims are Impaired under the Plan.  Each Holder of a Section 510(b) Claim will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, no Holder of a Section 510(b) Claim will be entitled to vote to accept or reject the Plan.

8.   <u>Class 8 – CARBO Interests</u>

a.   *Classification*:  Class 8 consists of all CARBO Interests.

b.   *Treatment*:  On the Effective Date, all CARBO Interests shall be cancelled, released, discharged, and extinguished.  Holders of CARBO Interests shall not receive any distribution on account of such Interests.

c.   *Voting*:  CARBO Interests are Impaired under the Plan.  Each Holder of a CARBO Interest will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, no Holder of CARBO Interests will be entitled to vote to accept or reject the Plan.

C.   *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D.   *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the Filing of the Plan shall constitute a motion for such relief.

US 6918838

E.    *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Subordinated Claims*

Except as may be the result of the settlement described in Article VIII.A of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.    *Right to Convert any Chapter 11 Case*

The Debtors reserve the right, in consultation with the Supporting Lenders, to seek conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code at any time, including in the event that the vote of any Class of Claims or Interests at a particular Debtor would cause the Plan to fail with respect to such Debtor.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Sources of Plan Consideration*

The Debtors, the Reorganized Debtors, and/or the Plan Administrator, as applicable, shall fund distributions under the Plan as follows:

1.    <u>Cash on Hand/DIP Facility Borrowings</u>

On the Effective Date, the Debtors shall pay or otherwise provide for the funding of the Administrative and Priority Claims Reserve and shall make all other distributions required to be made by the Debtors under the Plan using Cash on hand as of the Effective Date, including Cash from operations and the proceeds of borrowings under the DIP Facility or the Exit Facility (as needed).  All remaining Cash on hand as of the Effective Date, after payment or funding of the Administrative and Priority Claims Reserve and all other distributions required to be made by the Debtors on the Effective Date, including Cash from operations and the proceeds of borrowings under the DIP Facility or the Exit Facility (as needed), but excluding the Cash funded into the (i) Professional Fee Escrow Account, (ii) GUC Cash Pool Account, and (iii) Liquidating Trust Expense Reserve, shall be retained by or transferred to, as applicable, the Reorganized Debtors. Cash payments to be made pursuant to the Plan will be made by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable.  The Reorganized Debtors will be entitled to

23

transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

2.    Issuance and Distribution of Reorganized CARBO Interests

On the Effective Date, Reorganized CARBO shall be authorized to and shall issue the Reorganized CARBO Interests in accordance with the terms of the Plan without the need for any further corporate action.  All of the Reorganized CARBO Interests, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of the Reorganized CARBO Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

3.    Exit Facility

On the Effective Date, the Reorganized Debtors may, at the election of the DIP Lenders, in their sole discretion pursuant to Article II.C, enter into the Exit Facility in accordance with the terms of the Exit Facility Term Sheet.  The Confirmation Order shall constitute approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Reorganized Debtors in connection therewith), and authorization for the Reorganized Debtors to enter into and perform under the Exit Facility Documents and such other documents as may be required or appropriate.

The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, whether under the Bankruptcy Code or other applicable non-bankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (including any Liens and security interests previously granted with respect to the Prepetition Credit Documents or the DIP Facility Documents that are deemed to be granted in accordance with the Exit Facility Documents) (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the

24

persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

B.      *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall undertake the Restructuring Transactions, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, sale, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (5) the issuance of securities, including the Reorganized CARBO Interests, which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (6) the execution and delivery of the Exit Facility Documents; (7) the execution and delivery of Definitive Documentation not otherwise included in the foregoing, if applicable; and (8) all other actions that the  Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1145(a) of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

C.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date:  (a) all property in each Estate, including all Causes of Action (other than Avoidance Actions), and any property acquired by any of the Debtors, in each case other than the Liquidating Trust Assets, shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances; and (b) the Liquidating Trust Assets shall vest in the Liquidating Trust, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action (other than Avoidance Actions) without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except with respect to Liens and security interests securing the Exit Facility or as otherwise provided for in the Plan, to the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or any administrative agent under the Exit Facility Documents that are necessary to cancel and/or extinguish such Liens and/or security interests.

