**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
04/23/2020

| | | |
|---|---|---|
| In re: | § | **Case No. 20-31973 (MI)** |
| | § | |
| **CARBO CERAMICS INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | **(Jointly Administered)** |
| | § | **Re: Docket Nos. 8 & 37** |
| Debtors.[1] | § | |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO**
**(A) OBTAIN POSTPETITION FINANCING,**
**(B) GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, AND (C) UTILIZE CASH COLLATERAL, (II) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS,**
**AND (III) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 8] (the "Motion")[2] of CARBO Ceramics Inc., as borrower

(the "Borrower"), Asset Guard Products Inc. ("Asset Guard") and StrataGen, Inc. ("StrataGen"),

as guarantors (Asset Guard and StrataGen, collectively, the "Guarantors" and together with the

Borrower, the "Debtors"), pursuant to Bankruptcy Code sections 105, 361, 362, 363, 364, 503,

and 507, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-

1(a), 4001-1(b), 5005-1, and 9013-1:

  a.  seeking entry of a final order (this "Final Order") providing, on a final basis,

among other things:

    i.  authority for the Debtors to use Cash Collateral (as defined below) of
Wilks Brothers, LLC ("Wilks"), in its capacity as administrative agent (in
such capacity, the "Prepetition Agent") for itself and on behalf of Equify
Financial LLC ("Equify," and together with Wilks, in such capacity, the
"Prepetition Secured Lenders") party to the Prepetition Credit Agreement

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification
numbers are: CARBO Ceramics Inc. (0013); StrataGen, Inc. (5205); and Asset Guard Products Inc. (6422).
The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy
Ashford Road, Suite 300, Houston, Texas 77079.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or
in the DIP Credit Agreement (as defined below).

(as defined below), in accordance with the terms and conditions set forth herein and authority for the Debtors to grant adequate protection to the Prepetition Secured Lenders with respect to any postpetition diminution in value of their interests in the Prepetition Collateral (as defined below) arising from, among other things, the Debtors' sale, use, or lease of the Prepetition Collateral (including the Cash Collateral) and the priming of the Prepetition Liens (as defined below) by the DIP Liens (as defined below);

ii.     subject and subordinate to the Carve-Out (as defined below), the grant of superpriority claims and the grant of automatically perfected liens, security interests, and other adequate protection to the Prepetition Secured Lenders with respect to their interest in the Prepetition Collateral;

iii.    authority for the Borrower to obtain, and the Guarantors to guaranty, a senior secured superpriority multiple draw term loan facility (as described herein, the "DIP Facility"), under that certain *Senior Secured Super Priority Debtor-in-Possession Credit Agreement*, in the form of the agreement attached to the Motion as **Exhibit B** (as amended, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), with the Prepetition Secured Lenders that are party to the DIP Credit Agreement from time to time (in their capacity as postpetition lenders under the DIP Credit Agreement, collectively, the "DIP Lenders"), which shall consist of a superpriority priming new money multiple draw term loan facility with an aggregate principal amount of up to $15,000,000 (the "DIP Loan") from the DIP Lenders[3] (a) to be used in accordance with the terms, conditions, and covenants set forth in the DIP Orders (as defined in the DIP Credit Agreement), the DIP Credit Agreement, and any and all of the other agreements and documents currently executed or to be executed in connection therewith or related thereto, each as amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the other agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors and/or the DIP Lenders, including, without limitation, the Credit Documents (as defined in the DIP Credit Agreement) and the DIP Orders (collectively, the "DIP Facility Documents"), and (b) subject to compliance with the budget agreed to by the Debtors and the DIP Lenders (as such budget may be extended, varied, supplemented, or

---

[3]    Upon the entry of the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 37] (the "Interim Order") and until the entry of this Final Order (the "Interim Period"), a maximum amount of $5,000,000 of the DIP Loan (the "Interim Facility") became available to be drawn, subject to compliance with the terms, conditions, covenants, and other provisions described in the Interim Order, the DIP Facility Documents, and the Approved Budget.

otherwise modified in accordance with the provisions of this Final Order and the DIP Credit Agreement, the "<u>Approved Budget</u>");

iv.    authority for the Debtors to execute, deliver, and perform under the DIP Facility Documents, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to the DIP Lenders on account of the DIP Facility (all obligations and indebtedness of any of the Debtors to the DIP Lenders under the DIP Facility Documents (including the DIP Loan) as set forth in the definition of "Obligations" in the DIP Credit Agreement, collectively, the "<u>DIP Obligations</u>") or granting or perfecting liens or security interests by any of the Debtors in favor and for the benefit of the DIP Lenders on account of the DIP Facility;

v.    authority and direction for the Debtors to use the proceeds of the DIP Facility as expressly provided in the DIP Facility Documents, the Interim Order, and this Final Order, and solely in accordance with the Approved Budget;

vi.    for, subject and subordinate to the Carve-Out, the grant of (i) automatically perfected liens and security interests in the DIP Collateral (as defined below) and (ii) superpriority claims with priority over all other administrative expense claims and other postpetition claims against the Debtors' and their estates, to the DIP Lenders to secure the DIP Obligations to the extent provided herein;

vii.    for the waiver of the Debtors' ability to surcharge any DIP Collateral or Prepetition Collateral pursuant to Bankruptcy Code section 506(c) and any right of the Debtors under the "equities of the case" exception in Bankruptcy Code section 552(b);

viii.    subject to the expiration of the Challenge Period, for the release of the Prepetition Secured Lenders;

ix.    authority for the DIP Lenders to terminate (a) all commitments to extend credit under the DIP Facility, and (b) to terminate the Debtors' sale, use, or lease of Cash Collateral, each upon the occurrence and continuance of an Event of Default (as defined below);

x.    for modification of the automatic stay of Bankruptcy Code section 362 (the "<u>Automatic Stay</u>") to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents, the Interim Order, and this Final Order; and

xi.    a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness of this Final Order;

3

and the interim hearing (the "Interim Hearing") having been held by this Court on March 30, 2020, and a final hearing (the "Final Hearing") having been held by this Court on April 23, 2020; and this Court having considered the Motion, the exhibits attached thereto, the DIP Facility Documents, the *Declaration of Ernesto Bautista III in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6] (the "Bautista Declaration") and the *Declaration of Jakub Mleczko in Support of DIP Financing* [Docket No. 7] ("Mleczko Declaration"), and the evidence submitted and the record made at the Interim Hearing and the Final Hearing; and due, proper and sufficient notice of the Motion, having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d) and 9014, and Local Rules 2002-1, 4001-1(a), 4001-1(b), 5005-1, and 9013-1; and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the relief requested in the Motion on a final basis is fair and reasonable and in the best interests of the Debtors, their estates (as defined under Bankruptcy Code section 541, the "Estates"), and their creditors and equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    *Petition Date*. On March 29, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these chapter 11 cases (these "Chapter 11 Cases"). On March 30, 2020, this Court entered an order approving the joint administration of these Chapter 11 Cases. The Debtors are continuing to operate their business and manage their affairs as debtors in possession pursuant to

4

Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these Chapter 11 Cases.

B.     *Committee Formation.* On April 14, 2020, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 113].

C.     *Jurisdiction and Venue*. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these Chapter 11 Cases, the Motion, the parties, and the Debtors' property. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363, 364, 503, and 507, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the applicable Local Rules.

D.     *Debtors' Stipulations*. In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and access to the Prepetition Secured Lenders' Cash Collateral, and as a condition to providing financing under the DIP Facility, but without prejudice to the rights of parties in interests as set forth in paragraphs 24 and 36 herein, the Debtors admit, stipulate, acknowledge, and agree that (collectively, paragraphs C(i) through C(viii) below are referred to herein as the "Debtors' Stipulations"):

i.     *Prepetition Credit Documents*. Prior to the Petition Date, the Borrower refinanced an existing credit facility dated January 29, 2010 among the Borrower, the lenders party thereto, and Wells Fargo Bank, National Association ("Wells Fargo") by entering into that

certain Amended and Restated Credit Agreement, dated as of March 2, 2017 (as amended, modified or supplemented from time to time, the "Prepetition Credit Agreement," and together with all security and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "Prepetition Credit Documents"), by and among the Borrower, the Guarantors, and the Prepetition Agent, as amended by that certain First Amendment to Amended and Restated Credit Agreement dated June 7, 2018, and further amended by that certain Second Amendment to Amended and Restated Credit Agreement dated June 20, 2019 (the "Second Amendment"), pursuant to which Equify became an additional lender under the Prepetition Credit Agreement.

ii.     In connection with the Second Amendment, the Prepetition Agent and Equify entered into that certain Assignment and Acceptance, dated as of June 20, 2019 (the "Assignment and Acceptance"), pursuant to which the Prepetition Agent assigned a portion of the outstanding principal amount, in the amount of $17,317,000, to Equify, that was due and owing pursuant to the Prepetition Credit Documents.

iii.     As of the Petition Date, the Debtors were liable to the Prepetition Secured Lenders pursuant to the Prepetition Credit Agreement, without defense, counterclaim, offset, claim or cause of action of any kind, for (a) an aggregate principal amount of not less than $65,000,000 in respect of loans made (plus accrued and unpaid interest thereon) and (b) certain fees and expenses and other amounts required to be reimbursed by the Debtors pursuant to the terms of the Prepetition Credit Agreement (collectively, the "Prepetition Loan Obligations").

iv.     *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtors granted to the Prepetition Secured Lenders a security interest in and continuing lien on (the "Prepetition Liens") certain of

their assets and property including, without limitation, a first priority security interest in and continuing lien on certain real and personal property of the Debtors as more particularly described in the Prepetition Credit Documents, including, without limitation, the proceeds, products, and offspring of any and all such property (collectively, the "Prepetition Collateral").

v.      The Prepetition Loan Obligations constitute legal, valid, binding, and non-avoidable obligations against each of the Borrower and Guarantors, and are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise. No payment or transfer made to or for the benefit of, or obligations incurred to or for the benefit of, the Prepetition Secured Lenders by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Prepetition Credit Documents is subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

vi.      The liens, security interests, and mortgages granted by the Borrower and the Guarantors to the Prepetition Secured Lenders to secure the Prepetition Loan Obligations are (a) legal, valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral to secure the Prepetition Loan Obligations; (b) not subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge; and (c) subject and subordinate only to (I) the Prior Liens,[4] (II) the DIP Liens, and (III) the Carve-Out, as applicable.

