## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | **Chapter 11** |
| **CARBO CERAMICS INC., et al.**[1] | § § | **Case No. 20-31973 (MI)** |
| Debtors. | § § | **(Jointly Administered)** |
|  | § § § | **RE: Docket No. 118, 285** |

## DECLARATION OF K. SCOTT VAN METER IN SUPPORT OF THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE TO THE PETITION DATE

I, K. Scott Van Meter, hereby declare, pursuant to 28 U.S.C. § 1764, as follows:

1.       I am a Senior Managing Director with GlassRatner Advisory & Capital Group, LLC ("**GlassRatner**"), which maintains offices at 4400 Post Oak Parkway, Suite 1400, Houston, Texas 77027.

2.       The Official Committee of Unsecured Creditors (the "**Committee**") of CARBO Ceramics Inc. and its related debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") retained GlassRatner as financial advisor.[2]

3.       This declaration is submitted in support of the *Objection to the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Debtors Effective to the Petition Date* [Docket No. 285]

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. ("CARBO") (0013); StrataGen, Inc. ("StrataGen") (5205); and Asset Guard Products Inc. ("AssetGuard") (6422). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

[2] On May 11, 2020, the Committee filed the *Application for Order Authorizing Employment of GlassRatner Advisory & Capital Group, LLC as Financial Advisor to the Official Committee of Unsecured Creditors of CARBO Ceramics Inc., et al.* [Docket No. 308].

(the "**Objection**") [3] and against the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Debtors Effective to the Petition Date* [Docket No. 118] (the "**PWP Application**").

## Preliminary Financial Valuation Analysis

4.      As the proposed financial advisory team to the Committee, my colleagues and I have reviewed the books and records of the Debtors and the Debtors' proposed retention of Perella Weinberg Partners LP ("**PWP**") as the Debtors' investment banker, including the proposed economic terms of PWP's engagement. In support of the Objection, I respectfully state the following:

5.      I believe that if the Debtors had filed voluntary petitions under Chapter 7 of the Bankruptcy Code, rather than under Chapter 11 of the Bankruptcy Code,, Wilks Brothers, LLC ("**Wilks**") and Equify Financial, LLC ("**Equify**" and together with Wilks, the "**Prepetition Secured Lenders**") would have received the value of their collateral and the Debtors' unsecured creditors would have received their pro rata share of the value of unencumbered assets.

6.      The Debtors state that the aggregate amount of the Prepetition Loan Obligations (as defined in the DIP Order) is $65,000,000. *See* DIP Order,[4] ¶ D.iii.  The Debtors' Plan[5] states that the Prepetition Lender Deficiency Claim (as defined in the Plan) is limited to $45,000,000.  *See* Plan, Art. I.A.97.  If the Debtors filed for bankruptcy under Chapter 7 of the Bankruptcy Code, the Prepetition Lender Deficiency Claim would have been on par with the Debtors' unsecured creditors. Thus, I believe the Prepetition Secured Lenders, on behalf of their Prepetition Lender Deficiency

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.
[4] The "DIP Order" means the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, and (III) Granting Related Relief* [Docket No. 218].
[5] The "Plan" means the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 254].

4841-7132-2813.3

Claim, and the Debtors' unsecured creditors would share the value of the Debtors' unencumbered assets pro rata.

7.      As of the petition date, I believe the value of the Debtors' unencumbered assets was within the range of $14.5 million to $61.5 million,[6] excluding the value of the Debtors' net operating losses (the "**NOLs**").  GlassRatner calculated these values as follows:

a)      AssetGuard's assets have a minimum value of $4.6 million,[7] but received a third party indication of interest ("**IOI**") of at least $11.25 million[8] for AssetGuard's assets.

b)      StrataGen's assets have a minimum value of $4.1 million,[9] but received a third party IOI of $6.0 million for StrataGen's assets.[10]

c)      The Debtors' Property, Plant & Equipment has a minimum value of $2.5 million.[11]   However, an independent impairment analysis valued the Property, Plant & Equipment at $39.2 million as of December 31, 2019.[12]

d)      I understand that the Debtors will receive a tax refund of approximately $3.4 million during the pendency of these cases.[13]

e)      The Debtors maintain NOLs and other tax attributes in the aggregate amount of approximately $107.6 million.[14]

f)      The Debtors value their intellectual property assets at $1.7 million.[15]

---

[6] This analysis is for illustrative purposes based on the Debtors' filings and information provided by the Debtors to the Committee.  The Committee's analysis of the value of the Debtors' assets is ongoing and may differ from the amounts set forth herein.  The Committee's inclusion of any dollar amounts or potential value of assets or liabilities in this Declaration is not an admission regarding the validity, scope, or amount of such assets or liabilities and the Committee reserves all rights with regards thereto.