After the Effective Date, the Reorganized Debtors may present Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors. The Court order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned and/or vested free and clear of. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

D.     *Plan Administrator and Liquidating Trust*

1.     <u>Plan Administrator</u>

Upon the Effective Date, (a) the applicable Supporting Lenders shall fund the GUC Cash Pool and (b) the Plan Administrator shall be appointed to reconcile General Unsecured Claims of each Debtor, effectuate distributions on account thereof from the GUC Cash Pool, and conduct all related services. The Plan Administrator, as a representative of the Debtors' Estates appointed under section 1123(b)(3)(B) of the Bankruptcy Code, shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) make distributions from the GUC Cash Pool as contemplated in the Plan, (b) establish and administer any necessary reserves from the GUC Cash Pool for Disputed General Unsecured Claims that may be required; and (c) object to Disputed General Unsecured Claims and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Court such Disputed General Unsecured Claims. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid solely from the Liquidating Trust Expense Reserve in accordance with the Liquidating Trust Agreement. The Reorganized Debtors shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties.

26

2.      Liquidating Trust

On the Effective Date, the Liquidating Trust will be formed with the primary purpose of liquidating the Liquidating Trust Assets and making distributions to Holders of Allowed General Unsecured Claims on account of their Liquidating Trust Interests.  The Liquidating Trust will be deemed created and effective without any further action by the Court or any party.  The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets as more fully set forth in the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets.

The Plan Administrator shall sign the Liquidating Trust Agreement and cause the Liquidating Trust to accept, on behalf of the holders of the Liquidating Trust Interests, the Liquidating Trust Assets; *provided*, *however*, that the Plan Administrator, on behalf of the Liquidating Trust, may abandon or otherwise not accept any assets that the Plan Administrator believes, in good faith, have no value to the Liquidating Trust.  Any assets so abandoned or otherwise not accepted by the Liquidating Trust shall not vest in the Liquidating Trust.  As of the Effective Date, all assets vested in the Liquidating Trust and all assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

On the Effective Date, the applicable Supporting Lenders shall fund the Liquidating Trust Expense Reserve, which reserve shall be included in the Liquidating Trust Assets.

3.      Certain Powers and Duties of the Liquidating Trust and Plan Administrator

The Plan Administrator shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) and shall continue to have all of the rights and powers granted to the Debtors and the Plan Administrator as set forth in this Plan and applicable non-bankruptcy law. The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to:  (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets; (b) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Liquidating Trust Assets; (d) calculate and implement distributions of Liquidating Trust Assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, the Avoidance Actions other than Avoidance Actions released pursuant to the terms of this Plan; and (f) resolve issues involving General Unsecured Claims after the Effective Date.

All expenses incurred by the Liquidating Trust and the Plan Administrator shall be the sole responsibility of and paid by the Liquidating Trust, in accordance with the Liquidating Trust Agreement.

In no event later than three months after the Effective Date, and on a quarterly basis thereafter until all Cash held by the Liquidating Trust has been released or paid out in accordance

27

with the Plan, the Plan Administrator shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Plan Administrator under the Plan through each applicable reporting period.

E.      *U.S. Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations*

For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a "liquidating trust" under Treasury Regulation Section 301.7701-4(d). Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective interests therein) and then contributed such interests to the Liquidating Trust.

1.      <u>Liquidating Trust Assets Treated as Owned by Beneficiaries of Liquidating Trust</u>

For all U.S. federal income tax purposes, all parties shall treat the transfer of Liquidating Trust Assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the beneficiaries thereof as (a) a transfer by the Debtors of the Liquidating Trust Assets directly to the beneficiaries of the Liquidating Trust (to the extent of the value of their respective interests in the Liquidating Trust Assets), followed by (b) the transfer of the Liquidating Trust Assets by the beneficiaries of the Liquidating Trust (to the extent of the value of their respective interests in the Liquidating Trust Assets) to the Liquidating Trust in exchange for the Liquidating Trust Interests. Accordingly, for U.S. federal income tax purposes, the Liquidating Trust shall be treated as a grantor trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and the owners of the assets thereof.

2.      <u>Tax Reporting</u>

The Plan Administrator shall be responsible for filing all U.S. federal, state, local and foreign tax returns, including, but not limited to, any documentation related thereto, for the Liquidating Trust. The Plan Administrator shall file all tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article IV.E. Within a reasonable time following the end of the taxable year, the Plan Administrator shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their U.S. federal income tax returns. The Plan Administrator shall allocate the taxable income, gain, loss, deduction or credit of the Liquidating Trust with respect to each holder of a Liquidating Trust Interest to the extent required by the Internal Revenue Code and applicable law.