---

[4]   "Prior Liens" means valid, perfected, and non-avoidable liens or security interests (including pursuant to Bankruptcy Code section 546(b)) that are senior to Prepetition Liens on the Petition Date under applicable law.

US 7023839

vii.    The Prepetition Secured Lenders duly perfected their respective liens upon and respective security interests in the Prepetition Collateral by, among other things, filing financing statements, mortgages, and deeds to secure debt, and, where necessary, possessing the relevant instruments, certificates, or other property. Pursuant to the Prepetition Credit Documents, the Prepetition Secured Lenders have perfected security interests in and liens on all of the Prepetition Collateral.

viii.    *Cash Collateral*. The Debtors represent that "<u>Cash Collateral</u>" includes (a) all non-restricted cash of the Borrower as of the Petition Date, including the cash in deposit accounts, wherever located (except (i) cash in Excluded Accounts (as defined in the Prepetition Credit Agreement), or (ii) restricted cash or cash equivalents pledged to secure or support letters of credit, reclamation obligations, corporate credit card programs or other obligations of a like nature incurred in the ordinary course of business prior to the Petition Date); (b) any proceeds of Prepetition Collateral; and (c) all other cash subject to DIP Liens or Adequate Protection Liens (as defined below) pursuant to the Interim Order or this Final Order.

E.    *Findings Regarding the Prepetition Secured Lenders' Consent to Priming*. The Prepetition Secured Lenders have consented to the adequate protection and the priming of the Prepetition Liens as provided for in this Final Order; *provided*, *however*, that the respective consents of the Prepetition Secured Lenders to the priming of their Prepetition Liens, the use of the Prepetition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Final Order and such consents shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Facility provided for under the DIP Facility Documents; *provided*, *further*, that such consents shall be of no force and effect in the event the

US 7023839

DIP Facility Documents are not approved on a final basis or this Final Order is not entered (or is entered and subsequently reversed, modified, vacated, or stayed).

      F.     *Findings Regarding DIP Facility and the Use of Cash Collateral.*

          i.     *Request for Postpetition Financing and Use of Cash Collateral.* The Debtors seek authority to enter into and perform under the DIP Facility Documents. The DIP Lenders shall have no obligation to make loans or advances except pursuant to the terms and conditions set forth herein and in the DIP Credit Agreement and no obligation to waive any conditions required thereunder. The Debtors also seek authority to use Cash Collateral on the terms described herein, and in accordance with the Approved Budget, which shall be subject to Permitted Variances (as defined below) and the Permitted Carry (as defined below), to administer their Chapter 11 Cases and fund their operations.

          ii.     *Priming of the Prepetition Liens.* The priming of the Prepetition Liens on the Prepetition Collateral under Bankruptcy Code section 364(d), as contemplated by the DIP Facility and as further described below, will enable the Debtors' continued access to the DIP Facility and allow them to continue operating their business for the benefit of their Estates and creditors. The Prepetition Secured Lenders are entitled to receive adequate protection as set forth in this Final Order pursuant to Bankruptcy Code sections 361, 363, and 364 for any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral).

          iii.     *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors do not have sufficient liquidity, including Cash Collateral, to operate their business in the ordinary course or to implement a process to consummate a plan of reorganization in these Chapter 11 Cases that is acceptable to the DIP Lenders and the Prepetition Secured Lenders without the financing requested in the Motion. The Debtors' ability to maintain business

US 7023839

relationships with vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth in the Interim Order and this Final Order, to implement and consummate a plan of reorganization in these Chapter 11 Cases that is acceptable to the DIP Lenders and the Prepetition Secured Lenders and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize and preserve the value of their respective Estates for the benefit of all creditors of the Estates. The ability of the Debtors to obtain sufficient working capital and liquidity through the DIP Facility with the DIP Lenders and to use Cash Collateral as set forth in this Final Order and the DIP Facility Documents is vital to the preservation and maintenance of the going concern value of the Debtors and the Debtors' ability to maximize value for all stakeholders. If the Debtors do not obtain authorization to borrow under the DIP Facility Documents on a final basis, they, and their Estates, will suffer immediate and irreparable harm. Accordingly, the Debtors need to obtain the DIP Loan and to use Cash Collateral to, among other things, permit the orderly continuation of the operation of their business, minimize the disruption of their business operations, and preserve and maximize the value of the Debtors' Estates in order to maximize value for all creditors of the Estates.

iv.     *No Credit Available on More Favorable Terms*. As set forth in the Mleczko Declaration, and as demonstrated at the Interim Hearing and the Final Hearing, given the Debtors' financial condition, financing arrangements, and capital structure, the Debtors have been unable to procure the necessary financing from sources other than the DIP Lenders on terms more favorable than those set forth in the DIP Facility Documents. The Debtors have been unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in

Bankruptcy Code sections 503(b), 507(a), and 507(b); (b) secured only by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Postpetition financing is not otherwise available without granting to the DIP Lenders: (x) automatically perfected security interests in and liens on all of the Debtors' existing and after-acquired assets with the priorities set forth herein; (y) superpriority claims and liens; and (z) the other protections to the extent set forth in the Interim Order and this Final Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the DIP Facility, including, without limitation, the DIP Loan, represents the best financing available to them at this time.

v.      *Use of Proceeds of the DIP Facility*. As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Lenders and the Prepetition Secured Lenders require, and the Debtors have agreed, that proceeds of the DIP Facility and Cash Collateral shall be used in accordance with the terms of this Final Order and the DIP Facility Documents, subject to paragraph 36 herein, the Approved Budget, which shall be subject to Permitted Variances and the Permitted Carry, as may be permitted by the DIP Credit Agreement and this Final Order, solely for (a) working capital; (b) other general corporate purposes of the Debtors; (c) permitted payment of costs and administration of these Chapter 11 Cases; (d) payment of such other prepetition obligations as consented to by the DIP Lenders and "first day" orders; (e) payment of interest, fees, and expenses (including, without limitation, legal and other professionals' fees and expenses of the DIP Lenders) owed under the DIP Facility Documents; (f) payment of certain

US 7023839

adequate protection amounts to the Prepetition Secured Lenders as set forth in paragraph 7; and (g) payment of the Carve-Out (collectively, the "Permitted DIP and Cash Collateral Uses").

vi.     *The DIP Facility Terms and Conditions are Fair and Reasonable*. Based on the Motion, the Mleczko Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms and conditions of the DIP Facility pursuant to the DIP Facility Documents (including the payment of fees and expenses contemplated thereunder) and the use of the DIP Collateral and the Prepetition Collateral, including the Cash Collateral, pursuant to this Final Order are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and consideration, and were entered into at arm's-length, under no duress, and without undue influence, negligence, or violation of public policy or law. Use of Cash Collateral and any credit to be extended as set forth in the DIP Facility Documents shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code section 364(e), and the DIP Lenders are therefore entitled to the protections and benefits of Bankruptcy Code section 364(e) and this Final Order.

vii.    *Restructuring Support Agreement*.    The Debtors and the Prepetition Secured Lenders have entered into that certain *Restructuring Support Agreement*, dated as of March 28, 2020 (as amended, supplemented and restated from time to time, the "Restructuring Support Agreement"), which contains the parties' agreements and undertakings with respect to the Debtors' restructuring and confirmation of a plan of reorganization.

viii.   *Bankruptcy Code Sections 506(c) and 552(b)*. In light of (a) the agreement of the DIP Lenders and the Prepetition Secured Lenders to subordinate their liens and claims

12

(including, but not limited to, superpriority claims), as applicable, to the Carve-Out; (b) the Prepetition Secured Lenders' agreement to consent to the use of Cash Collateral and to subordinate their Adequate Protection Superpriority Claims and Adequate Protection Liens, the DIP Liens, and the DIP Superpriority Claims (as defined below) to the Carve-Out; and (c) the Approved Budget covering all administrative costs projected by the Debtors, the DIP Lenders, with respect to the DIP Collateral, and the Prepetition Secured Lenders, with respect to the Prepetition Collateral, as applicable, are entitled to a waiver of (I) the provisions of Bankruptcy Code section 506(c), (II) any "equities of the case" claims under Bankruptcy Code section 552(b), and (III) the equitable doctrine of "marshaling" or any similar doctrine.