[7] *CARBO - DRAFT - Liquidation Analysis - 04.24.20 – vU.xlsb.*

[8] *See Declaration of Jakub Mleczko in Support of the Debtors' Omnibus Response Opposing Motions to Appoint an Equity Committee* [Docket No. 351-5] (the "**Mleczko Declaration**"), ¶ 16, Ex. A.

[9] *CARBO - DRAFT - Liquidation Analysis - 04.24.20 – vU.xlsb.*

[10] *See* Mleczko Declaration, ¶ 16, Ex. A.

[11] *See CARBO - DRAFT - Liquidation Analysis - 04.24.20 – vU.xlsb.*

[12] Grant Thornton Impairment Analysis dated December 31, 2019.

[13] *See Project Camel - DRAFT - 13Wk CF vU - 04-19-2020.xlsx.*

[14] *See Schedule A/B: Assets – Real and Person Property of CARBO Ceramics, Inc.,* Part 11, No. 72 [Docket No. 197].

[15] *See* Form 10-K of CARBO Ceramics Inc. for the fiscal year ended December 31, 2019 (the "**2019 10-K**"), p. 92.

8.      I understand that the aggregate amount of Asset Guard and StrataGen prepetition unsecured claims total approximately $1.3 million.[16] Based on GlassRatner's preliminary valuation of the Debtors' unencumbered assets and after deducting the total approximate amount of Asset Guard and StrataGen claims from the value of the unencumbered assets, I believe that there is a range of approximately $13.2 million to $60.2 million in unencumbered assets available to CARBO's unsecured creditors.

9.      I understand that the aggregate amount of CARBO's unsecured claims (including claims related to the Debtors' rejection of executory contracts and unexpired leases) total approximately $86.9 million.[17] If the Prepetition Lender Deficiency Claim of $45,000,000 is included, then the aggregate amount of CARBO's unsecured claims equals approximately $131.9 million. Therefore, the CARBO unsecured creditors, not including the Prepetition Lender Deficiency Claim, would represent approximately 66% of the class of CARBO's unsecured creditors. Thus, based on the calculations performed by GlassRatner,  CARBO's non-Prepetition Lender Deficiency Claim unsecured creditors would have received between approximately $8.7 million and $39.7 million in distributions under a Chapter 7 bankruptcy, less costs of liquidation and administration.

10.     The Plan only provides $500,000 for the CARBO unsecured creditors.[18]

11.     GlassRatner has also created the following chart showing the Debtors' prepetition use of cash from January 2019 to March 2020. I understand that this chart is based on information provided by the Debtors, including cash flow and financial models, the Debtors' breakdown of the

---

[16] *See Schedule E/F: Creditors Who Have Unsecured Claims of StrataGen Inc.* [Docket No. 199] and *Schedule E/F: Creditors Who Have Unsecured Claims of Asset Guard Products Inc.* [Docket No. 198].

[17] *See Schedule E/F: Creditors Who Have Unsecured Claims of CARBO Ceramics, Inc.* [Docket No. 197]; *see also* Project Camel – DRAFT – Rejections Analysis_v4.xlsx.

[18] *See Plan*, page 7, ¶ 62, definition of "GUC Cash Pool."

prepetition Key Employment Retention Program ("**KERP**"), insider note repayments, and director fees.[19]



12.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 21, 2020

/s/ K. Scott Van Meter
K. Scott Van Meter

---

[19] The specific sources for this pie chart are: (1) Professional fees reported by the Debtors 13 Week Cash Flow Models, including the model dated April 24, 2020; (2) the 2019 10-K; (3) Debtors' Project Camel Financial Model dated April 2020; (3) Debtors' insider note repayment, KERP, and director fees information from March 2019 and April 2019 balance sheets and forecast models; (4) Debtors' KERP Analysis; and (5) the Debtors' Statement of Financial Affairs (*see* Docket Nos. 200, 201, and 202).

4841-7132-2813.3