As soon as reasonably practicable after the Effective Date, the Plan Administrator shall make a good faith valuation of the Liquidating Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Liquidating Trust Agreement will require consistent valuation by all parties, including the Debtors, the Reorganized Debtors, the Plan Administrator, and each holder of a Liquidating Trust Interest, for all U.S. federal income tax and reporting purposes of any property held by the Liquidating Trust. The Plan

28

Administrator also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any taxing authority.

The Plan Administrator may request an expedited determination of the tax obligations of the Liquidating Trust under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

The Liquidating Trust Agreement will provide that termination of the Liquidating Trust will occur no later than three years after the Effective Date; *provided*, *however* if the Court approves an extension based upon a finding that such an extension is necessary for the Liquidating Trust to complete its liquidating purpose, the term of the Liquidating Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Plan Administrator receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for U.S. federal income tax purposes). The Liquidating Trust Agreement will also limit the investment powers of the Plan Administrator in accordance with Revenue Procedure 94-45 and will require the Liquidating Trust to distribute at least annually to each holder of a beneficial interest of a Liquidating Trust Interest, any net income plus all net proceeds from the sale of Liquidating Trust Assets, except that the Liquidating Trust may retain an amount of net income or net proceeds as is reasonably necessary to maintain the value of the Liquidating Trust Assets or to meet claims and contingent liabilities.

        3.      <u>Tax Payment Obligations</u>

The Liquidating Trust shall be responsible for payment of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. In the event, and to the extent, any Cash retained on account of Disputed Claims in the GUC Cash Pool Account is insufficient to pay the portion of any such taxes attributable to the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

F.      *Corporate Action*

Upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan shall be deemed authorized and approved by the Court in all respects, including, as applicable: (1) entry into the Exit Facility, if applicable; (2) execution and delivery of the Exit Facility Documents, if applicable; (3) the issuance of the Reorganized CARBO Interests; (4) appointment of the New Board and any other directors and officers for the Reorganized Debtors, as the case may be; (5) implementation of the Restructuring Transactions; and (6) all other actions contemplated by the Plan, the Plan Supplement, and the Restructuring Support Agreement. Upon the Effective Date, all matters provided for in the Plan involving the

US 6918838

corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or (as applicable) before the Effective Date, the appropriate directors, officers, managers, or other authorized persons of the Debtors or the Reorganized Debtors are hereby authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan), including those contemplated by Articles IV.G, H, I, J, and K, in the name of and on behalf of the Debtors and the Reorganized Debtors, as applicable, including the Exit Facility Documents and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Court.  The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

G.    *Continued Corporate Existence*

Except as otherwise provided in the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the New Organizational Documents.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law and the New Organizational Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including causing:  (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial, and federal or foreign law).

H.    *Cancellation of Existing Securities and Agreements*

On the Effective Date, (i) the CARBO Interests shall be cancelled, released, discharged, and extinguished, and the Reorganized CARBO Interests shall be issued in respect of the DIP Lender/Prepetition Lender Equity Distribution and (ii) the Asset Guard Interests and the StrataGen Interests shall be deemed to be converted automatically into the Reorganized Asset Guard Interests and the Reorganized StrataGen Interests, respectively, all of which Interests shall be wholly owned by Reorganized CARBO.  Except as otherwise provided in the Plan, including in this Article IV.H, on the Effective Date:  (1) the obligations of the Debtors under the Prepetition Credit Documents, all CARBO Interests, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument, agreement, or document, directly or indirectly, evidencing or creating any indebtedness or obligation of the Debtors or giving rise to any Claim or Interest shall be cancelled or extinguished and the Debtors and the Reorganized Debtors shall not have any

continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or Claims against or Interests in, the Debtors shall be released and discharged; *provided that* notwithstanding the releases set forth in Article VIII.F of the Plan, Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided, further,* that nothing in this section shall effectuate a cancellation of any Reorganized CARBO Interests, Reorganized Asset Guard Interests, Reorganized StrataGen Interests, Intercompany Interests, Intercompany Claims, Indemnification Obligations, or any security interests or Liens granted in connection with or with respect to the Prepetition Credit Documents, the DIP Facility, and/or the Exit Facility that secure the Exit Facility.  For the avoidance of doubt, each Debtor and non-Debtor entity shall retain the Interests in any other entity in which each Debtor or non-Debtor has an interest as of the Petition Date.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.F shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such executory contract or unexpired lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Court.