　　　　　ix.　　*Release*.　Subject to the expiration of the Challenge Period (as defined below), as a condition to obtaining financing under the DIP Facility, the consensual use of Cash Collateral under the Interim Order and this Final Order, and the consent to priming liens under the Interim Order and this Final Order, each of the Debtors (in their own right and on behalf of the estates, representatives, directors, officers, employees, independent contractors, attorneys and agents, and their successors and assigns, in each case in their capacity as such and to the extent permitted by applicable law), hereby forever, unconditionally and irrevocably release, discharge and acquit each of the Prepetition Secured Lenders and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past and future, and their respective heirs, predecessors, successors and assigns in their capacity as such (collectively, the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions and causes of action of any

and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with or relating to the Prepetition Credit Documents, the DIP Loan or the DIP Facility Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security and perfection of any of the Prepetition Loan Obligations, the Prepetition Liens or the Prepetition Credit Documents, and further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Loan Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon or related to any and all acts, omissions, conduct undertaken or events occurring prior to the entry of this Final Order.

x. *Adequate Protection*.   The Prepetition Secured Lenders are entitled, pursuant to Bankruptcy Code sections 361, 362, 363, and 364, to receive adequate protection against any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), to the extent set forth in paragraph 7 of this Final Order.

xi. *Good and Sufficient Cause Shown*.   Good and sufficient cause has been shown for entry of this Final Order. The ability of the Debtors to obtain sufficient working

14

capital and liquidity under the DIP Facility Documents is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business and ongoing operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) maximize and stabilize the value of the Debtors' assets and avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets. The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

xii.    *The Interim Facility.* In accordance with the Interim Order, this Court authorized, among other things, the Debtors to (a) access the DIP Loan proceeds available under the Interim Facility and (b) execute and deliver the DIP Facility Documents and to incur and to perform all of the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, the DIP Facility Documents, and the Approved Budget. On March 30, 2020, the DIP Credit Agreement was and the applicable DIP Facility Documents were executed, and the Debtors were authorized to borrow on and subject to the terms, conditions, covenants, and other provisions set forth in the DIP Facility Documents and the Interim Order.

xiii.    *Notice*.    The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).   Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

US 7023839

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. *Motion Approved.* The Motion is granted on a final basis in accordance with the terms of this Final Order. All objections to and reservations of rights with respect to the entry of this Final Order to the extent not withdrawn or resolved are hereby denied and overruled on the merits in their entirety.

2. *Authorization of the DIP Loan and the DIP Facility Documents.*

   a. The DIP Facility was approved on an interim basis by the Interim Order and hereby is approved on a final basis by this Final Order. The Debtors were, by the Interim Order, and are hereby authorized on a final basis to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Facility Documents. The Debtors were, by the Interim Order, and are hereby authorized on a final basis to borrow money under the DIP Facility Documents and request extensions of credit under the DIP Facility in accordance with the terms of the Interim Order, this Final Order, the DIP Facility Documents, and the Approved Budget, which shall be subject to Permitted Variances and the Permitted Carry.

   b. In furtherance of the foregoing and without further approval of this Court, each Debtor was, by the Interim Order, and hereby is, authorized to perform all acts, to make, execute, and deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility Documents and the creation and perfection of the DIP Liens described in, provided for, and automatically perfected by the Interim Order, and continued by this Final Order, and the DIP Facility Documents. Subject to paragraph 32, the Debtors were, by the Interim Order, and are hereby authorized to pay, in accordance with the

16

US 7023839

Interim Order or this Final Order, as the case may be, the principal, interest, fees, expenses, and other amounts described in the DIP Facility Documents as such become due and without need to obtain further Court approval, including, without limitation, the fees set forth in the DIP Facility Documents and the reasonable fees and disbursements of the DIP Lenders' attorneys, advisors, accountants, and other consultants. All fees set forth in the DIP Facility Documents were deemed to be fully earned upon entry of the Interim Order and payable in accordance with the DIP Facility Documents and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

c.     The DIP Facility Documents are valid and binding obligations of the Debtors, enforceable against the Debtors and their Estates in accordance with their terms, and subject to the terms of this Final Order. The DIP Facility Documents, the Interim Order, and this Final Order constitute and evidence the validity and binding effect of the DIP Obligations of the Debtors, which DIP Obligations shall be enforceable, jointly and severally, against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case"). No obligation, payment, transfer, or grant of a security or other interest to the DIP Lenders under the DIP Facility Documents or this Final Order shall be stayed, restrained, avoidable, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under Bankruptcy Code section 502(d)), or subject to any defense, reduction, setoff, recoupment, or counterclaim of any kind.

d.     From and after the Petition Date, the Debtors are authorized to use extensions of credit under the DIP Facility only for the purposes specifically set forth in the

Interim Order, this Final Order, the DIP Facility Documents, and in compliance with the Approved Budget. The Debtors were, by the Interim Order, and are hereby authorized, subject to the satisfaction of the conditions set forth in the DIP Facility Documents, to use proceeds of the DIP Collateral and the Prepetition Collateral, subject to the Carve-Out, and to draw upon the DIP Facility to (i) pay fees, costs, and expenses incurred in connection with the transactions contemplated by the DIP Credit Agreement; (ii) pay other administration costs incurred in connection with the Chapter 11 Cases consistent with the Approved Budget, which shall be subject to Permitted Variances and the Permitted Carry; (iii) pay for other working capital and general corporate purposes of the Debtors and their subsidiaries consistent with the Approved Budget, which shall be subject to Permitted Variance and the Permitted Carry, and the "first day" orders entered by the Court; and (iv) after delivery of a Carve-Out Trigger Notice (as defined below), fund the Carve-Out Reserves (as defined below) as provided for in paragraph 8.

3.     *Non-Material and Material or Adverse DIP Amendments*.  Subject to the terms and conditions of the DIP Facility Documents, the Debtors and the DIP Lenders may make amendments, modifications, or supplements to any DIP Facility Document that are either non-material or non-adverse to the Debtors, and the DIP Lenders may waive, in their sole discretion, any provisions in the DIP Facility Documents, without further approval of the Court; *provided*, *however*, that the Debtors shall file a notice on the Court's docket of any such amendment, modification, supplement or waiver, not more than three (3) Business Days after the effective date thereof.  Any amendments, modifications, or supplements to any DIP Facility Documents, other than as set forth in the preceding sentence (collectively, "Material or Adverse DIP Amendments"), that are agreed to by the Debtors and the DIP Lenders, as applicable, in accordance with the terms of the DIP Facility Documents shall be filed with the Court, and the

18

Debtors shall provide prior written notice of such Material or Adverse DIP Amendment to (i) counsel for the Committee and (ii) the U.S. Trustee.  If neither the Committee nor the U.S. Trustee files an objection to the Material or Adverse DIP Amendment with the Court within three (3) Business Days from the date the notice of the Material or Adverse DIP Amendment is filed with the Court, the Debtors and the DIP Lenders are authorized and empowered to execute, deliver, and implement, in accordance with the terms of the DIP Facility Documents, such Material or Adverse DIP Amendment, without further notice, hearing, or approval of this Court. Any Material or Adverse DIP Amendment subject to a timely and unresolved objection must be approved by the Court to be effective.

4. *Approved Budget*.

a. *Compliance with Approved Budget*. The Debtors and the DIP Lenders agreed to an initial Approved Budget, including four (4) weeks of actual cash flows and a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis.  A portion of the Approved Budget, representing the cash flow forecast for the first four (4) weeks following the Petition Date was attached to the Interim Order as Exhibit 1, and it is also attached hereto as __**Exhibit 1**__.  The Approved Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Approved Budget. Beginning the Friday of the first full week following the date of the Interim Order and every Friday thereafter, the Debtors shall deliver to counsel to the DIP Lenders and counsel for the Committee a 13-week cash flow forecast featuring (i) the latest four (4) weeks of actual results, (ii) a report showing (A) actual ending cash balances and the variance between actual results for the prior week compared to the same week in the then-

current Approved Budget and (B) actual results for the prior four (4) weeks compared to the same four (4) weeks in the then-current Approved Budget, in form substantially similar to the 13-week cash flow forecast attached to this Final Order as **Exhibit 1**, with reasonably detailed explanations for any variance on a line-by-line basis, and (iii) a new 13-week cash flow forecast, in Microsoft Excel, that commences with the beginning of the week immediately following the end of the prior Approved Budget's first four (4) weeks setting forth all forecasted receipts and disbursements of the Debtors on a weekly basis for the following 13-week period, which shall include line items substantially similar to those set forth in the version of the Approved Budget attached to this Final Order as **Exhibit 1**.  Every four (4) weeks thereafter, the most current supplement to the Approved Budget shall become and be deemed to be the new Approved Budget if not objected to by the DIP Lenders in writing within five (5) calendar days of receipt; *provided* that the previous Approved Budget shall remain operative pending the resolution of any written objection received to the newly delivered Approved Budget, which objections may be delivered to the Debtors' counsel via email.

b.      *Permitted Variance and Carries*.  Notwithstanding the Approved Budget, so long as no Event of Default has occurred, the Debtors shall be authorized to use Cash Collateral with respect to the Approved Budget, subject to (i) a permitted positive variance that would not cause the total disbursements of the Debtors for the immediately preceding four (4) weeks (including Professional Fees (as defined below)) to be greater than one-hundred fifteen percent (115%) of the then-current Approved Budget over the corresponding time period, unless the amount in dollars of such variance above one-hundred fifteen percent (115%) is less than or equal to the positive variance with respect to total receipts of the Debtors for the same period, and (ii) a permitted negative variance that would not cause the total receipts of the Debtors for

the immediately preceding four (4) weeks to be an amount less than eighty percent (80%) of the then-current Approved Budget over the corresponding time period, first measured on the Friday immediately following the first full week after the date of the Interim Order, and then weekly on a rolling basis thereafter, unless the amount of such variance below eighty percent (80%) is less than or equal to the negative variance with respect to aggregate expenses and disbursements of the Debtors for the same period (a "Permitted Variance"). Further, the Debtors may carry forward or backward budgeted but unused disbursements and excess operating receipts over the budgeted amounts (the "Permitted Carry") in such testing period set forth in the Approved Budget for use in any subsequent or prior testing period.