I.      *New Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors will, on or as soon as practicable after the Effective Date, file their respective New Organizational Documents, as applicable, with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or organization in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or organization.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities and will comply with all other applicable provisions of section 1123(a)(6) of the Bankruptcy Code regarding the distribution of power among, and dividends to be paid to, different classes of voting securities.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of incorporation and their respective New Organizational Documents.  On the Effective Date, the New Organizational Documents, substantially in the forms set forth in the Plan Supplement, shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

US 6918838

J.    *Directors and Officers of the Reorganized Debtors*

As of the Effective Date, the term of the current members of the board of directors or other governing body of the Debtors shall expire automatically and each person serving as a director of a Debtor shall be removed and cease to serve automatically, and the New Board of each of the Reorganized Debtors shall be appointed in accordance with the Plan, the New Organizational Documents, and the other constituent documents of each Reorganized Debtor.  In addition, each person serving as an officer of a Debtor shall be removed and cease to serve automatically as of the Effective Date, and the initial officers of each Reorganized Debtor will be appointed pursuant to the Plan and the New Organizational Documents.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent known, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Board in the Plan Supplement.  To the extent any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

K.    *Effectuating Documents*; *Further Transactions*

On and after the Effective Date, the Reorganized Debtors, the Reorganized Debtors' officers, and the members of the New Board, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any Securities issued pursuant to the Plan, including the Reorganized CARBO Interests, in the name of and on behalf of Reorganized CARBO or the other Reorganized Debtors, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

L.    *Exemption from Certain Taxes and Fees*

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a Security (including, without limitation, of the Reorganized CARBO Interests) or transfer of property, in each case, pursuant to, in contemplation of, or in connection with, the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

M.    *Exemption from Registration Requirements*

The offering, issuance, and distribution of the Reorganized CARBO Interests pursuant to the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without any further

act or action by any Entity, from registration under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities. Pursuant to section 1145 of the Bankruptcy Code, the Reorganized CARBO Interests issued under the Plan will be freely transferable by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

N.      *Preservation of Causes of Action*

All Avoidance Actions of Asset Guard and StrataGen are hereby released as of the Effective Date. Except as provided in the preceding sentence, in accordance with section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors, or with respect to any Avoidance Actions not otherwise released under the Plan, the Plan Administrator, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Avoidance Actions not otherwise released under the Plan and any other actions specifically enumerated in the List of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors, or with respect to any Avoidance Actions not otherwise released under the Plan, the Plan Administrator, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors or the Liquidating Trust, as applicable. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including, pursuant to Article VIII hereof, the Debtors, Reorganized Debtors, or Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.N include any claim or Cause of Action released pursuant to Article VIII.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except for Avoidance Actions not otherwise released under the Plan, which shall vest in the Liquidating Trust in accordance with the Plan. The applicable

33

Reorganized Debtors, or with respect to any Avoidance Actions not otherwise released under the Plan, the Plan Administrator, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

O.      *Director and Officer Liability Insurance*

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtors' assumption of each of the D&O Liability Insurance Policies, to the extent they are Executory Contracts. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date.

P.      *Retiree Benefits*

Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to assume Executory Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be assumed by the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code without the need for any further notice to or action, order, or approval of the Court, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected or assumed by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute the Court's order approving the assumptions or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth

in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right, subject to and in accordance with the terms of the Restructuring Support Agreement and with the consent of the Supporting Lenders, to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than 3 days' notice to the applicable non-Debtor counterparties.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Court within 21 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in any Proof of Claim to the contrary**. Claims arising from or related to the rejection of an Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

C.      *Cure of Defaults and Objections for Assumed Executory Contracts and Unexpired Leases*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure Claims that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be filed and served on the Reorganized Debtors on or before 30 days after the Effective Date. If such Cure Claim dispute is not resolved within seven days of the Reorganized Debtors' receiving such Cure Claim dispute, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Court within seven days. **Any such request and/or objection that is not timely Filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Court.** Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure Claim; *provided,*

*however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order, or approval of the Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Court on or before 30 days after the Effective Date.  Any such objection will be scheduled to be heard by the Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely Filed.  **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy or insolvency-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.     *Indemnification Obligations*