5.     *Superpriority Claims*. Subject and subordinate to the Carve-Out, pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall be allowed claims against the Debtors, jointly and severally, with priority over any and all administrative expenses (the "DIP Superpriority Claims"), including, without limitation, any administrative expense claims on account of any postpetition intercompany transactions by and among the Debtors, diminution claims (including all Adequate Protection Superpriority Claims) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 552(b), 726, 1113, or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their Estates and all proceeds thereof excluding claims and causes of action arising under Bankruptcy Code sections

502(d), 544, 547, 548, 549, 550 and 553 and any other avoidance or similar action under the Bankruptcy Code or applicable nonbankruptcy law (collectively, the "Avoidance Actions") and the proceeds thereof.  Other than the Carve-Out, no claims (including, without limitation, any priority claims) are, or will be, senior to, prior to, or *pari passu* with the DIP Superpriority Claims or any of the DIP Obligations or with any of the other claims of the DIP Lenders arising under the Interim Order, this Final Order, the DIP Facility Documents or otherwise in connection with the DIP Facility.

6.     *DIP Liens and DIP Collateral*. As security for the DIP Obligations, effective and perfected automatically and immediately upon the entry of the Interim Order, pursuant to Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d), and without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by any of the DIP Lenders of any property, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens and mortgages (collectively, all such liens and security interests granted to the DIP Lenders pursuant to the Interim Order, this Final Order, and/or the DIP Facility Documents, the "DIP Liens") in and/or upon all tangible and intangible prepetition and postpetition property in which any of the Debtors or their respective Estates have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created, wherever located, including, without limitation, the proceeds, products, and offspring of any of the foregoing (collectively, the "DIP Collateral"), subject and subordinate only to the Carve-Out, were granted on an interim basis by

22

the Interim Order, and are hereby granted on a final basis by this Final Order, to the DIP Lenders as follows:[5]

      a.    *First Lien on Unencumbered Property*. Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully perfected first priority lien on, and security interest in, all DIP Collateral that is not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is permitted by Bankruptcy Code section 546(b), including: (i) any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real property, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property; and (ii) the proceeds, products and offspring of all of the foregoing.

      b.    *Liens Priming the Liens of the Prepetition Secured Lenders*. Pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully perfected first priority, senior priming lien on, and security interest in, all DIP Collateral comprising the Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of each of the Prepetition Secured Lenders, including the Adequate Protection Liens granted to such Prepetition Secured Lenders; *provided*, that the liens on the DIP Collateral shall be subject and subordinate only to (i) the Prior Liens and (ii) the Carve-Out (as applicable). The DIP Liens shall not be subject to challenge under the Bankruptcy Code or applicable non-bankruptcy law. No lien or interest

---

[5]    For the avoidance of doubt, "DIP Collateral" shall not include Avoidance Actions (or the proceeds thereof) or other Excluded Collateral (as defined in the DIP Credit Agreement).

US 7023839

avoided and preserved for the benefit of the Debtors' Estates pursuant to Bankruptcy Code section 551 shall be *pari passu* with or senior to the DIP Liens.

        c.     *Liens Junior to Certain Other Liens*.  Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully perfected junior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors that, on or as of the Petition Date (including pursuant to Bankruptcy Code section 546(b)), is subject to valid, perfected and unavoidable liens senior to the Prepetition Liens, including, without limitation, the Prior Liens.[6]

        7.     *Adequate Protection for the Prepetition Secured Lenders*. The Prepetition Secured Lenders are entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2), 363(e), 364(d)(1), 364(e), and 507, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, including any such diminution resulting from the sale, lease, encumbrance, or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such diminution in value, the "<u>Adequate Protection Obligations</u>"). As adequate protection for such diminution in value, and solely to the extent of the Adequate Protection Obligations, the Prepetition Secured Lenders were granted on an interim basis by the Interim Order, and are hereby granted on a final basis by this Final Order, the following:

---

[6]    For avoidance of doubt, the liens of Wells Fargo Bank, N.A., J.P. Morgan Chase Bank, N.A., and Century Bank & Trust in certain restricted cash that secures the corporate credit card program, certain letters of credit, and various reclamation obligations are Prior Liens within the meaning of this Final Order and such restricted cash shall not be Cash Collateral for purposes of this Final Order.

24

a.      *Adequate Protection Liens*. As security for the payment of the Adequate Protection Obligations, the Prepetition Secured Lenders are granted (effective and immediately and automatically perfected upon the entry of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected security interest in and liens (the "<u>Adequate Protection Liens</u>") on all of the Prepetition Collateral, which will be subject and subordinate only to (i) the DIP Liens, (ii) Prior Liens, and (ii) the Carve-Out.  The Adequate Protection Liens shall not have any recourse to the Avoidance Actions or the proceeds thereof.  For the avoidance of doubt, the Adequate Protection Liens do not extend to collateral that is not Prepetition Collateral, *provided*, *however*, that nothing in this paragraph 7(a) or any other provision of this Final Order shall limit the rights of the Prepetition Secured Lenders under section 552(b) of the Bankruptcy Code.

b.      *Adequate Protection Superpriority Claims*. The Adequate Protection Obligations shall be superpriority claims as provided in Bankruptcy Code section 507(b) (the "<u>Adequate Protection Superpriority Claims</u>") that will have a priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, subject and subordinate only to (i) the Carve-Out and (ii) the DIP Superpriority Claims. The Adequate Protection Superpriority Claims shall not have any recourse to the Avoidance Actions or the proceeds thereof.

c.      *Fees and Expenses*. As additional adequate protection to the Prepetition Secured Lenders, the Debtors shall pay all reasonable and documented out-of-pocket fees and expenses payable to the Prepetition Secured Lenders pursuant to the Prepetition Credit

Documents, whether incurred prepetition or postpetition, including the fees and expenses of Norton Rose Fulbright US LLP and Ankura Consulting Group, LLC, *provided*, that any invoices to, and payments made by, the Debtors under this paragraph shall be subject to the procedures set forth in paragraph 32 of this Final Order.

          d.     *Adequate Protection Payments*.  The Debtors are authorized and directed, on the first day of each month (unless such day is not a Business Day, in which the required payment date shall be the next succeeding Business Day) to make postpetition interest payments at the non-default rate to the Prepetition Secured Lenders, and any other payments (other than, for the avoidance of doubt, payment of principal) payable in the ordinary course of business under the Prepetition Credit Documents. To the extent that the Debtors have not paid any prepetition or postpetition amount of interest or other charges due under the Prepetition Credit Documents or the Interim Order, the Debtors are authorized and directed to make such payments. The Debtors and the Committee reserve their rights to argue that, to the extent that any cash payment of interest, fees, and/or expenses as adequate protection to the Prepetition Secured Lenders is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis (including, without limitation, as adequate protection on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied to reduce permanently the principal owed under the applicable Prepetition Credit Documents; *provided*, *however*, that the Prepetition Secured Lenders reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

        8.     *Carve-Out*.  Subject to the terms and conditions contained in this paragraph, each of the DIP Liens, DIP Obligations, DIP Superiority Claims, Prepetition Liens, Prepetition Loan Obligations, Adequate Protection Liens, Adequate Protection Superiority Claims, and any

other forms of adequate protection granted under the Interim Order or this Final Order and all other obligations of the Debtors, including any postpetition intercompany claims among the Debtors, shall be subject and subordinate to payment of the Carve-Out as follows.

      a.    As used in this Final Order, the term "Carve-Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court or any claims and noticing agent acting in such capacity and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code (without regard to the notice set forth in (c) below); (ii) all reasonable fees and expenses of up to $50,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in (c) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all fees (including success, completion, or transaction fees), disbursements, costs, and expenses accrued or incurred at any time before delivery by the DIP Lenders of a Carve-Out Trigger Notice by persons or firms retained by the Debtors or the Committee whose retention is approved by this Court pursuant to Bankruptcy Code sections 327, 328, 363, and/or 1103 (collectively, the "Professional Fees"), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Professional Fees in an aggregate amount not to exceed $500,000 incurred after delivery by the DIP Lenders of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clause (iv) being the "Carve-Out Trigger Notice Cap"); *provided*, that nothing herein shall be construed to impair the ability of any party to object to the allowance of fees, expenses, costs, disbursements, reimbursement, or compensation described in clauses (i) through (iv) above, on any grounds. For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the DIP Lenders to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel to

27

the Committee, which notice may be delivered, notwithstanding the provisions of Bankruptcy Code section 362, only upon the occurrence and during the continuation of an Event of Default, stating expressly that the Carve-Out Trigger Notice Cap has been invoked. Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been delivered, the Debtors shall be permitted to pay and/or reimburse, as applicable, Professional Fees that are allowed by the Court and payable under Bankruptcy Code sections 328, 330 and 331 and compensation procedures approved by the Court, and the payment and/or reimbursement of same shall not reduce the Carve-Out.