The Indemnification Obligations shall not be discharged or impaired by Confirmation of the Plan and the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Debtors under the Plan, and shall continue as obligations of the Reorganized Debtors; *provided*, *however*, that the Reorganized Debtors shall not indemnify directors or officers of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes knowing and intentional fraud, gross negligence, or willful misconduct.  No assumption of an Indemnification Obligation shall in any way extend the scope or term of any Indemnification Obligation beyond that contemplated in the applicable agreement governing such Indemnification Obligation, and the Reorganized Debtors reserve and retain all rights, claims, and defenses of any kind (whether legal, equitable, or otherwise) in connection with such Indemnification Obligations, notwithstanding anything to the contrary contained herein. Notwithstanding anything to the contrary herein, any indemnification or reimbursement provision under the Prepetition Credit Documents or the DIP Facility Documents that is expressly stated to survive any repayment under, or termination of, the Prepetition Credit Documents or the DIP Facility Documents shall survive any cancellation or discharge under this Plan in accordance with its terms, and any rights that the Prepetition Agent may have under the agency provisions of the

36

Prepetition Credit Documents, or that the DIP Lenders may have under the DIP Facility Documents, shall survive any such cancellation or discharge.

E.    *Insurance Policies*

All of the Debtors' insurance policies (including all D&O Liability Insurance Policies) and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Reorganized Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.    *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases that have not expired or otherwise been

US 6918838

terminated, cancelled, or rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

       1.      <u>Timing and Calculation of Amounts to Be Distributed</u>

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class; *provided, however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

       2.      <u>Entitlement to Distributions</u>

On and after the Effective Date, the Disbursing Agent shall be authorized to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date.  Accordingly, the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute Securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

US 6918838

B.    *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Debtors or the Reorganized Debtors, as applicable, or the Plan Administrator (solely with respect to the GUC Cash Pool), in each case as Disbursing Agent.  For the avoidance of doubt, the Plan Administrator shall be the Disbursing Agent solely as to distributions to be made to the Holders or Allowed General Unsecured Claims.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.

C.    *Delivery of Distributions and Unclaimed Property*

1.    <u>Delivery of Distributions</u>

a.    Delivery of Distributions in General

Except as otherwise provided herein, distributions to Holders of an Allowed Claim or Interest shall be made as follows:  (1) at the address set forth in the Debtors' or Reorganized Debtors' books and records; (2) at the address set forth in any written notice of address changes delivered to the Reorganized Debtors after the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors and the Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except to the extent of their gross negligence or willful misconduct.

In the event that any distribution to any Holder is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Debtors or the Reorganized Debtors, as applicable, are notified in writing of such Holder's then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Debtors or the Reorganized Debtors to attempt to locate Holders of undeliverable distributions.

b.    Delivery of Distributions to Prepetition Lenders

The Prepetition Agent shall be deemed to be the Holder of all Prepetition Lender Secured Claims for purposes of distributions to be made under the Plan, and all distributions on account of the Prepetition Lender Secured Claims shall be made to the Prepetition Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, the Prepetition Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Prepetition Lender Secured Claims in accordance with the terms of the Prepetition Credit Documents or as otherwise agreed by the Holders of Allowed Prepetition Lender Secured Claims.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition Agent shall not have any liability to any Person with respect to distributions made or directed to be made by the Prepetition Agent.

US 6918838

      c.      Delivery of Distributions on DIP Facility Claims

All distributions on account of DIP Facility Claims shall be made to the DIP Lenders.

      d.      Delivery of Distributions from GUC Cash Pool

The Plan Administrator shall be solely responsible for all distributions to Holders of Allowed General Unsecured Claims entitled to any distribution from the GUC Cash Pool and the GUC Cash Pool Account.

      e.      Delivery of Distributions Under the Liquidating Trust

The Plan Administrator shall be solely responsible for all distributions to Holders of Allowed General Unsecured Claims entitled to any distribution from the Liquidating Trust, and such distributions shall be governed by the terms of the Liquidating Trust Agreement.

2.      <u>Minimum Distributions</u>

No fractional shares of Reorganized CARBO Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of Reorganized CARBO Interests that is not a whole number, the actual distribution of shares of Reorganized CARBO Interests shall be rounded as follows:  (a) fractions of one-half or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of Reorganized CARBO Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

Holders of Allowed Claims entitled to distributions of $50.00 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder shall be forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or their property.