b.      On the day on which the Carve-Out Trigger Notice is delivered to the Debtors (the "Termination Declaration Date"), the Carve-Out Trigger Notice shall (i) subject in all respects to the maximum borrowing availability under the DIP Facility Documents, be deemed a draw request and notice of borrowing by the Debtors under the DIP Facility in an amount equal to the then-accrued and unpaid amounts of Professional Fees (any such amounts actually advanced shall be borrowings under the DIP Loan) and (ii) also be a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held or received by any Debtor to fund a reserve (the "Pre-Carve-Out Trigger Notice Reserve") in an amount equal to the then-accrued and unpaid amounts of Professional Fees. The Debtors shall deposit and hold in trust the Pre-Carve-Out Trigger Notice Reserve in a segregated account at the Debtors to pay such then-accrued and unpaid Professional Fees prior to any and all other claims (the "Professional Fees Account"); *provided, however*, that the Debtors shall not be authorized to use the funds in the Professional Fees Account once deposited for any purpose other than as set forth in this paragraph. On the Termination Declaration Date, the Carve-Out Trigger Notice shall also (i) subject in all respects to the maximum borrowing availability under the DIP Facility

28

Documents, be deemed a request by the Debtors to draw under the DIP Facility in an amount equal to the Carve-Out Trigger Notice Cap (any such amounts actually advanced shall be borrowings under the DIP Loan) and (ii) be a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held and received by any Debtor, after funding the Pre-Carve-Out Trigger Notice Reserve to fund a reserve (the "Carve-Out Trigger Notice Cap Reserve," and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") in an amount equal to the Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold in trust the Carve-Out Trigger Notice Cap Reserve in the Professional Fees Account to pay such Professional Fees benefiting from the Carve-Out Trigger Notice Cap prior to any and all other claims, *provided, however*, that the Debtors shall not be authorized to use such funds in the Professional Fees Account once deposited for any purpose other than as set forth in this paragraph. On the first Business Day after the DIP Lenders give such notice, notwithstanding anything in the DIP Facility Documents to the contrary, including with respect to the existence of an Event of Default, the failure of the Debtors to satisfy any or all the conditions precedent for the DIP Loan under the DIP Facility, any termination of the DIP Obligations following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), the DIP Lenders shall make available such amounts necessary to satisfy the Carve-Out Reserves in accordance with the DIP Facility, subject in all respects to the maximum borrowing availability under the DIP Facility Documents. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out in paragraph 8(a) above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Carve-Out Trigger Notice Cap Reserve, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lenders, unless

all DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments (as defined in the DIP Credit Agreement) have been terminated, in which case any such excess shall be paid to the Prepetition Secured Lenders, in accordance with their rights and priorities as of the Petition Date. All funds in the Carve-Out Trigger Notice Cap Reserve shall be first used to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth in paragraph 8(a) above (the "Post-Carve-Out Amounts"), and then, to the extent the Carve-Out Trigger Notice Cap Reserve has not been reduced to zero, to pay any unfunded Pre-Carve Out Amounts, and then if there remains an excess, to pay the DIP Lenders, unless all DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Lenders, in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Facility Documents or this Final Order, following delivery of a Carve-Out Trigger Notice, the DIP Lenders and the Prepetition Secured Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets or property) of the Debtors or the Estates or the DIP Collateral until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with funds resulting from such residual interest paid first to the DIP Lenders, unless all DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Obligations have been terminated, in which case any such excess shall be paid to the Prepetition Secured Lenders, in accordance with their rights and priorities as of the Petition Date. The Carve-Out Reserve shall be held in trust for the benefit of the U.S. Trustee, any chapter 7 trustee appointed for any of the Debtors or their respective Estates (if any), and professionals retained by the Debtors or the Committee to pay the Professional Fees benefitting from the Carve-Out Reserve subject to the allowance of such

US 7023839

Professional Fees and the aggregate amount of the Carve-Out. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not be Loans (as defined in the DIP Facility Documents) or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (iii) the Carve-Out Reserves shall serve as a limitation only on the amount of Professional Fees that may be paid from such Carve-Out Reserves, and in no way shall the Approved Budget, the Carve-Out, the Carve-Out Trigger Notice Cap, the Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of Professional Fees that a party in interest may seek to be paid by the Debtors in these Chapter 11 Cases.

        c.      Any payment or reimbursement made on or after the delivery to the Debtors of a Carve-Out Trigger Notice in respect of any Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall otherwise be entitled to the protections granted under this Final Order, the DIP Facility Documents, the Bankruptcy Code, and applicable law.

        d.      Notwithstanding the foregoing, the Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation (A) against the Prepetition Secured Lenders or (B) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the obligations, indebtedness, or the liens and security interests granted or arising under or in connection with the DIP Facility Documents or the Prepetition Credit Documents (whether in such capacity or

otherwise), including, in each case, without limitation, for lender liability or pursuant to Bankruptcy Code section 105, 510, 544, 547, 548, 549, 550, or 552, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the DIP Lenders or the Prepetition Secured Lenders; (iii) attempts to prevent, hinder, or otherwise delay any of the DIP Lenders' or the Prepetition Secured Lenders' assertion, enforcement, or realization upon any DIP Collateral or Prepetition Collateral, as applicable, in accordance with the DIP Facility Documents, the Interim Order, this Final Order, or the Prepetition Credit Documents; (iv) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are provided for in the Approved Budget or approved by an order of this Court; (v) the prosecution or support any plan of liquidation or reorganization that crams down or reinstates the Prepetition Loan Obligations; or (vi) any direct or indirect objection or opposition to, or any other effort to impede or compromise in any way, any credit bid made by the DIP Lenders or the Prepetition Secured Lenders to the extent such bid is not consistent with the Interim Order or this Final Order; *provided*, that no more than an aggregate of $75,000 of the DIP Loan, the DIP Collateral, the Prepetition Collateral, proceeds of the foregoing, and the Carve-Out may be used by the Committee in respect of the investigation of the claims and liens of the Prepetition Secured Lenders, solely to the extent set forth in this Final Order (but not to litigate, object to, or challenge any of the foregoing) and potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured Lenders, solely to the extent set forth in this Final Order (but not to litigate any of the foregoing).

US 7023839

9.    *Limitations on Charging Expenses Against Collateral.*

a.    No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against or recovered from the DIP Lenders or any of their respective claims or the DIP Collateral, as the case may be, pursuant to Bankruptcy Code section 506(c), or any similar principle of law, without the prior written consent of the DIP Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders; *provided* that the DIP Lenders and the Prepetition Secured Lenders (as applicable) have fully funded or authorized sufficient use of Cash Collateral to fully fund the Carve-Out.

b.    No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against or recovered from the Prepetition Secured Lenders or any of their respective claims or the Prepetition Collateral, as the case may be, pursuant to Bankruptcy Code section 506(c), or any similar principle of law, without the prior written consent of the Prepetition Secured Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Lenders; *provided* that the DIP Lenders and the Prepetition Secured Lenders (as applicable) have fully funded or authorized sufficient use of Cash Collateral to fully fund the Carve-Out.

10.    *Limitations Under Bankruptcy Code Section 552(b).* The Prepetition Secured Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Lenders with respect to proceeds, products, or offspring of any of the Prepetition Collateral or the extension of Adequate Protection Liens to the proceeds, products, or offspring of the Prepetition Collateral..

11.     *Use of Prepetition Collateral, Including Cash Collateral.* Subject to the terms and conditions of the DIP Facility Documents, the Interim Order, and this Final Order, and in accordance with the Approved Budget, which shall be subject to Permitted Variances and the Permitted Carry, the Debtors are authorized to use the DIP Collateral and Prepetition Collateral, including Cash Collateral, until the DIP Termination Date (as defined below) for working capital and general corporate purposes, including interest, fees, costs, and expenses related to these Chapter 11 Cases, the DIP Loan, and the DIP Facility Documents, including payment of any adequate protection obligations as set forth herein; *provided*, that nothing in this Final Order shall authorize, other than in the ordinary course of the Debtors' business, the sale, transfer, lease, encumbrance, or other disposition of any assets of the Debtors or their Estates without the prior written consent of the DIP Lenders (and no such consent or direction shall be implied from any other action, inaction, or acquiescence by any DIP Lender or any order of this Court), except as permitted in the DIP Facility Documents, the Interim Order, and this Final Order and approved by the Court to the extent required under applicable bankruptcy law.

12.     *Continuation of Prepetition Liens.* Until (a) the Debtors have paid in full all Prepetition Loan Obligations and (b) all objections and challenges to (i) the liens and security interests of the Prepetition Secured Lenders (including, without limitation, liens granted for adequate protection purposes) and (ii) the Prepetition Loan Obligations, in each case, have been waived, denied, or barred, and (c) all of the Debtors' Stipulations have become binding upon the Debtors, their Estates, and parties in interest in accordance with paragraph 24 herein, all liens and security interests of the Prepetition Secured Lenders (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein.

34

US 7023839

13.  *Waiver of Right to Seek Additional Adequate Protection*. Unless an Event of Default has occurred, the DIP Lenders and Prepetition Secured Lenders agree not to request further or different adequate protection.

14.  *Perfection of DIP Liens and Adequate Protection Liens*. The Interim Order and this Final Order, individually or together, shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted in the Interim Order or herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Lenders or the Prepetition Secured Lenders to the priorities granted herein. Notwithstanding the foregoing, the DIP Lenders and the Prepetition Secured Lenders are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over, or take any other action, as they may elect, in order to validate and perfect the liens and security interests granted to them in the Interim Order and hereunder. In addition, to the extent that any filing and any other perfection actions described in the foregoing were taken by or in favor of the Prepetition Secured Lenders in respect of the Prepetition Loan Obligations, such filings and actions shall serve to perfect the DIP Liens in favor of the DIP Lenders, securing the DIP Obligations. Whether or not the DIP Lenders or any Prepetition Secured Lender chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take

possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it in the Interim Order or hereunder, such liens and security interests were deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination effective automatically and immediately upon entry of the Interim Order. A certified copy of either of the Interim Order or this Final Order may, in the discretion of the DIP Lenders or the Prepetition Secured Lenders, as the case may be, be filed with any filing or recording office or with any registry of deeds or similar office, and accordingly, each officer is authorized to accept such certified copy of the Interim Order or this Final Order for filing and recording.