3.      <u>Unclaimed Property</u>

In the event that any distribution is returned as undeliverable or is unclaimed, such distribution shall remain in the Debtors' or Reorganized Debtors' possession until such time as a distribution becomes deliverable or such Holder accepts distribution, or such distribution reverts back to the Debtors or Reorganized Debtors, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the date of attempted distribution.  After such date all unclaimed property or interest in property shall revert to the Reorganized Debtors, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

D.     *Distributions on Account of Claims Allowed After the Effective Date*

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

E.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors or the Reorganized Debtors, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors or the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.     *Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to Article IV.H of the Plan, except to the extent otherwise provided in the Plan.

G.     *Allocations*

The aggregate consideration to be distributed to each Holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

H.     *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.     *Setoffs and Recoupment*

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against, or recoup from, any Claim against a Debtor of any nature whatsoever that the

41

applicable Debtor or Reorganized Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a waiver or release by the applicable Debtor or Reorganized Debtor of any such Claim it may have against the Holder of such Allowed Claim.

J.      *Claims Paid or Payable by Third Parties*

      1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full an Allowed Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided that* the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to Debtors or the Reorganized Debtors, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

      2.      <u>Claims Payable by Insurers</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court; *provided that* the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the Holder of such Claim prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.

      3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein

constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors and the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order and the DIP Orders), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.    *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the authority to: (1) File, withdraw, or litigate to judgment objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court, shall (x) solely with respect to any General Unsecured Claims, vest in the Plan Administrator and (y) solely with respect to all other Claims, vest in the Reorganized Debtors. The Reorganized Debtors shall consult with the Plan Administrator before seeking to reclassify any Claim as a General Unsecured Claim.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, or the Plan Administrator (solely with respect to any General Unsecured Claims) may at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection. In the event that the Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Reorganized Debtors, as applicable, or the Plan Administrator (solely with respect to any General Unsecured Claims), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been

US 6918838

estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court or as otherwise provided in this Article VII.

D.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors or the Plan Administrator (solely with respect to any General Unsecured Claims) without the Reorganized Debtors or the Plan Administrator, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

E.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

F.      *No Distributions Pending Allowance*

No payment or distribution provided under the Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided that* any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

G.    *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals shall be paid to the Holder of such Allowed Claim on account of such Allowed Claim unless otherwise required under applicable bankruptcy law or as otherwise provided herein.

H.    *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim plus interest, if applicable.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action

US 6918838

of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.     *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D.     *Release of Liens*

**Except as otherwise specifically provided in the Plan, the Exit Facility Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Facility Documents), or in any other contract, instrument, agreement or document created pursuant to the Plan or Plan Supplement, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors.**

E.     *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, each Released Party is hereby released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages,**

demands, losses, liabilities, and remedies whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Documents, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Documents, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, knowing and intentional fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

F.      *Releases by Holders of Claims and Interests*

**As of the Effective Date, each Releasing Party hereby releases and discharges each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, that such Entity or its estate, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Reorganized Debtors, their Estates, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Documents, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP Facility Documents, the Exit Facility, the Exit Facility Documents, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that except as expressly provided under the Plan, the foregoing releases shall not release obligations arising under agreements among any of the non-Debtor Releasing Parties and the non-Debtor Released Parties.  Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, knowing and intentional fraud, or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this**

US 6918838

**Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.**

G.   *Exculpation*

**Except as otherwise specifically provided in the Plan, to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, liability, or remedy for any claim related to any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in- or out-of-court restructuring efforts, the DIP Facility, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission by such Exculpated Party that is determined in a Final Order to have constituted knowing and intentional fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the Bankruptcy Code and all other applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

US 6918838

H.      *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

I.      *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment*

In no event shall any Holder of an Allowed Claim be entitled to recoup against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.      *Reimbursement or Contribution*

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

2.      an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Court;

3.      the Confirmation Order shall have been entered by the Court in form and substance acceptable to the Debtors and the Supporting Lenders in all respects; and

4.      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, shall have been Filed subject to the terms hereof.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the occurrence of the Effective Date that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.      the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

US 6918838

2.      the Confirmation Order shall have been entered and the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

3.      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but prior to the Effective Date, shall be consistent with the Restructuring Support Agreement and in form and substance acceptable to the Debtors and the Supporting Lenders in all respects;

4.      if applicable, the Exit Facility Documents, each of which shall be in form and substance acceptable to the Exit Facility Lenders in all respects, shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facility shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Facility shall be deemed to occur concurrently with the occurrence of the Effective Date;