15.     *Appropriateness of Liens*. The DIP Liens granted to the DIP Lenders on an interim basis by the Interim Order, and on a final basis by this Final Order, are appropriate under Bankruptcy Code section 364(d) because, among other things: (a) the applicable Prepetition Secured Lenders have consented, are deemed to have consented, or do not otherwise object to such priming DIP Liens; and (b) the grant of the DIP Liens is otherwise in compliance with Bankruptcy Code section 364(d).

16.     *Evidence of Liens*. The Debtors shall execute and deliver promptly to the DIP Lenders or the Prepetition Secured Lenders, as the case may be, all such financing statements, mortgages, control agreements, notices, and other documents as the DIP Lenders or the Prepetition Secured Lenders, as the case may be, may reasonably request to evidence, confirm, validate, or perfect the DIP Liens or the Adequate Protection Liens.

17.     *Preservation of Rights Granted Under this Final Order and the DIP Facility Documents*. Other than the Carve-Out, the DIP Liens, the DIP Superpriority Claims, and any liens permitted pursuant to the Prepetition Credit Documents or the DIP Facility Documents and

36

any Prior Liens, no claim or lien having a priority senior to or *pari passu* with those granted by the Interim Order or this Final Order to the Prepetition Secured Lenders shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' Estates under Bankruptcy Code section 551 or subordinated to or made *pari passu* with any other lien or security interest approved by the Court, whether under Bankruptcy Code section 364(d) or otherwise.

18.     *Enforceability of DIP Obligations and Adequate Protection Obligations*. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (a) the validity, priority, or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur or (b) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtors to the DIP Lenders or the Prepetition Secured Lenders, as the case may be, prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Lenders or the Prepetition Secured Lenders shall be entitled to all of the rights, remedies, privileges, and benefits granted in Bankruptcy Code section 364(e), this Final Order, the DIP Facility Documents (with respect to all DIP Obligations), the Adequate Protection Obligations, and the use of Cash Collateral.

19.     Except as expressly provided in this Final Order or in the DIP Facility Documents, the Carve-Out, the DIP Liens, the DIP Superpriority Claims, the Adequate

Protection Liens, the Adequate Superpriority Claims, and all other rights and remedies of the DIP Lenders and the Prepetition Secured Lenders granted by the Interim Order, this Final Order, or the DIP Facility Documents shall survive, and shall not be modified, impaired, or discharged by (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, or (b) the entry of a confirmation order and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors' waiver of discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Final Order and the DIP Facility Documents shall continue in these Chapter 11 Cases and in any Successor Cases, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Carve-Out, the Adequate Protection Obligations, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to the Interim Order or this Final Order, and all other rights and remedies of the DIP Lenders or the Prepetition Secured Lenders granted by the Interim Order or this Final Order and the DIP Facility Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash or receive other treatment as agreed to by the DIP Lenders and all Adequate Protection Obligations, if any, are indefeasibly paid in full in cash or receive other treatment as agreed to by the Prepetition Secured Lenders.

20.    *After-Acquired Property*. Except as otherwise provided in this Final Order, pursuant to Bankruptcy Code section 552(a), all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, including, without limitation, in respect of the Prepetition Credit Documents (other than with respect to the replacement liens that form a portion of the Adequate Protection Liens), except to the extent that

such property constitutes proceeds of property of the Debtors that is subject to a valid, binding, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code, other provisions or principles of applicable law or is otherwise permitted by the DIP Facility Documents.

21.      *Protection of the Rights of the DIP Lenders or the Prepetition Secured Lenders*. Unless the DIP Lenders or the Prepetition Secured Lenders have provided their prior written consent, as applicable, or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any confirmation order) that authorizes any of the following:  (a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims except as expressly set forth in this Final Order; (b) the use of Cash Collateral for any purpose other than as permitted in the DIP Facility Documents, the Interim Order, and this Final Order; (c) the return of goods pursuant to Bankruptcy Code section 546(h) (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to Bankruptcy Code section 553 or otherwise; or (d) any modification of any of the DIP Lenders' or the Prepetition Secured Lenders' rights under this Final Order, the DIP Facility Documents, or the Prepetition Secured Documents with respect to any DIP Obligations or Prepetition Loan Obligations.

22.     *Proceeds of Subsequent Financing.* If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt other than the credit or debt provided pursuant to the DIP Facility Documents at any time prior to the repayment in full of all DIP Obligations and all Prepetition Loan Obligations, including subsequent to the entry of a confirmation order with respect to the Debtors and the Debtors' Estates, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders until indefeasible payment in full of the DIP Obligations in accordance with the DIP Facility Documents.

23.     *Cash Management System.* The cash management system described in the Debtors' motion [Docket No. 9] seeking authority to use such system (among other relief) (the "Cash Management Motion") or in the DIP Credit Agreement and all accounts established in connection therewith shall be used for purposes and on the terms and conditions set forth in the Approved Budget, which shall be subject to Permitted Variances and the Permitted Carry. The Debtors and the DIP Lenders are further authorized to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the DIP Lenders in accordance with the terms of the DIP Credit Agreement, the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue Using Existing Checks and Business Forms, (C) Maintain Their Corporate Card Programs, and (D) Continue Intercompany Transactions, (II) Providing Administrative Expense Priority Status for Postpetition Intercompany Claims, And (Iii) Granting Related Relief* [Docket No. 37], or the final order granting the relief sought pursuant to the Cash Management Motion.

40

24.     *Challenge Period*. The Debtors' Stipulations and the releases in paragraph E(ix) shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The Debtors' Stipulations and the releases set forth herein, including in paragraph E(ix) hereof, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' Estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless such committee or any other party in interest with standing has filed an adversary proceeding or contested matter (a "Challenge") by no later than the earlier of (i) five (5) Business Days prior to any confirmation hearing regarding a plan of reorganization in these Chapter 11 Cases and (ii) sixty (60) days after the date of entry of the Interim Order (each date, the "Challenge Period") (x) contesting, challenging, or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, the Interim Order, or this Final Order or (y) otherwise asserting or prosecuting any action against any or all of the Prepetition Secured Lenders in connection with or related to the Prepetition Loan Obligations, or the actions or inactions of any of the Prepetition Secured Lenders arising out of or related to the Prepetition Loan Obligations or otherwise, including, without limitation, any claim against any of the Prepetition Secured Lenders in the nature of "lender liability" or other causes of action, setoff, counterclaim, or defense to any of the Prepetition Loan Obligations whether arising at law or at equity, including, without limitation, any recharacterization, subordination (whether equitable or otherwise), avoidance, or other claims arising under or pursuant to chapter 5 of the Bankruptcy Code, or any other claims and causes of action against the Prepetition Secured

41

US 7023839

Lenders (all such claims, defenses, and other actions described in this paragraph are collectively defined as the "Claims and Defenses"); *provided*, *however*, that with respect to the Committee, the Challenge Period shall be the earlier of (A) five (5) Business Days prior to any confirmation hearing regarding a plan of reorganization in these Chapter 11 Cases or (B) seventy-five (75) days after the date of entry of this Final Order. If no Challenge is filed during the Challenge Period, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors' Stipulations and the releases set forth herein and in the Interim Order shall be binding on all parties in interest. If such a Challenge is found to be timely and properly brought, any claim or action that is not so pleaded shall be forever barred subject to the Federal Rules of Civil Procedure. In the event of a successful challenge by a plaintiff in such a Challenge, this Court shall fashion the appropriate remedy. The DIP Liens, Adequate Protection Liens, the DIP Superpriority Claims, and the Prepetition Liens shall be senior to, and no Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Cases), any creditor or party in interest, the Committee, or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter against the Prepetition Secured Lenders in connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Credit Documents, the Prepetition Loan Obligations, the Prepetition Liens, or the Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly, the Prepetition Secured Lenders' assertions or enforcement of their liens, security interests, or realization upon any of the

42

US 7023839

Prepetition Collateral; *provided*, *however*, that in the event the liens, security interests or claims of the Prepetition Secured Lenders are voided, avoided, disallowed, or subordinated, then any lien or priority granted to the Prepetition Secured Lenders in the Interim Order or hereunder may be voided, avoided, disallowed, or subordinated to the same extent, and no provision hereof shall preclude or impair the Court from imposing any appropriate remedy in such event; *notwithstanding the foregoing*, Prepetition Collateral and Cash Collateral may be used by the Debtors to defend against or respond to any claim, counterclaim, action, proceeding, or other contested matter where any of the Debtors are named as a party or are required to respond to discovery, including those made in connection with a Challenge. Nothing in the Interim Order or this Final Order vests or confers on the Committee or any other official committee appointed in these Chapter 11 Cases or any other party standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtors or their Estates, including, without limitation, the Claims and Defenses with respect to the Prepetition Credit Documents, the Prepetition Liens, or the Prepetition Loan Obligations.

25.    [Reserved].