5.      all other Definitive Documentation shall have been effected or executed and delivered in accordance with the terms hereof and the Restructuring Support Agreement;

6.      all conditions precedent to the issuance of the Reorganized CARBO Interests, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

7.      the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions;

8.      all required governmental and third-party approvals and consents, including Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

9.      all documents and agreements necessary to implement the Plan and the Restructuring Transactions shall have been (a) tendered for delivery and (b) effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements (including, without limitation, the Exit Facility Documents, if applicable);

10.      the applicable Supporting Lenders shall have funded in full the GUC Cash Pool Account and the Liquidating Trust Expense Reserve;

11.      the applicable Supporting Lenders shall have funded in full the Administrative and Priority Claims Reserve; and

12.      all Allowed Professional Fee Claims approved by the Court shall have been paid in full and the Professional Fee Escrow Account shall have been funded in the Professional Fee Reserve Amount.

C.      *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived in writing by mutual agreement of the Debtors and the Supporting Lenders without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

D.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

E.      *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date*

If the Confirmation Date and/or the Effective Date do(es) not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained herein, and only in accordance with the Restructuring Support Agreement and with the consent of the Supporting Lenders, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the restrictions on modifications set forth in the Plan, and the terms of the Restructuring Support Agreement, the Debtors expressly reserve their rights, subject to and in accordance with the terms of the Restructuring Support Agreement and with the consent of the Supporting Lenders, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

US 6918838

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right, subject to and in accordance with the terms of the Restructuring Support Agreement, to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections relating to any of the foregoing;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, any Cure Claims, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Debtors or the Reorganized Debtors, as applicable, amending, modifying, or supplementing, pursuant to Article V hereof, the Schedule of Rejected Executory Contracts and Unexpired Leases; and (c) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.      ensure that distributions to Holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

US 6918838

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and the Restructuring Support Agreement, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Restructuring Support Agreement;

9.      enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Restructuring Support Agreement;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.I.1 hereof;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring Transactions;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.    hear and determine matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.    hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.    hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.    enforce all orders previously entered by the Court;

23.    hear any other matter not inconsistent with the Bankruptcy Code;

24.    enter an order concluding or closing the Chapter 11 Cases; and

25.    enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, the Plan Administrator, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

US 6918838

C.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs.  Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

E.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtors shall be served on:

| | |
|---|---|
| **Debtors or Reorganized Debtors** | **CARBO Ceramics Inc.**<br>575 N. Dairy Ashford Road, Suite 300<br>Houston, Texas 77079<br>Attn:  Ernesto Bautista, III<br>Robert Willette |
| **Proposed Counsel for the Debtors** | **Vinson & Elkins LLP**<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3900<br>Dallas, Texas 75201<br>Attn:  Paul E. Heath<br>Garrick C. Smith<br><br>-and-<br><br>**Vinson & Elkins LLP**<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, New York  10036-7708<br>Attn:  David S. Meyer |
| **Counsel to the Supporting Lenders** | **Norton Rose Fulbright US LLP**<br>2200 Ross Avenue, Suite 3600<br>Dallas, Texas 75201<br>Attn:  Gregory M. Wilkes |

US 6918838

F.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.      *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/Carbo or the Court's website at www.txs.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided that* any such alteration or interpretation shall be acceptable to the Debtors and the Supporting Lenders in all respects.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Prepetition Agent, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities

58

offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.      *Dissolution of any Committee*

On the Effective Date, any Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any Committee after the Effective Date.

L.      *Request for Expedited Determination of Taxes*

The Debtors or the Reorganized Debtors, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

M.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

N.      *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

O.      *Waiver or Estoppel*

Except with respect to the Restructuring Support Agreement and the parties thereto, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors' or Reorganized Debtors' right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court or the Notice and Claims Agent prior to the Confirmation Date.

\* \* \* \*

US 6918838

Respectfully submitted,

Dated: April 8, 2020                              CARBO Ceramics Inc.


                                                  /s/  *Ernesto Bautista III*
                                                  Ernesto Bautista III
                                                  Vice President & Chief Financial Officer


                                                  Asset Guard Products Inc.


                                                  /s/  *Ernesto Bautista III*
                                                  Ernesto Bautista III
                                                  Vice President & Chief Financial Officer


                                                  StrataGen, Inc.


                                                  /s/  *Ernesto Bautista III*
                                                  Ernesto Bautista III
                                                  Vice President & Chief Financial Officer

60