26.    *Events of Default*. Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use proceeds of the DIP Facility and Cash Collateral shall terminate without prior order of this Court or any further action by the DIP Lenders or the Prepetition Secured Lenders, unless waived by the DIP Lenders in writing and in accordance with the terms of the DIP Facility Documents, on the earliest to occur of (each, an "<u>Event of Default</u>", and the date of any such Event of Default, the "<u>DIP Termination Date</u>"):

a.    the failure to meet or satisfy any of the following milestones:[7]

---

[7] For avoidance of doubt and in light of any issues arising from potential governmental closures and due process considerations relating to COVID-19, the DIP Lenders will consider, in good faith and at their discretion,

i.     thirty (30) days following the Petition Date, the Court shall have entered this Final Order and such Final Order shall be in full force and effect and shall not have been (A) vacated, reversed, or stayed, or (B) amended or modified except as otherwise agreed to in writing by the DIP Lenders;

ii.     fifty (50) days after the Petition Date, if an order has not been entered by this Court approving the adequacy of a disclosure statement, including on a conditional basis;

iii.     ninety (90) days after the Petition Date, if a confirmation order, in form and substance acceptable to the DIP Lenders and the Prepetition Agent (the "<u>Confirmation Order</u>"), confirming the Plan (and, only to the extent applicable, approving the disclosure statement on a final basis) has not been entered by this Court by such date; or

iv.     sixteen (16) days after entry of the Confirmation Order, the effective date of the Plan shall have occurred and the Debtors shall have discharged the DIP Loan by (A) Payment in Full of the DIP Obligations or (B) such other treatment as acceptable to the DIP Lenders and the Debtors in accordance with the Restructuring Support Agreement;

b.     the date that an order is issued by any court of competent jurisdiction denying confirmation of a plan in the Chapter 11 Cases;

c.     any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading or support a motion or other pleading filed by any other Person seeking the dismissal or conversion of any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise, in each case, without the consent of the DIP Lenders;

d.     a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed in any of the Chapter 11 Cases or any Debtor shall file a motion or other pleading or shall consent to a motion or other pleading filed by any other Person seeking any of the foregoing;

e.     entry of an order by the Court without the consent of the DIP Lenders granting any other Superpriority Claim or any Lien (other than the Carve-Out and those approved by the DIP Orders) which is *pari passu* with or

---

reasonable extensions of the milestones set forth below on a case by case basis as may become necessary as a result of any such possible closures and due process issues.

US 7023839

senior to the claims of the DIP Lenders against any other Debtor, or there shall arise or be granted any such pari passu or senior Superpriority Claim (other than the Carve-Out and those approved by the DIP Orders) or any Debtor shall file a motion or other pleading or support a motion or other pleading filed by any other Person requesting any of the foregoing (other than in connection with any financing pursuant to which the DIP Obligations would be Paid in Full);

f.      three (3) Business Days after entry of an order by the Court, without the consent of the DIP Lenders, granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code (A) to the holder or holders of any security interest to proceed against, including foreclosure (or the granting of a deed in lieu of foreclosure or the like) on, any assets of any Debtor that have a value in excess of $250,000 in the aggregate (excluding foreclosure or setoff of liens or security interests on cash or cash equivalents pledged to secure or support letters of credit, reclamation obligations, corporate credit card programs or other obligations of a like nature incurred in the ordinary course of business) or (B) to any state or local environmental or regulatory agency or authority to proceed against, including foreclose (or the granting of a deed in lieu of foreclosure or the like) on, any assets of any Debtor that have a value in excess of $250,000;

g.      an order of the Court (or any other court of competent jurisdiction) shall be entered, whether on appeal or otherwise, (A) without the written consent of the DIP Lenders, reversing, staying, modifying, or vacating the DIP Orders that would otherwise be in effect, (B) without the written consent of the DIP Lenders, amending, supplementing or modifying the DIP Orders then in effect or (C) denying or terminating the use of cash collateral by the Debtors pursuant to the DIP Orders; or any Debtor shall file a motion or other pleading or shall support a motion or other pleading filed by any other Person seeking any of the foregoing;

h.      the failure of any Debtor to comply in any respect with any material provision of the DIP Orders, the Restructuring Support Agreement, or any DIP Facility Document (in each case, subject to any applicable notice and cure periods set forth therein);

i.      the Court shall enter an order imposing, surcharging or assessing against any DIP Lender's interest in the Collateral any costs of expenses, whether pursuant to sections 506(c) or 552 of the Bankruptcy Code or otherwise, or any Debtor shall file a motion or other pleading or support a motion or other pleading filed by any other Person requesting the foregoing;

j.      the Court shall terminate or reduce the periods pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a chapter 11 plan and solicit acceptances thereof;

k.      a Debtor seeks court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the DIP Lenders or Prepetition Secured Lenders, *provided*, *however*, that the Debtors may comply with discovery requests in connection with any such suit or other proceeding in accordance with applicable law;

l.      entry of an order by the Court (or any other court of competent jurisdiction) approving any financing under Section 364 of the Bankruptcy Code (other than under the DIP Facility Documents) without the written consent of the DIP Lenders that does not result in Payment in Full of the DIP Obligations or any Debtor shall file a motion or other pleading or shall support a motion or other pleading filed by any other Person seeking any of the foregoing;

m.      any Debtor contests the validity or enforceability of any provision of any DIP Facility Document or any Prepetition Credit Document or the validity, extent, perfection or priority of a lien or claim granted in favor of the DIP Lenders or the Prepetition Secured Lenders or shall support or consent to any other Person concerning the foregoing; *provided*, *however*, that the Debtors may comply with discovery requests in connection with any suit or proceeding in accordance with applicable law;

n.      the filing by any Debtor of any plan under Chapter 11 of the Bankruptcy Code without the consent of the DIP Lenders;

o.      an order of the Court shall be entered approving a sale of substantially all of the Debtors' assets that (i) does not propose for all DIP Obligations to be Paid in Full on the effective date of such sale or (ii) is not consented to in writing by the DIP Lenders in their sole discretion;

p.      an order (other than the DIP Orders) of the Court shall be entered pursuant to section 363(k) of the Bankruptcy Code limiting the ability of the DIP Lenders, either individually or together with one or more DIP Lenders, to credit bid the full amount of their claims in the Chapter 11 Cases in connection with any asset sale process or plan sponsorship process or any sale of assets (in whole or part) by any Debtor, including without limitation sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code;

q.      an order shall have been entered by the Court without the consent of the DIP Lenders providing for a change in venue with respect to these Chapter 11 Cases;

r.      three (3) Business Days after a Debtor shall be enjoined, restrained, or in any way prevented by order of a court of competent jurisdiction from

46

continuing to conduct all or any part of the business affairs of the Debtor, taken as a whole, which could reasonably be expected to have a Material Adverse Effect; *provided* that the Debtors shall have thirty (30) days after the entry of such an order to obtain a court order vacating, staying or otherwise obtaining relief from the Court or another court to address any such court order;

s.    the occurrence of a Termination Event (as defined in the Restructuring Support Agreement) or the Restructuring Support Agreement is otherwise terminated pursuant to Section 5 thereof;

t.    if the DIP Lenders provide a written objection to the new Approved Budget and the Borrower and DIP Lenders are unable to resolve the objection in accordance with the DIP Order within three (3) Business Days of the DIP Lenders delivery of such objection to such supplemental or new Approved Budget;

u.    a violation of any Permitted Variance that is not resolved and approved in writing by the DIP Lenders within three (3) Business Days after the delivery of the applicable Permitted Variance report;

v.    any Debtor shall file, support, or acquiesce in any motion or other pleading with the intent of effectuating a merger, consolidation, disposition, acquisition, investment, dividend, incurrence of indebtedness, or other similar transaction outside of the ordinary course of business other than (i) the commencement of the Chapter 11 Cases, (ii) as permitted under the DIP Orders or the Restructuring Support Agreement, or (iii) with the prior consent of the DIP Lenders;

w.    three (3) Business Days after the date any Debtor enters into any non-ordinary course transaction or makes any payment that is materially inconsistent with the Restructuring Support Agreement, the Plan (as defined in the Restructuring Support Agreement), or the Approved Budget without the prior written consent of the DIP Lenders; or

x.    any Event of Default set forth in Section 7.1 of the DIP Credit Agreement.

27.    *Rights and Remedies Upon Event of Default*.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order and the Carve-Out, (a) the DIP Lenders may declare (such declaration, a "Termination Declaration") (i) all DIP Obligations

US 7023839

owing under the DIP Facility Documents to be immediately due and payable; (ii) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility; (iii) termination of the DIP Facility and the DIP Facility Documents as to any future liability or obligation of the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations; and (iv) that the application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice to the Debtors and (b) subject to this paragraph, the DIP Lenders may declare the immediate termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral. After five (5) Business Days from the date a DIP Lender delivers a Termination Declaration in accordance with the foregoing sentence (the "Remedies Notice Period"), (a) the DIP Lenders shall be entitled to file a motion to seek an order authorizing them to exercise their rights and remedies in accordance with the DIP Facility Documents and this Final Order to satisfy the DIP Obligations, the DIP Superpriority Claims, and the DIP Liens, subject to the Carve-Out; and (b) the Prepetition Secured Lenders shall be entitled to file a motion to seek an order authorizing them to exercise their rights and remedies to the extent available in accordance with the applicable Prepetition Credit Documents and this Final Order with respect to the Debtors' use of Cash Collateral, subject to the Carve-Out. During the Remedies Notice Period, the DIP Lenders and the Prepetition Secured Lender shall be entitled to seek an emergency hearing with the Court for an order lifting or modifying the automatic stay to permit the DIP Lenders and/or the Prepetition Secured Lenders to exercise their rights and remedies in accordance with the DIP Facility Documents and this Final Order to satisfy the DIP Obligations, the DIP Superpriority Claims, and the DIP Liens, subject to the Carve-Out and the Debtors shall not oppose the scheduling of such an emergency hearing. Except as set forth in this paragraph or otherwise

48

US 7023839

ordered by the Court prior to the expiration of the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lenders or the Prepetition Secured Lenders under this Final Order, the DIP Facility Documents, or the Prepetition Credit Documents.

28.     *Insurance*. To the extent any Prepetition Secured Lender is listed as loss payee under the Debtors' insurance policies, the DIP Lenders are also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP Facility Documents, and if the DIP Lenders receive any proceeds in such capacity, it shall (subject to the Carve-Out) distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment of the DIP Obligations until paid in full in accordance with the terms of the DIP Facility Documents, and second, to the extent such proceeds are proceeds of Prepetition Collateral, payment of the Prepetition Loan Obligations, subject to the terms of the Prepetition Credit Documents. The Debtors shall maintain insurance on the Prepetition Collateral and the DIP Collateral in amounts, for the risks, and by the entities as required under the Prepetition Credit Documents and the DIP Facility Documents.

29.     *Limitations on Lender Liability*. Nothing in this Final Order, the Interim Order, any of the DIP Facility Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders or the Prepetition Secured Lenders of any liability for any claims arising from any activities by the Debtors in the operation of their business or in connection with the administration of these Chapter 11 Cases. The DIP Lenders and the Prepetition Secured Lenders shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or

49

operator" with respect to the operation or management of the Debtors. Nothing in this Final Order, the Interim Order, any of the DIP Facility Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders and the Prepetition Secured Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

30.     *Final Order Controls*. In the event of any inconsistency between the provisions of the Interim Order, this Final Order, and the DIP Facility Documents or any other order entered by this Court, the provisions of this Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in the Interim Order, this Final Order, and the DIP Facility Documents, including, without limitation, the Approved Budget.

31.     *Binding Effect of Final Order*. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order, including the liens granted herein shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Secured Lenders, all other creditors of the Debtors, the Committee, any other official committee formed in these Chapter 11 Cases, the U.S. Trustee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases, any Successor Case, or upon dismissal of the Chapter 11 Cases or any Successor Case.

32.     *Costs, Fees, and Expenses of the DIP Lenders*. Subject to the provisions set forth herein, the Debtors are authorized to pay, when due and payable and without regard to whether

US 7023839

such fees and expenses were incurred prepetition or postpetition, any and all reasonable fees and expenses payable to the DIP Lenders pursuant to the DIP Facility Documents and incurred by (a) the DIP Lenders, (b) Norton Rose Fulbright US LLP or (c) Ankura Consulting Group, LLC in connection with these Chapter 11 Cases in any and all capacities, whether or not the transactions contemplated hereby are consummated but in accordance with the Approved Budget, including, without limitation, fees and expenses incurred in connection with any legal proceeding relating to or arising out of the DIP Facility or the other transactions contemplated by the DIP Facility Documents, including the Chapter 11 Cases. Payment of all such professional fees and expenses shall not be subject to allowance by the Court but shall be subject to the process set forth in the following sentences. At the same time such invoices are delivered to the Debtors, the professionals for the DIP Lenders shall deliver a copy of their respective invoices to counsel for the Committee and the U.S. Trustee. The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only (but including the applicable timekeepers, their respective hourly rates, and hours billed by each timekeeper), and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee, or the Committee with respect to such invoices within ten (10) Business Days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors. Such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

33.    *Right to Credit Bid*. Subject to Bankruptcy Code section 363(k) and the terms of the DIP Facility Documents, the Restructuring Support Agreement, and the Carve-Out, (a) the

DIP Lenders shall have the right to credit bid all or any portion of the full amount of the DIP Obligations as part of any asset sale process, whether conducted by Bankruptcy Code section 363 or 1129 or otherwise and (b) subject to any right to make a Challenge pursuant to paragraph 24, the terms of the Restructuring Support Agreement, and the Carve-Out, the Prepetition Secured Lenders shall have the right to credit bid all or any portion of the full amount of the Prepetition Loan Obligations as part of any asset sale process, whether conducted by Bankruptcy Code section 363 or 1129 or otherwise.

34.    *Indemnification of DIP Lenders*. The DIP Lenders shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtors, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors. The Debtors shall indemnify and hold harmless the DIP Lenders and their respective affiliates and officers, directors, employees, agents, and advisors to the extent set forth in the DIP Credit Agreement.

35.    *Proofs of Claim*. Any order entered by this Court establishing a bar date for any claims (including, without limitation, administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to the DIP Lenders or the Prepetition Secured Lenders. The DIP Lenders and the Prepetition Secured Lenders shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by the Interim Order or this Final Order relating to the amount of the DIP Obligations, the Prepetition Loan Obligations, the Adequate Protection Superpriority Claim, the Adequate Protection Liens, the Prepetition Liens, the DIP Liens, and the DIP Superpriority Claims shall constitute a timely filed proof of claim and/or administrative expense request.

US 7023839

36.     *Restrictions on Use of Proceeds*. Notwithstanding anything herein to the contrary, no proceeds from the DIP Facility, DIP Collateral, Cash Collateral, Prepetition Collateral, or proceeds, products, or offspring thereof or any portion of the Carve-Out may be used by any of the Debtors, the Committee, any other official committee formed in these Chapter 11 Cases, or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Case, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authority to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d) or otherwise, other than from the DIP Lenders; (b) investigate, assert, join, commence, support, or prosecute any action for any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Lenders, the Prepetition Secured Lenders, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter; (c) modify or attempt to modify any of the rights granted to the DIP Lenders with respect to the DIP Facility; (d) subject to paragraph 27, attempt to prevent, hinder, or otherwise delay any of the DIP Lenders' assertion, enforcement, or realization upon any DIP Collateral in accordance with the DIP Facility Documents and this Final Order once an Event of Default has occurred and after delivery of a Termination Declaration except to the extent set forth herein with respect to the Remedies Notice Period; (e) prosecute or support any plan of liquidation or reorganization that crams down or reinstates the Prepetition Loan Obligations; (f) directly or indirectly object to, impede, oppose, or compromise in any way any credit bid made by the DIP Lenders or the Prepetition Secured Lenders made in accordance with this Final Order and the Restructuring

Support Agreement or (g) pay any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of this Court; *provided*, *however*, that up to $75,000 of proceeds of the DIP Facility and/or Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of professionals retained by the Committee and incurred directly in connection with investigating, but not preparing, initiating, or prosecuting, any Claims and Defenses against the Prepetition Secured Lenders or with regard to the Prepetition Loan Obligations or Prepetition Liens. None of the DIP Lenders or the Prepetition Secured Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any retained professionals, the Committee, the U.S. Trustee, or the Clerk of this Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in the Interim Order, this Final Order, or otherwise shall be construed to obligate such parties in any way to (i) pay such compensation to or to reimburse such expenses or (ii) assure that the Debtors have sufficient funds on hand to pay any of the foregoing.

37.    *Rights Preserved*. Other than as expressly set forth in this Final Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders and the Prepetition Secured Lenders are preserved. Nothing contained herein shall be deemed to be a finding by this Court or an acknowledgement by the Prepetition Secured Lenders that the adequate protection granted in the Interim Order or herein does in fact adequately protect the Prepetition Secured Lenders against any postpetition diminution in value of the Prepetition Collateral.

38.    *No Waiver by Failure to Seek Relief*. The failure or delay of the DIP Lenders or the Prepetition Secured Lenders to seek relief or otherwise exercise their respective rights and

remedies under this Final Order, the Prepetition Credit Documents, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lenders or the Prepetition Secured Lenders.

39.  *No Third Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

40.  *No Marshaling*. The DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to the Interim Order, this Final Order, and the DIP Facility Documents notwithstanding any other agreement or provision to the contrary, and (ii) the Prepetition Secured Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

41.  *Immediate Enforceability*. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order. Good cause has been shown for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2.

42.  *Interim Order.*  Except as specifically amended or otherwise modified hereby, all of the provisions of the Interim Order and any actions taken by the Debtors, the DIP Lenders, or

the Prepetition Secured Lenders in accordance therewith shall remain in effect and are hereby ratified by this Final Order.

43.     *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce this Final Order according to its terms to the fullest extent permitted by applicable law.

44.     *Taxing Authorities*. Nothing in this Final Order or any prior order shall be construed to grant or acknowledge liens or claims that prime any valid prepetition and/or postpetition liens and/or allowed claims for ad valorem taxes of Bexar County, Brazos County, Cypress-Fairbanks Independent School District, Dallas County, Dallas County Utility & Reclamation District, Harris County, Irving Independent School District, Jim Wells CAD, and Upton County Appraisal District (collectively, the ***Tax Authorities***).  Such liens of the Tax Authorities for allowed ad valorem tax claims shall be Prior Liens.  All surcharge rights under 11 U.S.C. Section 506(c) are retained with respect to the Tax Authorities who are not required to file an adversary proceeding or contested matter to preserve the state law priority of their liens.

Signed: April 23, 2020

_____
Marvin Isgur
United States Bankruptcy Judge

US 7023839

## **<u>EXHIBIT 1</u>**

**Agreed Budget**