**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § § | **Chapter 11** |
| **CARBO CERAMICS INC., *et al.*[1]** | § § § | **Case No. 20-31973 (MI)** |
| **Debtors.** | § § § | **(Jointly Administered)** |

**APPLICATION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR ENTRY OF AN ORDER**
**AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP**
**AS ITS INTELLECTUAL PROPERTY VALUATION EXPERT EFFECTIVE AS OF**
**MAY 17, 2020**

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**PARTIES WISHING TO PARTICIPATE IN THE HEARING MUST DIAL IN USING THE COURT'S TELECONFERENCING SYSTEM AT 1-832-917-1510 AND ENTERING CONFERENCE CODE 954554 WHEN PROMPTED. PARTIES WHO ALSO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERCONNECTION, USING THE WEBSITE WWW.JOIN.ME, SELECTING "JOIN A MEETING" AND ENTERING MEETING CODE "JUDGEISGUR".**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. ("CARBO") (0013); StrataGen, Inc. ("StrataGen") (5205); and Asset Guard Products Inc. ("AGP") (6422). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors (the "Committee") of CARBO Ceramics Inc., *et al*. (the "Committee"), appointed pursuant to sections 1102 of title 11 of the United States Code (the "Bankruptcy Code") hereby submits this application (the "Application") for the entry of an order pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas, Houston Division (the "Local Rules"), authorizing the Committee to retain and employ AlixPartners, LLP ("AlixPartners") as its intellectual property valuation expert, effective as of May 17, 2020. In support of this Application, the Committee has filed the declaration of Richard Lee (the "Lee Declaration") attached hereto as **Exhibit B**, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Committee confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are Sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rule

2002(a)(2), Rule 2002-1(a)(2) of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures").

## FACTUAL BACKGROUND

3.     On March 29, 2020 (the "Petition Date"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases.

4.     On April 14, 2020, pursuant to Bankruptcy Code section 1102(a) and 1102(b)(1), the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee") appointed the Committee [Docket No. 113].

5.     Also, on April 14, 2020, the Committee selected Foley & Lardner LLP ("Foley") to serve as its counsel, subject to Court approval.

6.     On May 17, 2020 (the "Retention Date"), the Committee selected AlixPartners to serve as its intellectual property valuation expert, effective as of the Retention Date, subject to Court approval.

7.     The engagement letter (the "Engagement Letter") providing the terms and conditions of the Committee's proposed retention of AlixPartners, effective as of the Retention Date, is attached hereto as **Exhibit C**.

## RELIEF REQUESTED

8.     By this Application, the Committee seeks the entry of the proposed order (the "Proposed Order") attached hereto as **Exhibit A**, authorizing and approving the retention and

- 3 -

employment of AlixPartners as its intellectual property valuation expert, pursuant to sections 328 and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, and in accordance with the terms and conditions set forth in this Application, the Engagement Letter and the Proposed Order, effective as of the Retention Date.  AlixPartners' engagement by the Committee is necessary and beneficial to the estate because the Debtors own extensive intellectual property and the Debtors representations indicate that they did not undertake a rigorous analysis to determine the value thereof.  The Debtors' intellectual property potentially represents substantial undeterimined value that could inure to the benefit of unsecured creditors and the estate generally.

9.      Section 328(a) of the Bankruptcy Code empowers a committee appointed under section 1102 of the Bankruptcy Code, with the Court's approval, to employ professionals under section 1103 on any reasonable terms and conditions of employment to perform services for the Committee in the discharge of such Committee's duties.

## ALIXPARTNERS' QUALIFICATIONS

10.     AlixPartners is an internationally recognized restructuring and turnaround firm that has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

11.     AlixPartners is well qualified to serve as a financial advisor to the Committee.  AlixPartners' has assisted, advised, and provided strategic advice to debtors, committees, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  Its professionals have provided restructuring,

financial advisory or crisis management services in numerous large cases, including recent filings in this district. *See, e.g., In re EP Energy Corp.,* Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan 8, 2020); *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Oct. 30, 2019); *In re Alta Mesa Res., Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex. Oct. 8, 2019); *In re Sheridan Holding Co. II, LLC*, Case No. 19-25198 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Jack Cooper Ventures, Inc.*, Case No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 30, 2019); *In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. Aug. 5, 2019); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 16, 2019); *In re Fullbeauty Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. March 8, 2019); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. March 25, 2019); *In re Trident Holding Corp. LLC*, Case No. 19-10384 (SHL) (Bankr. S.D.N.Y. Mar. 29, 2019); *In re Aegean Marine Petroleum Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Dynamic Int'l Airways, LLC*, Case No. 17-10814 (CRA) (Bankr. M.D.N.C. Oct. 16, 2017); *In re CGG Holdings (U.S.) Inc*., Case No. 17-11637 (MG) (Bankr. S.D.N.Y. July 14, 2017); *In re Westinghouse Elec. Company, LLC,* Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 6, 2017); *In re BCBG Max Azria Global Holdings*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Ultrapetrol (Bahamas) Ltd.*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2017); and *In re Primorsk Int'l Shipping Ltd.*, Case No. 16-10073 (MG) (Bankr. S.D.N.Y. Feb. 18, 2016).

12.     The team lead for this engagement is AlixPartners' Managing Director, Richard Lee ("Lee").  Mr. Lee has more than 20 years of experience in disputes involving accounting, valuation, and economic damage issues.  He has served as an expert in federal bankruptcy court as well as state courts and AAA, ICC, JAMS, and FINRA arbitrations. Mr. Lee performs business and intellectual property valuations as well as solvency analyses in restructuring related disputes

involving fraudulent conveyance, equitable subordination, preference payment, diminution in value, and other legal causes of action.  Mr. Lee has served as an expert in hundreds of disputes across a wide range of industries. Prior to joining AlixPartners, Mr. Lee was a partner at Deloitte and a managing director at Houlihan Lokey.

13.     Mr. Lee has been engaged as a valuation and solvency expert in a broad range of restructuring related disputes. These disputes have included fraudulent conveyance, preference payment, diminution in value, equitable subordination, and diminution in value claims among others. Related to valuation, Mr. Lee has been engaged to value businesses and intellectual property in disputes between various creditor classes and equity holders.  Related to solvency, Mr. Lee performs solvency analyses to assess whether: (i) a company's debts exceed its assets, at a fair valuation, (ii) a company will be able to pay its debts as they become due, and (iii) a company was left with unreasonably small assets or capital after the subject transaction. These solvency analyses also often require a forensic investigation of the company's accounting records.

14.     Mr. Lee has performed hundreds of business valuations in a variety of circumstances including buy-side due diligence, sellside advisory, financial reporting, tax compliance, dispute resolution, and strategic alternative assessment. He has valued businesses that range in size from closely-held family businesses to Fortune 100 global conglomerates in nearly every industry. As one of approximately 25 U.S. valuation partners at Deloitte, Mr. Lee also reviewed and approved the valuations of the majority of large valuation firms as a part of Deloitte's financial statement audits.

15.     Mr. Lee has been appointed by the Delaware Court of Chancery as an independent valuation expert and as an arbitrator by parties in valuation-related disputes. He is also regularly engaged as a valuation expert in dissenting shareholder, employment, intellectual property, merger

and acquisition, ownership, and restructuring disputes. Mr. Lee has valued many types of intellectual property and intellectual property, including, but not limited to, stock options, warrants, stock appreciation rights, derivatives, patents and patent portfolios, trademarks, trade secrets, copyrights, customer relationships, contracts, non-compete agreements, inprocess research and development, and assembled workforce. He has also valued various types of debt instruments.

16.     Mr. Lee is an Accredited Senior Appraiser (ASA) with the American Society of Appraisers and hold an Accredited in Business Valuation (ABV) credential from the American Institute of Certified Public Accountants.  Mr. Lee is a Certified Public Accountant licensed in Texas, New York, and California.  Mr. Lee earned a Master of Business Administration degree from the University of California, Los Angeles and a Bachelor of Science in Business Administration degree with an emphasis in finance from the University of Southern California. For the past several years, he has served on the ABV credential exam taskforce.  In the past,  Mr. Lee taught graduate level financial accounting at the University of Texas at Dallas.

17.     Mr. Lee has been retained as a consulting and testifying expert in restructuring related disputes as well as a broad range of valuation engagements. A sample of these include:

**Restructuring Related Engagements**

- Engaged to perform a forensic accounting and solvency analysis of a bankrupt technology company at various points in time. Performed a valuation of the company's intellectual property, including patent portfolio, trademarks, and trade secrets.

- Testified in federal bankruptcy court regarding the enterprise and equity values of a restaurant chain in a dispute between the creditors and equity holders of the bankrupt company.

- Valuation expert in a restructuring dispute related to a diminution in value claim by the unsecured creditors of a bankrupt national retailer. Performed valuation and recovery analysis of company's trademarks, operating leases, and customer loyalty program.

- Valuation expert in a UK High Court case involving a proposed debt restructuring of an Asian-based pulp and paper company. Performed a valuation of the company and rebutted a fairness opinion provided by the debtor's financial advisor in connection with a proposed scheme of arrangement.

- Engaged to perform a valuation and solvency analysis in a fraudulent conveyance dispute involving one of the largest law firm bankruptcies in history.

18.     The Committee requires the services of Mr. Lee and AlixPartners to provide intellectual property valuation expert services, as further detailed below.  The Committee is familiar with the professional standing and reputation of AlixPartners.   The Committee understands and recognizes that AlixPartners has a wealth of experience in providing financial advisory services in restructurings and reorganizations across the United States and has exemplary qualifications to perform the services required by the Committee in these cases.  AlixPartners is able to represent the Committee in a cost-effective, efficient and timely manner and has been performing such services since the Retention Date.

## ALIXPARTNERS' DISINTERESTEDNESS

19.     To the best of the Committee's knowledge, information, and belief and except to the extent disclosed herein and in the Lee Declaration, AlixPartners: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Committee.

20.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, the Committee is advised that AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

## SCOPE OF SERVICES

20.     AlixPartners has begun to provide assistance to the Committee in accordance with the terms and conditions set forth in the Lee Declaration and in the Engagement Letter.

21.     AlixPartners will work closely with Foley to ensure that there will be no duplication of efforts or unnecessary overlap in the services to be provided by AlixPartners and those that have been provided or which will be provided by the Committee's other professionals.  It is presently anticipated that AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners may perform is as follows:

- Estimate the value of the Debtors' intellectual property, including patents, patent applications, trademarks, domain names, developed software, customer contracts, and any other identified intellectual property.

- Development of valuation models pertinent to the identified intellectual property, including gathering market and industry information required to support various assumptions.

- Evaluate any proposed sale process of the Debtors' intellectual property and related bids and participate in any meetings with bidders or auction, as required.

- Assist in the review of the Debtors' plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Debtors or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including preparation of expert opinion documents and e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

22.     AlixPartners' decision to accept this engagement to advise and assist the Committee is contingent upon its ability to be retained in accordance with the terms and conditions of

employment set forth in the Engagement Letter, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, including any indemnification provisions outlined in the Engagement Letter, as modified by the Proposed Order to comply with the practices and requirements of this Court.

### TERMS OF RETENTION AND COMPENSATION

23.     AlixPartners is not owed any amounts with respect to prepetition fees and expenses in connection with these cases.

24.     The Lee Declaration and the Engagement Letter set forth the terms and conditions of AlixPartners' employment, its staffing and approach, and its billing practices.  AlixPartners has requested that the Committee seek this Court's approval of such matters with the filing of this Application.

25.     AlixPartners charges fees based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of AlixPartners to bill clients for travel time consistent with guidelines of the jurisdiction.  For this jurisdiction, therefore, AlixPartners will apply a 50% discount rate to non-working travel time billed.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements. Subject to this Court's approval, and as described in the Lee Declaration and Engagement Letter, the Committee requests that AlixPartners be entitled to receive compensation at its normal hourly rates.

26.     AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Committee.

27.     AlixPartners does not seek a success fee in connection with this engagement.

28.     AlixPartners' current standard hourly rates for 2020, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
| --- | --- |
| Managing Director | $1,000 – $1,195 |
| Director | $800 – $950 |
| Senior Vice President | $645 – $735 |
| Vice President | $470 – $630 |
| Consultant | $175 – $465 |
| Paraprofessional | $295 – $315 |

29.     AlixPartners reviews and revises its billing rates on January 1 of each year. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

30.     In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals. Expenses will be billed at actual cost.

31.     To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

32.     To the extent AlixPartners uses the services of independent contractors (the "Contractors") in these chapter 11 cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

33.     AlixPartners intends to apply to the Court for allowance of compensation and reimbursement of expenses, including on a monthly, interim and final basis, pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016, Local Rule 2016-1, the *Order Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 296] (the "Interim Compensation Procedures Order"), entered by the Court on May 8, 2020, and any other applicable orders of the Court or provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

34.     Foley, the members of the Committee, nor any of their agents are or shall be responsible for the payment of AlixPartners' fees and costs arising out of the engagement described and referenced herein, regardless of whether or not AlixPartners is paid in full from the Debtors' estates.

35.     AlixPartners negotiated the terms and conditions of the Engagement Letter at arm's length and in good faith.  Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners has agreed to certain modifications to its standard indemnification and limitations on

liability provisions as reflected in the Proposed Order attached hereto as **Exhibit A**.  The Committee and AlixPartners believe that the indemnification language proposed therein complies with this Court's requirements for similar engagements of other professionals in these chapter 11 cases.  AlixPartners has been retained with similar or more expanded indemnification language in other representations in this district and other jurisdictions.

## NOTICE

36.     Notice of this Application has been provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Debtors; (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (g) the Prepetition Secured Lenders; and (h) counsel to the Prepetition Secured Lenders.  In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

37.     No previous application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein as well as such other and further relief as the Court deems just and proper.


Dated:  May 22, 2020                          Respectfully submitted,

                                              **FOLEY & LARDNER LLP**

                                              */s/Michael K. Riordan*
                                              Michael K. Riordan
                                              State Bar No. 24070502
                                              1000 Louisiana, Suite 2000
                                              Houston, Texas 77002-5011
                                              Telephone: 713-276-5727
                                              Email: mriordan@foley.com

                                              -and-

                                              Holland N. O'Neil
                                              State Bar No. 14864700
                                              Telephone: 214-999-4961
                                              Email: honeil@foley.com
                                              Marcus Helt
                                              State Bar No. 24052187
                                              Telephone: 214-999-4526
                                              Email: mhelt@foley.com
                                              2021 McKinney Avenue, Suite 1600
                                              Dallas, Texas 75201

                                              **COUNSEL FOR THE OFFICIAL COMMITTEE
                                              OF UNSECURED CREDITORS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's ECF system on May 22, 2020.

*/s Michael K. Riordan*
Michael K. Riordan

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **CARBO CERAMICS INC.,** *et al.*[1] | § | **Case No. 20-31973 (MI)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |
| | § | |

**ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO EMPLOY AND RETAIN ALIXPARTNERS, LLP
<u>AS ITS INTELLECTUAL PROPERTY VALUATION EXPERT EFFECTIVE AS OF
MAY 17, 2020</u>**

Upon the application (the "<u>Application</u>") of the Official Committee of Unsecured Creditors

(the "<u>Committee</u>")[2] appointed in the chapter 11 cases of the above-captioned Debtors and Debtors-

in-possession (the "<u>Debtors</u>") for entry of an order (the "<u>Order</u>"), pursuant to sections 328(a) and

1103 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014 and 2016 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2014-1 and 2016-1

of the Local Bankruptcy Rules for the Southern District of Texas, Houston Division (the "<u>Local

Rules</u>"), authorizing the Committee to employ and retain AlixPartners, LLP ("<u>AlixPartners</u>" or the

"<u>Firm</u>") as the Committee's intellectual property valuation expert, effective as of May 17, 2020;

and upon the Declaration of Richard Lee (the "<u>Lee Declaration</u>"), which is annexed to the

Application; and it appearing that this Court has jurisdiction to consider the Application pursuant

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. ("<u>CARBO</u>") (0013); StrataGen, Inc. ("<u>StrataGen</u>") (5205); and Asset Guard Products Inc. ("<u>AGP</u>") (6422). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this case and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and it appearing that AlixPartners is "disinterested" and eligible for retention pursuant to sections 101(14) and 328(c) of the Bankruptcy Code, the terms of the engagement pursuant to the Engagement Letter and as modified herein, are reasonable and appropriate and this Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation, and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Application is APPROVED solely to the extent set forth herein.

2. In accordance with sections 328(a) and 1103 of the Bankruptcy Code, the Committee is authorized to employ and retain AlixPartners as its intellectual property valuation expert in connection with these chapter 11 cases effective as of May 17, 2020, under the terms and for the purposes set forth and as requested in the Application, the Lee Declaration and the Engagement Letter, as modified herein.

3. AlixPartners is authorized to perform the services enumerated in the Application, the Lee Declaration and the Engagement Letter.  The terms of the Engagement Letter are approved, and the Debtors shall be bound by such terms.  AlixPartners shall be compensated for the services identified in the Application, the Lee Declaration and the Engagement Letter and reimbursed for out-of-pocket expenses incurred in connection with such services, pursuant to section 328(a) of the Bankruptcy Code.

4.      AlixPartners' fees for services will be based on AlixPartners' standard hourly rates, plus reasonable and necessary expenses, as set forth in the Application, the Lee Declaration and the Engagement Letter.  AlixPartners shall be compensated in accordance with and will file reports of compensation earned and expenses incurred on a monthly basis (the "Monthly Statements"), as well as interim and final fee applications for allowance of its compensation and expenses in accordance with the *United States Trustee Fee Guidelines* (the "Fee Guidelines") and the Interim Compensation Procedures Order, and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the local guidelines.

5.      Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Lee Declaration, the Debtors are authorized to indemnify and hold harmless AlixPartners and its affiliates, their respective directors, officers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons"), subject to the following conditions:

a.  Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify AlixPartners for any claims rising from, related to or in connection with the services to be provided by AlixPartners as specified in the Engagement Letter, but not for any claims arising from, related to or in connection with AlixPartners' post-petition performance of any other services other than those in connection with the engagement, unless such post-petition services and indemnification therefore are approved by this Court; and

b.  The Debtors shall have no obligation to indemnify AlixPartners, or provide contribution or reimbursement to AlixPartners, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from AlixPartners's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Committee or the Debtors allege the breach of AlixPartners's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists*

*Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which AlixPartners should not receive indemnity, contribution or reimbursement under the terms of the AlixPartners Engagement Letter as modified by this Order; and

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, AlixPartners believes that it is entitled to the payment of any amounts by the Debtors on account of the indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, AlixPartners must file an application therefore in this Court, and the Debtors may not pay any such amounts to AlixPartners before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by AlixPartners for indemnification, contribution, or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify AlixPartners.

6.     Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners' liability, including but not limited to lost profits, consequential, indirect, punitive, exemplary or special damages, arising in tort, contract or otherwise, shall not be limited in the case of AlixPartners' own willful misconduct, gross negligence, breach of fiduciary duty, self-dealing and/or bad faith.

7.     The liability cap outlined by Section 10 of the General Terms and Conditions in the Engagement Letter is hereby eliminated for the duration of these chapter 11 cases.

8.     The Committee and AlixPartners are authorized and empowered to take all necessary actions to implement the relief granted in this Order.

9.     This Court shall retain jurisdiction with respect to all matters arising from or related to this Order or AlixPartners' services for the Committee.

10. AlixPartners shall use reasonable efforts to avoid any duplication of services provided by any of the other retained professionals in these chapter 11 cases.

11. To the extent there is an inconsistency between this Order, the Engagement Letter and the Application, the terms of this Order shall govern.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: _____, 2020

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Lee Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CARBO CERAMICS INC., *et al.*[1] | § | Case No. 20-31973 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

DECLARATION OF RICHARD LEE IN SUPPORT
OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF ALIXPARTNERS, LLP AS ITS INTELLECTUAL PROPERTY
VALUATION EXPERT
<u>EFFECTIVE AS OF MAY 17, 2020</u>

Under 28 U.S.C. § 1746, I, Richard Lee, declare as follows under the penalty of perjury:

1. I am a managing director of AlixPartners, LLP ("<u>AlixPartners</u>" or the "<u>Firm</u>"), which has a principal place of business at 909 Third Avenue, Floor 30, New York, New York 10022. Except as otherwise noted,[2] I have personal knowledge of the matters set forth herein. If called and sworn as a witness, I could, and would, testify competently to the matters set forth herein.

2. This Declaration is being submitted in support of the application (the "<u>Application</u>")[3] filed in connection with the proposed retention of AlixPartners as intellectual

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: CARBO Ceramics Inc. ("<u>CARBO</u>") (0013); StrataGen, Inc. ("<u>StrataGen</u>") (5205); and Asset Guard Products Inc. ("<u>AGP</u>") (6422). The location of the Debtors' U.S. corporate headquarters and the Debtors' service address is: 575 N. Dairy Ashford Road, Suite 300, Houston, Texas 77079.

[2]  Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at AlixPartners and are based on information provided by them.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

property valuation expert for the Official Committee of the Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of CARBO Ceramics Inc., *et al.* (the "Debtors").

3.      No previous application for the relief requested herein has been made to this or any other Court.

4.      On April 14, 2020, pursuant to Bankruptcy Code section 1102, the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee") appointed the Committee, and on May 17, 2020, the Committee selected AlixPartners as its intellectual property valuation expert with respect to the Debtors' chapter 11 cases, subject to Court approval.

5.      AlixPartners was requested to and began immediately to provide assistance to the Committee as of May 17, 2020.

6.      AlixPartners has begun to provide assistance, as agreed, to the Committee in accordance with the terms and conditions set forth in this Declaration, the Application, and the Engagement Letter, which is appended to the Application as **Exhibit C** and is incorporated herein by reference.

## ALIXPARTNERS' QUALIFICATIONS

7.      AlixPartners is an internationally recognized restructuring and turnaround firm that has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

8.      AlixPartners is well qualified to serve as a financial advisor to the Committee. AlixPartners' has assisted, advised, and provided strategic advice to debtors, committees, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  Its professionals have provided restructuring, financial advisory or crisis management services in numerous large cases, including recent filings

in this district. *See, e.g., In re EP Energy Corp.,* Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan 8, 2020); *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Oct. 30, 2019); *In re Alta Mesa Res., Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex. Oct. 8, 2019); *In re Sheridan Holding Co. II, LLC*, Case No. 19-25198 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Jack Cooper Ventures, Inc.*, Case No. 19-62393 (PWB) (Bankr. N.D. Ga. Aug. 30, 2019); *In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. Aug. 5, 2019); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 16, 2019); *In re Fullbeauty Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. March 8, 2019); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. March 25, 2019); *In re Trident Holding Corp. LLC*, Case No. 19-10384 (SHL) (Bankr. S.D.N.Y. Mar. 29, 2019); *In re Aegean Marine Petroleum Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Dynamic Int'l Airways, LLC*, Case No. 17-10814 (CRA) (Bankr. M.D.N.C. Oct. 16, 2017); *In re CGG Holdings (U.S.) Inc.*, Case No. 17-11637 (MG) (Bankr. S.D.N.Y. July 14, 2017); *In re Westinghouse Elec. Company, LLC,* Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 6, 2017); *In re BCBG Max Azria Global Holdings*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Ultrapetrol (Bahamas) Ltd.*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2017); and *In re Primorsk Int'l Shipping Ltd.*, Case No. 16-10073 (MG) (Bankr. S.D.N.Y. Feb. 18, 2016).

9.     I have more than 20 years of experience in disputes involving accounting, valuation, and economic damage issues.  He has served as an expert in federal bankruptcy court as well as state courts and AAA, ICC, JAMS, and FINRA arbitrations. I perform business and intangible asset valuations as well as solvency analyses in restructuring related disputes involving fraudulent conveyance, equitable subordination, preference payment, diminution in value, and other legal causes of action.  I have served as an expert in hundreds of disputes across a wide range

of industries. Prior to joining AlixPartners, I was a partner at Deloitte and a managing director at Houlihan Lokey.

10.     I have been engaged as a valuation and solvency expert in a broad range of restructuring related disputes. These disputes have included fraudulent conveyance, preference payment, diminution in value, equitable subordination, and diminution in value claims among others. Related to valuation, I have been engaged to value businesses and intellectual property in disputes between various creditor classes and equity holders.   Related to solvency, I perform solvency analyses to assess whether: (i) a company's debts exceed its assets, at a fair valuation, (ii) a company will be able to pay its debts as they become due, and (iii) a company was left with unreasonably small assets or capital after the subject transaction. These solvency analyses also often require a forensic investigation of the company's accounting records.

11.     I have performed hundreds of business valuations in a variety of circumstances including buy-side due diligence, sellside advisory, financial reporting, tax compliance, dispute resolution, and strategic alternative assessment. I have valued businesses that range in size from closely-held family businesses to Fortune 100 global conglomerates in nearly every industry. As one of approximately 25 U.S. valuation partners at Deloitte, I reviewed and approved the valuations of the majority of large valuation firms as a part of Deloitte's financial statement audits.

12.     I have been appointed by the Delaware Court of Chancery as an independent valuation expert and as an arbitrator by parties in valuation-related disputes. I am also regularly engaged as a valuation expert in dissenting shareholder, employment, intellectual property, merger and acquisition, ownership, and restructuring disputes. I have valued many types of intellectual property and intellectual property, including, but not limited to, stock options, warrants, stock appreciation rights, derivatives, patents and patent portfolios, trademarks, trade secrets, copyrights,

customer relationships, contracts, non-compete agreements, inprocess research and development, and assembled workforce. I have also valued various types of debt instruments.

13.    I am an Accredited Senior Appraiser (ASA) with the American Society of Appraisers and hold an Accredited in Business Valuation (ABV) credential from the American Institute of Certified Public Accountants.  I am a Certified Public Accountant licensed in Texas, New York, and California.  I earned a Master of Business Administration degree from the University of California, Los Angeles and a Bachelor of Science in Business Administration degree with an emphasis in finance from the University of Southern California.  For the past several years, I have served on the ABV credential exam taskforce.  In the past, I taught graduate level financial accounting at the University of Texas at Dallas.

14.    I have been retained as a consulting and testifying expert in restructuring related disputes as well as a broad range of technology company valuation engagements. A sample of these include:

**Restructuring Related Engagements**

- Engaged to perform a forensic accounting and solvency analysis of a bankrupt technology company at various points in time. Performed a valuation of the company's intellectual property, including patent portfolio, trademarks, and trade secrets.

- Testified in federal bankruptcy court regarding the enterprise and equity values of a restaurant chain in a dispute between the creditors and equity holders of the bankrupt company.

- Valuation expert in a restructuring dispute related to a diminution in value claim by the unsecured creditors of a bankrupt national retailer. Performed valuation and recovery analysis of company's trademarks, operating leases, and customer loyalty program.

- Valuation expert in a UK High Court case involving a proposed debt restructuring of an Asian-based pulp and paper company. Performed a valuation of the company and rebutted a fairness opinion provided by the debtor's financial advisor in connection with a proposed scheme of arrangement.

- Engaged to perform a valuation and solvency analysis in a fraudulent conveyance dispute involving one of the largest law firm bankruptcies in history.

15.     AlixPartners is able to represent the Committee in a cost-effective, efficient and timely manner and has been performing such services since the Retention Date.

## SCOPE OF SERVICES

16.     AlixPartners has begun to provide assistance to the Committee in accordance with the terms and conditions set forth in this declaration and in the Engagement Letter.

17.     AlixPartners will work closely with Foley & Lardner LLP ("Foley") to ensure that there will be no duplication of efforts or unnecessary overlap in the services to be provided by AlixPartners and those that have been provided or which will be provided by the Committee's other professionals.  It is presently anticipated that AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners may perform is as follows:

- Estimate the value of the Debtors' intellectual property, including patents, patent applications, trademarks, domain names, developed software, customer contracts, and any other identified intellectual property.

- Development of valuation models pertinent to the identified intellectual property, including gathering market and industry information required to support various assumptions.

- Evaluate any proposed sale process of the Debtors' intellectual property and related bids and participate in any meetings with bidders or auction, as required.

- Assist in the review of the Debtors' plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Debtors or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

18.    AlixPartners' decision to accept this engagement to advise and assist the Committee is contingent upon its ability to be retained in accordance with the terms and conditions of employment set forth in the Engagement Letter, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, including any indemnification provisions outlined in the Engagement Letter, as modified by the Proposed Order to comply with the practices and requirements of this Court.

## TERMS OF RETENTION AND COMPENSATION

19.    AlixPartners is not owed any amounts with respect to prepetition fees and expenses in connection with these cases.

20.    This Declaration and the Engagement Letter set forth the terms and conditions of AlixPartners' employment, its staffing and approach, and its billing practices.  AlixPartners has requested that the Committee seek this Court's approval of such matters with the filing of this Application.

21.    AlixPartners charges fees based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of AlixPartners to bill clients for travel time consistent with guidelines of the jurisdiction. For this jurisdiction, therefore, AlixPartners will apply a 50% discount rate to non-working travel time billed.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements. Subject to this Court's approval, and as described

in this Declaration and Engagement Letter, the Committee requests that AlixPartners be entitled to receive compensation at its normal hourly rates.

22.     AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Committee.

23.     AlixPartners does not seek a success fee in connection with this engagement.

24.     AlixPartners' current standard hourly rates for 2020, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,000 – $1,195 |
| Director | $800 – $950 |
| Senior Vice President | $645 – $735 |
| Vice President | $470 – $630 |
| Consultant | $175 – $465 |
| Paraprofessional | $295 – $315 |

25.     AlixPartners reviews and revises its billing rates on January 1 of each year. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

26.     In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals. Expenses will be billed at actual cost.

27.     To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

28.     To the extent AlixPartners uses the services of independent contractors (the "Contractors") in these chapter 11 cases, AlixPartners shall: (a) pass through the cost of such Contractors to the estate at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

29.     AlixPartners intends to apply to the Court for allowance of compensation and reimbursement of expenses, including on a monthly, interim and final basis, pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016, Local Rule 2016-1, the *Order Establishing Procedures For Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 296) (the "Interim Compensation Procedures Order"), entered by the Court on May 8, 2020, and any other applicable orders of the Court or provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

30.     Neither Foley, the members of the Committee, nor any of their agents are or shall be responsible for the payment of AlixPartners' fees and costs arising out of the engagement described and referenced herein, regardless of whether or not AlixPartners is paid in full from the Debtors' estates.

31.     AlixPartners negotiated the terms and conditions of the Engagement Letter at arm's length and in good faith.  Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners has agreed to certain modifications to its standard indemnification and limitations on liability provisions as reflected in the Proposed Order attached to the Application as **Exhibit A**.

The Committee and AlixPartners believe that the indemnification language proposed therein complies with this Court's requirements for similar engagements of other professionals in these chapter 11 cases. AlixPartners has been retained with similar or more expanded indemnification language in other representations in this district and other jurisdictions.

### AlixPartners' Disinterestedness

32.     In connection with its proposed retention by the Committee in these chapter 11 cases, AlixPartners undertook a lengthy review to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to these chapter 11 cases. Specifically, AlixPartners obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("Potential Parties in Interest"). Such parties are listed on **Schedule 1** attached hereto. A search was performed for connections to the Potential Parties in Interest as to AlixPartners Holdings, LLP ("Holdings"), AlixPartners' parent company, and each of Holdings' U.S. and non-U.S. subsidiaries. Results are disclosed for connections to Potential-Parties-in-Interest. In addition, an email is sent to all of their professionals inquiring of any potential connections.

33.     Based on that review, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to these chapter 11 cases. Unless otherwise noted, references to AP in the disclosures below collectively refer to AlixPartners, Holdings, and each of their subsidiary affiliates. AlixPartners wishes to disclose the following:

- The equity capital of Holdings is owned individually by: (i) the Managing Directors of AlixPartners; (ii) Lakeview Capital Holdings, Inc., the Jay Alix Living Trust and other affiliates of Jay Alix (collectively the "Lakeview Parties"); (iii) affiliates of each of (a) Caisse de dépôt et placement du Québec ("CDPQ"), (b) Investcorp Bank B.S.C. ("IVC"), and (c) Public Sector Pension Investment Board ("PSP Investments"); and (iv) other individuals and trusts. Neither CDPQ, nor IVC, nor the Lakeview Parties, nor PSP

- 10 -

Investments (collectively, the "Investors"), nor any Managing Director, other individual or trust separately owns a majority of the equity capital of Holdings directly or indirectly or separately controls the Boards of either Holdings or AlixPartners. None of the Investors own any of the bank or other debt of AlixPartners.

CDPQ is an institutional investor that manages funds primarily on behalf of a number of Quebec-based public pension and insurance plans. As one of Canada's leading institutional fund managers, CDPQ invests globally in major financial markets, private equity, infrastructure and real estate.

Investcorp is a leading global provider and manager of alternative investment products.

The Lakeview Parties and related entities are entities owned or controlled by Jay Alix that, among other things, make investments on behalf of Mr. Alix and his family.

PSP Investments is a Canadian Crown corporation established in 1999 to manage employer and employee contributions made after April 1, 2000 to the Canadian Federal Public Service, the Canadian Forces and the Royal Canadian Mounted Police pension funds. It is also responsible for contributions made after March 1, 2007 to the Canadian Reserve Force Pension Fund. PSP Investments manages a diversified global portfolio composed of investments in public financial markets, private equity, infrastructure, natural resources, real estate and private debt.

Designees of the Investors or their subsidiaries serve as some of the members of the Boards of Directors of each of AlixPartners and Holdings (collectively, the "Boards"). In addition to their investments in Holdings, all of the Investors have substantial investments unrelated to AP. Accordingly, as a precautionary matter, AP maintains information barriers designed to prevent confidential client information, including the names of clients likely to be involved in reorganization proceedings under the Bankruptcy Code, from being shared with the Investors or their designees on the Boards.

To that end, no material nonpublic information about the Debtors has been or will be furnished by AP to the Investors, the InvestCos (as defined below) or their Board designees, and AP will continue to abide by its confidentiality obligations to the Debtors. AP operates independently of the Investor Conflicts Parties (as defined below), and does not share employees, officers or other management with any such Investor Conflicts Parties (as defined below). AP and each of the Investor Conflicts Parties have separate offices in separate buildings, use separate Internet email addresses, and do not otherwise share IT systems. No personnel of the Investor Conflicts Parties work on AlixPartners client matters or have access to AlixPartners client information or client files or client personnel. No AP executive or employee is a director, officer or employee of any Investor. Each Investor is governed by its own board of directors or similar body and managed by its own management team. Each Investor is independent of each other Investor.

AlixPartners has searched the names of the Debtors and the list of Potential Parties in Interest against the names of (i) the Investors, (ii) the subsidiaries of the Investors that either hold a direct position in Holdings or hold a direct position in the entity that holds a

direct position in Holdings (collectively, the "InvestCos"), and (iii) the subsidiaries of the Investors that hold, directly or indirectly, positions in the respective InvestCos. In addition, AlixPartners has searched and/or will request each Investor to search the names of the Debtors against the companies that the InvestCos have a direct greater than 10% investment in (collectively, with (i) – (iii) the "Investor Conflicts Parties"). AlixPartners has determined, to the best of its knowledge based solely on that search, that there are no connections with the Investor Conflicts Parties that require disclosure other than as noted herein. Because of the information barriers described above, the sheer size of the investment portfolios of the Investor Conflicts Parties, and any applicable securities laws, prior to the Petition Date, AlixPartners was unable to further investigate any potential or actual connections between the Investor Conflicts Parties and the Debtors and the Potential Parties in Interest. To the extent any potential or actual connections are discovered after the Petition Date, if there exists a material connection, AlixPartners will promptly supplement this disclosure. Notwithstanding the foregoing, AlixPartners' conflicts check did not and will not extend to entities owned by mutual funds in which an Investor Conflicts Party has an interest; entities owned by separate accounts managed by non-affiliates for an Investor Conflicts Party; entities owned by private equity funds in which an Investor Conflicts Party has a limited partnership interest managed by non-affiliates (even though the particular Investor Party may be represented on the limited partner advisory board or investor committee and even though the particular Investor Conflicts Party may have a passive interest in the general partner); entities where any of the Investor Conflicts Parties serves as general partner or investment manager holding interests representing, directly or indirectly, 10% or less. Nor does it or will it necessarily include indirect investments, such as businesses owned or investments made by an Investor Conflicts Party's portfolio company(ies), or passive investments held or managed by any of the Investor Conflicts Parties. In addition, because of the sheer size of the investments of the Investors and their respective affiliates and subsidiaries, except as described herein, AlixPartners' conflicts check did not and it will not necessarily include any other affiliates or subsidiaries owned, directly or indirectly, by each Investor, or any investments made by such other affiliates or subsidiaries, nor will it include, to the extent applicable, any depositors of the Investors.

Although AlixPartners has performed a conflicts check of the Investor Conflicts Parties as set forth above, as a result of, among other things, the sheer size of the investments of the Investor Conflicts Parties, one or more of the Investor Conflicts Parties may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or Potential Parties in Interest and/or may trade debt and/or equity securities in the Debtors and/or Potential Parties in Interest. In addition, one or more of the Investor Conflicts Parties may also have had, currently have, or may in the future have business relationships or other connections with the Debtors or other Potential Parties in Interest. To the extent AlixPartners learns of material business relationships or other material connections that are not included herein, AlixPartners will promptly file a supplemental disclosure.

Other than as specifically noted herein, AlixPartners has not undertaken to determine the existence, nature, and/or full scope of any business relationships or connections that the

Investor Conflicts Parties may have with the Potential Parties in Interest, the Debtors and their affiliates, or these chapter 11 cases.

Further, AlixPartners may have had, currently have or may in the future have business relationships with, among other entities, portfolio companies of the Investors and portfolio companies of private equity funds in which they are limited partners, in matters unrelated to the Debtors or their affiliates in these chapter 11 cases.  Based on, among other things, the business separation between each of the Investor Conflict Parties and AlixPartners, the contractual client confidentiality obligations of AlixPartners and the information barriers referred to above, AlixPartners believes that it does not hold or represent an interest adverse to the estate with respect to the engagement.

- AP interacts with U.S. Bankruptcy Court judges and representatives of the U.S. Trustee Program regularly in its capacity as a professional consulting firm that offers turnaround and restructuring services.

- The United States Department of Justice ("DOJ"), including the United States Attorney General's Office, is a current and former AP client in matters unrelated to the Debtors.  The DOJ has also been an adverse party and customer to current and former AP clients in matters unrelated to the Debtors.

- AIG, AIG Insurance Company China Limited, and AIG Specialty Insurance Co., insurance providers to the Debtors, and affiliates ("AIG") are adverse parties, adverse litigation parties, bondholders, creditors, customers, director-affiliated companies, insurance providers, lenders, litigation parties, contract parties, noteholders and vendors to current and former AP clients in matters unrelated to the Debtors. AIG is a current and former AP client in matters unrelated to the Debtors. AIG is a former employer of a current AP employee. AIG is a debtholder of AP.

- Alston & Bird LLP, an ordinary course professional of Debtors in this bankruptcy matter, ("Alston & Bird") is a professional, counsel, vendor, and related party to current and former AP clients in matters unrelated to the Debtors.  Alston & Bird is a current and former AP client in matters unrelated to the Debtors.

- Ankura Consulting, a known professional for secured/unsecured lender in this bankruptcy matter, ("Ankura") is a lender, related party, vendor and professional to current AP clients in matters unrelated to the Debtors.  Ankura is a current AP client in matters unrelated to the Debtors.  Ankura is a former employer of a current AP employee.

- AON Consulting, Inc., an ordinary course professional of Debtors in this bankruptcy matter, and affiliates ("AON") are creditors, contract parties, insurance providers, adverse litigation parties, professionals, related parties, lienholders, bondholders and vendors to current and former AP clients in matters unrelated to the Debtors. Aon is a current and former AP client in matters unrelated to the Debtors. Aon is a former employer of current AP employees. Aon is a vendor to AP.

- AT&T Mobility and AT&T Inc., utility companies to the Debtors, and affiliates ("<u>AT&T</u>") are adverse parties, adverse litigation parties, contract parties, creditors, customers, director-affiliated companies, joint venture entities, lessees, lessors, litigation parties, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. AT&T is a current and former AP client in matters unrelated to the Debtors. AT&T is a member of the UCC represented by AP in Windstream Holdings, Inc., Fusion Connect, Inc., and Forever 21, Inc., bankruptcy matters unrelated to the Debtors. AT&T is a former employer of current AP employees. AT&T is a vendor to AP.

- ATMOS Energy and ATMOS Energy Louisiana, utility companies to the Debtors, and affiliates ("<u>ATMOS</u>") are adverse parties, contract parties, creditors, customers, litigation parties, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Atmos is a former employer of a current AP employee.

- Beazley Insurance Company, Inc., an insurance provider/broker to the Debtors, and affiliates ("<u>Beazley</u>") are adverse parties and insurance providers to current and former AP clients in matters unrelated to the Debtors. Beazley is an insurance provider to AP.

- BlueCross BlueShield of Texas, a major benefits administrator to the Debtors, and affiliates ("<u>BCBS</u>") are adverse parties, bondholders, creditors, customers, contract parties, director's affiliated companies, insurance providers, lenders, lessors, lienholders, litigation parties, related parties and vendors to current and former AP clients in matters unrelated to the Debtors.  BCBS is a current and former AP client in matters unrelated to the Debtors. BCBS is a former employer to current AP employees.

- Bracewell LLP and Bracewell & Giuliani LLP, an ordinary course professional in this bankruptcy matter, and affiliates ("<u>Bracewell</u>") are adverse litigation parties, creditors, counsel, litigation parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.  Bracewell is a former AP client in matters unrelated to the Debtors.

- Bradley Arant Boult Cummings LLP, an ordinary course professional of Debtors in this bankruptcy matter, is a adverse litigation party, professional, vendor, related party, litigation party, co-counsel, creditor, contract party and opposing counsel to current and former AP clients in matters unrelated to the Debtors.

- Brown Rudnick LLP, an ordinary course professional of Debtors in this bankruptcy matter, and affiliates ("<u>Brown</u>") are bondholders, counsel, opposing counsel, and professionals to current and former AP clients in matters unrelated to the Debtors. Brown is a current AP client in matters unrelated to the Debtors.

- CARBO Ceramics (Canada) Inc., CARBO Ceramics (China) Company, Ltd., CARBO Ceramics (Eurasia) LLC, CARBO Ceramics (Mauritus), CARBO Ceramics Cyprus Limited, CARBO Ceramics Inc., CARBO International, Inc., CARBO LLC, and CARBO International Eurasia LLC, the Debtors, Non-Debtor affiliates and former affiliates of the Debtors, and affiliates ("<u>CARBO</u>") are vendors to current AP clients in matters unrelated to the Debtors. CARBO is a vendor to AP.

- 14 -

- Century Link, a utility company to the Debtors, and affiliates ("CenturyLink") are adverse parties, adverse litigation parties, contract parties, creditors, customers, lenders, professionals, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. CenturyLink is a former employer of a current AP employee. CenturyLink is a vendor to AP.

- Chase Bank N.A. and JPMorgan Chase N.A., Issuers of letters of credit and cash management banks to the Debtors, and affiliates ("JPMorgan") are adverse parties, adverse litigation parties, banking service providers, bondholders, contract parties, creditors, customers, director-affiliated companies, indenture trustees, investors, joint venture entities, lenders, lienholders, lessors, lessees, limited partners, litigation parties, noteholders, professionals, shareholders, and vendors to current and former AP clients in matters unrelated to the Debtors. JPMorgan is a current and former AP client in matters unrelated to the Debtors. JPMorgan is a former employer of current AP employees.

- Cleary Gottlieb Steen, a top 40 accounts payable party to the Debtors, and affiliates ("Cleary") is opposing counsel, client counsel, related party, litigation party and a professional to current and former AP clients in matters unrelated to the Debtors.  Cleary is a current and former AP client in matters unrelated to the Debtors.

- Commonwealth of Massachusetts, a taxing, licensing, regulatory, reclamation, bonding or permitting authority to the Debtors, is a adverse litigation party, professional, taxing authority and vendors to current and former AP clients in matters unrelated to the Debtors.

- Constellation Newenergy, a utility company to the Debtors, and affiliates ("Constellation") are adverse litigation parties, utility providers, vendors, creditors, contract parties, associated companies, insurance providers and litigation parties to current and former AP clients in matters unrelated to the Debtors.

- Continental Insurance Brokers, an insurance broker to the Debtors, and affiliates ("Continental") are adverse parties, adverse litigation parties, bondholders, creditors, customers, lenders, lienholders, litigation parties, insurance providers, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. CNA is a former employer of a current AP employee. CNA is an insurance provider to AP.

- Covia Europe APS, a major competitor of the Debtors, and affiliates ("Covia") are current AP clients in matters unrelated to the Debtors.

- Deloitte & Touche LLP, Deloitte Belastingadviseurs B.V., Deloitte Tax, LLP, ordinary course professionals of Debtors in this bankruptcy matter, and affiliates ("Deloitte") are professionals, adverse parties, associated companies, litigation parties, creditors, contract parties, auditors, related parties and vendors to current and former AP clients in matters unrelated to the Debtors. Deloitte is a current AP client in matters unrelated to the Debtors. Deloitte is a former employer of current AP employees. Deloitte is a vendor to AP.

- 15 -

- Direct Energy Business, a utility company to the Debtors, and affiliates ("Direct Energy") are adverse parties, contract parties, customers, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Direct Energy is a current AP client in matters unrelated to the Debtors. Direct Energy is a former employer of a current AP employee.

- Discovery Benefits, a major benefits administrator to the Debtors, are insurance providers, professionals and vendors to current and former AP clients in matters unrelated to the Debtors.

- Eaton Corporation, a major customer to the Debtors, and affiliates ("Eaton") are litigation parties, creditors, director-affiliated companies, customers, and vendors to current and former AP clients in matters unrelated to the Debtors.  Eaton is a current AP client in matters unrelated to the Debtors.  Eaton is a former employer of a current AP employee.

- Endurance American Insurance Company, an insurance provider to the Debtors, and affiliates ("Endurance") are adverse parties, adverse litigation parties, creditors, insurance providers, lenders, and litigation parties to current and former AP clients in matters unrelated to the Debtors. Endurance is a former AP client in matters unrelated to the Debtors.

- Epiq Corporate Restructuring, LLC, a claims, noticing, solicitation and administrative agent to the Debtors, and affiliates ("Epiq") are adverse litigation parties, professionals, vendors, creditors and adverse parties to current and former AP clients in matters unrelated to the Debtors.  Epiq is a former employer of current AP employees.

- Ernst & Young LLP, a proposed audit services provider to the Debtors, and affiliates ("E&Y") are professionals, contract parties, director-affiliated companies, adverse parties, related parties, litigation parties, vendors, creditors, and shareholders to current and former AP clients in matters unrelated to the Debtors. E&Y is a current AP client in matters unrelated to the Debtors. E&Y is a former employer of current AP employees. E&Y is a vendor to AP.

- Federal Insurance Company, an insurance provider to the Debtors, and affiliates ("FIC") are creditors, lenders, investors, insurance providers, bondholders, vendors, adverse litigation parties, related parties and contract parties to current and former AP clients in matters unrelated to the Debtors.  FIC is a current AP client in matters unrelated to the Debtors.  FIC is an insurance provider to AP.

- Fenix Consulting Delft BV, an ordinary course professional of Debtors in this bankruptcy matter, and affiliates ("Fenix") are professionals to current AP clients in matters unrelated to the Debtors. Fenix is a current AP client in matters unrelated to the Debtors.

- Fifth Third Bank, a beneficiary of letter of credit to the Debtors, and affiliates ("Fifth Third") are adverse parties, banking service providers, bondholders, contract parties, creditors, lenders, litigation parties, shareholders, related parties, and vendors to current

and former AP clients in matters unrelated to the Debtors. Fifth Third is a current and former AP client in matters unrelated to the Debtors. Fifth Third is a former employer of a current AP employee.

- Frontier Communications Corporation, a utility company to the Debtors, and affiliates ("Frontier") are creditors, contract parties, related parties, shareholders and vendors to current and former AP clients in matters unrelated to the Debtors. Frontier is a current and former AP client in matters unrelated to the Debtors. Frontier is a former employer to current AP employees.

- FTI Consulting, Inc. a proposed financial consultant to the Debtors, and affiliates ("FTI") are adverse parties, banking services providers, financial advisors, creditors, contract parties, lenders, litigation parties, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors. FTI is a former employer of current AP employees.

- Grant Thornton, an ordinary course professional to the Debtors in this bankruptcy matter, and affiliates ("Grant Thornton") are adverse parties, adverse litigation parties, associated companies, contract parties, creditors, customers, litigation parties, opposing counsel, professionals, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Grant Thornton is a current and former AP client in matters unrelated to the Debtors. Grant Thornton is a former employer of current AP employees.

- Halliburton Company and Halliburton Turkey  - BV Branch, parties to a material contract with the Debtors and major customers to the Debtors, and affiliates ("Halliburton") are adverse litigation parties, creditors, customers, contract parties, litigation parties, related parties and vendors to current and former AP clients in matters unrelated to the Debtors. Halliburton is a member of the UCC represented by AP in EP Energy Corporation, a matter unrelated to the Debtors. Halliburton is a former employer of current AP employees.

- Hartford, a surety provider to the Debtors, and affiliates ("Hartford") are adverse litigation parties, bondholders, contract parties, creditors, customers, insurance providers, lenders, lienholders, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Hartford is an insurance provider to AP.

- Haynes & Boone LLP, an ordinary course professional of Debtors in this bankruptcy matter, ("Haynes") is an adverse litigation party, professional, counsel, contract party, opposing counsel, related party and vendor to current and former AP clients in matters unrelated to the Debtors.  Haynes is a current and former AP client in matters unrelated to the Debtors.  Haynes provides legal services to AP.  Haynes is a former employer of current AP employees.

- Hi-Crush, a major competitor to the Debtors, and affiliates ("Hi-Crush") are creditors, customers, director's affiliated companies, related parties and vendors to current AP clients in matters unrelated to the Debtors. Hi-Crush is a former employer of current AP employees.

- HSBC, a cash management bank to the Debtors, and affiliates ("HSBC") are adverse parties, adverse litigation parties, banking services providers, bondholders, financial advisors, adverse litigation parties, creditors, customers, contract parties, indenture trustees, lenders, lessors, litigation parties, lienholders, related parties, professionals, shareholders, and vendors to current and former AP clients in matters unrelated to the Debtors.  HSBC is a current and former AP client in matters unrelated to the Debtors. HSBC is a former employer of current AP employees.  HSBC is a vendor to AP.

- Hunton Andrews, an ordinary course professional of Debtors in this bankruptcy matter, ("Hunton") is a professional to current and former AP clients in matters unrelated to the Debtors.  Hunton is a current and former AP client in matters unrelated to the Debtors.

- Internal Revenue Service, a taxing authority to the Debtors, ("IRS") is a vendor, adverse party, professional, related party, litigation party, and taxing authority to current and former AP clients in matters unrelated to the Debtors.  The IRS is a current and former AP client in matters unrelated to the Debtors.  The IRS is a former employer of current AP employees.

- Ironshore Specialty Insurance Company, an insurance provider to the Debtors, and affiliates ("Ironshore") are adverse parties, adverse litigation parties, creditors, insurance providers, lenders, and litigation parties to current and former AP clients in matters unrelated to the Debtors.  Ironshore is an insurance provider to AP.

- KPMG LLP, a proposed tax consultant to Debtors, and affiliates ("KPMG") are financial advisors, creditors, customers, contract parties, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.  KPMG is a former AP client in matters unrelated to the Debtors.  KPMG is a former employer of current AP employees.  KPMG provides auditing services to AP.  KPMG is a vendor to AP.

- LAZ Parking, a party to material unexpired lease with the Debtors (landlord), and affiliates ("LAZ") are lessors, related parties and vendors to current AP clients in matters unrelated to the Debtors. LAZ is a vendor to AP.

- Liberty Mutual, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company, insurance providers to the Debtors, and affiliates ("Liberty Mutual") are adverse litigation parties, bondholders, creditors, customers, contract parties, insurance providers, lenders, litigation parties, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Liberty Mutual is a current AP client in matters unrelated to the Debtors. Liberty Mutual is a former employer of a current AP employee. Liberty Mutual is a debtholder of AP.

- Livingston International Inc., a top 40 accounts payable to the Debtors, is a contract party, creditors, professional and vendor to current and former AP clients in matters unrelated to the Debtors.

- Lockton, a major benefits administrator to the Debtors, and affiliates ("Lockton") are adverse parties, creditors, customers, contract parties, insurance providers, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.  Lockton is a current AP client in matters unrelated to the Debtors.

- Microsoft Corporation, a top 40 accounts payable to the Debtors, and affiliates ("Microsoft") are lessors, creditors, vendors, shareholders, contract parties and related parties to current and former AP clients in matters unrelated to the Debtors. Microsoft is a current and former AP client in matters unrelated to the Debtors. Microsoft is a former employer of current AP employees. Microsoft is a vendor to AP.

- Norton Rose Fulbright, an ordinary course professional to the Debtors in this bankruptcy matter, and affiliates ("Norton") are lenders, professionals, related parties and vendors to current and former AP clients in matters unrelated to the Debtors. Norton Rose is a current and former AP client in matters unrelated to the Debtors.

- NSF International, a top 40 accounts payable to the Debtors, and affiliates ("NSF") are creditors, professionals and vendors to current AP clients in matters unrelated to the Debtors. NSF is a current AP client in matters unrelated to the Debtors.

- Okin Adams, a proposed counsel to the Debtors, is a professional to a former AP client in matters unrelated to the Debtors.

- Oklahoma Tax Commission, a taxing authority to the Debtors, is a taxing authority, vendor, bondholder, insurance provider, related party and professional to current and former AP clients in matters unrelated to the Debtors.

- Old Republic Insurance Company, an insurance provider to the Debtors, and affiliates ("Old Republic") are adverse litigation parties, creditors, insurance providers, litigation parties, lenders, related parties and vendors to current and former AP clients in matters unrelated to the Debtors. Old Republic is a former employer of current AP employees.

- Patterson & Sheridan, LLP, an ordinary course professional of Debtors, is a professional to current and former AP clients in matters unrelated to the Debtors.

- Perella Weinberg Partners LP, a proposed investment banker to the Debtors, and affiliates ("Perella") are creditors, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.

- Postlethwaite & Netterville, an ordinary course professional of Debtors in this bankruptcy matter, is a vendor to a current AP client in matters unrelated to the Debtors. Postlethwaite & Netterville is a former employer to current AP clients in matters unrelated to the Debtors.

- Prudential, a major benefits administrator to the Debtors, are adverse parties, adverse litigation parties, lenders, vendors, contract parties, professionals, lessors, creditors, noteholders, insurance providers, related parties, lienholders, customers, and bondholders to current and former AP clients in matters unrelated to the Debtors.  Prudential is a former

AP client in matters unrelated to the Debtors.  Prudential is a former employer of current AP employees. Prudential is a debtholder to AP.

- PSG GmbH, a major customer to Debtors, and affiliates are litigation parties, customers and vendors to current and former AP clients in matters unrelated to the Debtors.

- Randy L. Limbacher, a current officer or director to the Debtors, is an officer to current AP clients in matters unrelated to the Debtors.

- Ryan LLC, a ordinary course professional to the Debtors in this bankruptcy matter, is a contract party, professional, and vendors to current and former AP clients in matters unrelated to the Debtors. Ryan LLC is a former employer of current AP employees.

- Sentinel, a major competitor of Debtors, and affiliates ("Sentinel") are adverse parties, associated companies, contract parties, creditors, lenders, litigation parties, shareholders and vendors to current and former AP clients in matters unrelated to the Debtors.

- SHI International Corp., a top 40 accounts payable to the Debtors, and affiliates ("SHI") are contract parties, creditors, related parties and vendors to current and former AP clients in matters unrelated to the Debtors. SHI is a vendor to AP.

- Sterling Mechanical Services, a major customer to the Debtors, is an associated company to a current AP client in matters unrelated to the Debtors.

- StrataGen Inc., a Debtor in this bankruptcy matter, is a professional to a current AP client in matters unrelated to the Debtors.

- Stroock & Stroock & Lavan LLP, an ordinary course professional to the Debtors in this bankruptcy matter, ("SSL") is a professional, vendor and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  SSL is a current AP client in matters unrelated to the Debtors.

- Texas State Comptroller and Texas Comptroller of Public Accounts, taxing, licensing, regulatory, reclamation, bonding or permitting authorities to the Debtors, ("Texas Comptroller") are adverse parties, contract parties, related parties and taxing authorities to current and former AP clients in matters unrelated to the Debtors. Texas Comptroller is a member of the UCC represented by AP in EP Energy Corporation – UCC, a matter unrelated to the Debtors.

- The CIT Group/Equipment, a party to a material contract with the Debtors, and affiliates ("CIT") are adverse litigation parties, lenders, vendors, bondholders, lessors, lienholders, creditors, investors, related parties and contract parties to current and former AP clients in matters unrelated to the Debtors.  CIT is a former AP client in matters unrelated to the Debtors.  CIT is a former employer of current AP employees.

- Titan, a major competitor of Debtors, and affiliates ("Titan") are creditors, litigation parties, related parties, shareholders and vendors to current and former AP clients in matters unrelated to the Debtors.

- Verizon Wireless, a utility company to the Debtors, and affiliates ("Verizon") are adverse parties, contract parties, creditors, customers, lessors, litigation parties, parent companies, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors.  Verizon is a current and former AP client in matters unrelated to the Debtors. Verizon is a former employer of current AP employees.  Verizon is a vendor to AP.

- Vinson & Elkins LLP, a proposed counsel to the Debtors, ("Vinson") is an adverse litigation party, customer, professional, vendor, counsel and opposing counsel to current and former AP clients in matters unrelated to the Debtors.  Vinson is a current and former AP client in matters unrelated to the Debtors.

- Voya Financial, a major benefits administrator to the Debtors, and affiliates ("Voya") are lenders, customers, vendors, lienholders, noteholders, creditors, professionals, investors, shareholders, related parties and bondholders to current and former AP clients in matters unrelated to the Debtors. Voya is a current AP client in matters unrelated to the Debtors. Voya is a debtholder of AP.

- Waste Management of Colorado, a utility company to the Debtors, and affiliates ("Waste Management") are insurance providers, vendors, creditors, customers, litigation parties, contract parties, and related parties to current and former AP clients in matters unrelated to the Debtors. Waste Management is a former AP client in matters unrelated to the Debtors.

- Wells Fargo Bank N.A. and Wells Fargo Rail Corporation, unsecured creditors and parties to material unexpired leases with the Debtors (landlord), ("Wells Fargo") are adverse parties, adverse litigation parties, banking service providers, bondholders, creditors, customers, contract parties, indenture trustees, investors, lenders, lessees, lessors, lienholders, litigation parties, noteholders, professionals, related parties, shareholders, trustees, and vendors to current and former AP clients in matters unrelated to the Debtors. Wells Fargo is a current and former AP client in matters unrelated to the Debtors. Wells Fargo is a member of the UCC represented by AP in LBI Media, Inc., a bankruptcy matter unrelated to the Debtors. Wells Fargo is a former employer of current AP employees. Wells Fargo is a debtholder of AP.

- Wesco Integrated Supply, a major customer of Debtors, and affiliates ("Wesco") are adverse litigation parties, contract parties, creditors, insurance providers, joint venture entities and vendors to current and former AP clients in matters unrelated to the Debtors. Wesco is a current AP client in matters unrelated to the Debtors.

- Whitley Penn LLP, an ordinary course professional of Debtors in this bankruptcy matter, ("Whitley") is a professional to current AP clients in matters unrelated to the Debtors. Whitley is a current AP client in matters unrelated to the Debtors.

- Winstead PC, an ordinary course professional of Debtors in this bankruptcy matter, and affiliates ("Winstead") are adverse litigation parties, counsel, litigation parties and professionals to current and former AP clients in matters unrelated to the Debtors.

- XL Specialty Insurance Company, a party to a material contract with the Debtors, and affiliates ("XL") are bondholders, adverse litigation parties, creditors, insurance providers, lenders, lessors, contract parties, litigation parties, related parties and lenders to current AP clients in matters unrelated to the Debtors.  XL is an insurance provider to AP.

34.     AlixPartners and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, AlixPartners appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.  Further, AlixPartners has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be involved in these chapter 11 cases.  In addition, AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or in opposition to other professionals involved in these chapter 11 cases.  Moreover, AlixPartners might have referred work to other professionals who are retained in these chapter 11 cases.  Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to AlixPartners.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships constitute interests adverse to these chapter 11 cases.

35.     From time to time, AlixPartners has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases.  As described herein, however, AlixPartners has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant creditor, equity security holder, insider or other party in interest in such unrelated matters.

36.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of AlixPartners' personnel (a) have any connection with the U.S. Trustee, or any employee in the Office of the U.S. Trustee; or (b) are related or connected to any United States Bankruptcy Judge for the Southern District of Texas, Houston Division, except as otherwise set forth herein.

37.     To the best of my knowledge, none of the members of the engagement team or AP is a direct holder of any of the Debtors' securities.  It is possible that members of the engagement team or certain of AlixPartners employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtors' or other parties in interest's debt or equity securities or other financial instruments, including bank loans and other obligations. Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  AlixPartners' policy prohibits its employees from personally trading in the Debtors' securities.

38.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any entity or person other than the Committee on matters relating to, or in direct connection with, these chapter 11 cases.  AlixPartners will continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or other parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases.

39.     Certain of AlixPartners' employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with a potential party in interest.

40.     Despite the efforts described above to identify and disclose the connections that AlixPartners has with parties in interest in these chapter 11 cases, because the Debtors form a large enterprise with numerous creditors and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been identified and disclosed.

41.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these chapter 11 cases, (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

42.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, neither I, AlixPartners nor any AlixPartners' personnel holds or represents any interest adverse to the Committee, Debtors or their estates, and AlixPartners is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that AlixPartners and its professionals and employees who will work on the engagement:

> (a)  are not creditors, equity security holders, or insiders of the Debtors;
>
> (b)  were not, within two years before the Petition Date, a director, officer or employee of the Debtors; and
>
> (c)  do not have an interest materially adverse to the interest of the Debtors' estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

43.     If AlixPartners discovers additional information that requires disclosure, AlixPartners will promptly file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.   AlixPartners reserves the right to supplement this Declaration in the event that AlixPartners discovers any facts bearing on matters described in this Declaration regarding AlixPartners' employment by the Committee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


                                                    /s/ Richard Lee
                                                    _____
Date: May 22, 2020                                  Richard Lee
                                                    Managing Director

## <u>Schedule 1</u>

**Potential Parties in Interest**

| **Schedule** | **Category** |
|---|---|
| 1(a) | Debtors, Non-Debtor Affiliates, and Former Affiliates |
| 1(b) | Bankruptcy Judges and Key Court Personnel |
| 1(c) | Cash Management Banks |
| 1(d) | Known Common Stockholders >5% |
| 1(e) | Insurers, Insurance Brokers, and Surety Providers |
| 1(f) | Lenders |
| 1(g) | Current and Former Officers and Directors and Affiliations Thereof |
| 1(h) | Proposed Chapter 11 Professionals |
| 1(i) | Taxing, Licensing, Regulatory, Reclamation, Bonding, and Permitting Authorities |
| 1(j) | Top 40 Accounts Payable |
| 1(k) | United States Trustee's Office for the Southern District of Texas – Region 7 |
| 1(l) | United States Attorney's Office for the Southern District of Texas |
| 1(m) | Utilities |
| 1(n) | Major Customers |
| 1(o) | Major Competitors |
| 1(p) | Parties to Litigation or Potential Litigation |
| 1(q) | Ordinary Course Professionals |
| 1(r) | Known Professionals for Secured/Unsecured Lenders |
| 1(s) | Parties to Material Contracts with the Debtors (> $1 million in value remaining) |
| 1(t) | Counterparties to Joint Operating Contracts with the Debtors/Other Joint Venture Partners |
| 1(u) | Parties to Material Unexpired Leases with the Debtors (Landlords) |
| 1(v) | Major Benefits Administrators or Additional Third-Party Administrators |
| 1(w) | Material Suppliers and Vendors (greater than $1 million spend in the last 6 months) |
| 1(x) | Proposed DIP Lenders, Agents, and Related Parties |

## Schedule 1(a)

**Debtors, Non-Debtor Affiliates, and Former Affiliates**

Debtors
CARBO Ceramics, Inc.
StrataGen Inc.
Asset Guard Products Inc. f/k/a Falcon Technologies and Services, Inc.


Non-Debtor Affiliates
CARBO Ceramics (Mauritius)
CARBO Ceramics (China) Company Ltd
CARBO LLC
CARBO Ceramics (Canada) Inc.
CARBO International, Inc.
CARBO International, Inc. Branch Office
LLC CARBO International Eurasia
Natural Sciences LLC


Former Affiliates
CARBO Ceramics (UK) Limited
CARBO Ceramics (Eurasia) LLC
CARBO Ceramics Cyprus Limited

US 6910931

## <u>Schedule 1(b)</u>

### Bankruptcy Judges and Key Court Personnel

Chief Judge David R. Jones
Albert Alonzo
Vriana Portillo
Judge Christopher M. Lopez
Rosario Saldana
Kimberly Picota
Judge Marvin Isgur
LinhThu Do
Judge Jeffrey P. Norman
Mario Rios
Tracey Conrad
Judge Eduardo V. Rodriguez
Jeannie Chavez
Ana Castro
David J. Bradley (Clerk of the Court)

## <u>Schedule 1(c)</u>

**Cash Management Banks**

JPMorgan Chase N.A.
Wells Fargo Bank N.A.
Century Bank
State Bank of North Dakota
HSBC

**Schedule 1(d)**

**Known Common Stockholders >5%**

William C. Morris
FMR LLC
Wilks Brothers, LLC

## <u>Schedule 1(e)</u>

**Insurers, Insurance Brokers, and Surety Providers**

<u>Insurance Providers and Insurance Brokers</u>
AIG
AIG Insurance Company China Limited
AIG Specialty Insurance Co.
Beazley Insurance Company, Inc.
Continental Insurance Brokers
Endurance American Insurance Company
Factory Mutual Insurance Company
FCA Insurance Brokers
Federal Insurance Company
Illinois National Insurance Company
Ironshore Specialty Insurance Company
Liberty Mutual Fire Insurance Company
Liberty Mutual Insurance Company
Liberty Mutual Insurance Corporation
Malakut
Old Republic Insurance Company
Stephens Insurance
XL Specialty Insurance Company

<u>Surety Providers</u>
Lexon Insurance
Merchants
Harford

## **Schedule 1(f)**

### **Lenders**

<u>Senior Secured Lenders</u>
Wilks Brothers, LLC
Equify, LLC

<u>Other Parties Who Hold Letters of Credit/Issuers of Letters of Credit</u>
Chase Bank N.A. (Letter of Credit provider)
MUL Rail (beneficiary)
Fifth Third Bank (beneficiary)
Greenbrier (beneficiary)

**Schedule 1(g)**

**Current and Former Officers and Directors**

Current Officers and Directors
Sigmund L. Cornelius
Chad C. Deaton
Gary A. Kolstad (also Corporate Officer)
H. E. Lentz, Jr.
Randy L. Limbacher
Carla Mashinski
Ernesto Bautista, III
Don P. Conkle
Ellen M. Smith
Stephen Love
Shannon Nelson
Robert J. Willette

Former Officers and Directors (2 year)
Justin H. Wilks
Officers – Paul Howard, Roger Riffey
Directors - Justin H. Wilks, Robert Rubin's estate (deceased Board member), William C. Morris

## Schedule 1(h)

### Proposed Chapter 11 Professionals

FTI Consulting, Inc.
Perella Weinberg Partners LP
Tudor, Holt, Pickering & Co
Vinson & Elkins LLP
Epiq Corporate Restructuring, LLC
Okin Adams

**Schedule 1(i)**

**Taxing, Licensing, Regulatory, Reclamation, Bonding, and Permitting Authorities**

Louisiana Department of Revenue (102419)
Iberia Parish School Board (102218)
Alatax (101220)
Georgia Department of Revenue (102035)
Alabama Department of Revenue (101211)
Texas State Comptroller (103864)
North Dakota Office of Tax Commissioner (104599)
Oklahoma Tax Commission (106835)
Lafourche Parish School Board (110211)
Lafayette Parish School Board (102463)
Pointe Coupee Parish School Board
Wisconsin Department of Revenue (105282)
State of Ohio Treasurer (109436)
Caddo-Shreveport Sales and Use Tax Commission (105545)
Canada Revenue Agency

State of Ohio Treasurer (109436)
Delaware Secretary of State (101791)
Louisiana Department of Revenue
Commonwealth of Massachusetts
West Virginia State Tax Department
New York State
Florida Department of Revenue
Georgia Department of Revenue
Oklahoma Tax Commission
Alabama Department of Revenue
Texas Comptroller of Public Accounts
Illinois Department of Revenue
Colorado Department of Revenue
State of California
North Dakota Office of State Tax Commissioner
Alaska Department of Revenue
Pennsylvania Department of Revenue
Arkansas Department of Finance and Administration
New Mexico Revenue Department
Oklahoma Tax Commission
Kentucky Department of Revenue
State of California
Internal Revenue Service

Caddo Parish (LA)
Iberia Parish (LA)

Barbour County (AL)
Henry County (AL)
Wilkinson County (GA)
North Dakota (ND)
Brazos County  (TX)
Dallas County (TX)
Harris County (TX)
Jim Wells County (TX)
Travis County (TX)
Upton County (TX)
Town of Rock (WI)
Town of Wood (WI)
Wisconsin Dept of Revenue (WI)
Sweetwater County (WY)
City of Grande Prairie (CAN)
City of Leduc (CAN)

City of San Diego
Iberia Parish Government
Wyoming Secretary of State
Wyoming Secretary of State
Washington State Department

**Schedule 1(j)**

**Top 40 Accounts Payable**

ADVANCED HANDLING SYSTEMS INC.
ALL AMERICAN ARKANSAS POLY
BLEDSOE ARCILLA MINING & LAND COMPANY LLC
CO.BEAVER STEEL SERVICES, INC.
BLUEMODUS, INC.
BO'S WOOD PRODUCTS, INC.
BULK CHEMICAL SERVICES LLC
CANADIAN NATIONAL RAILROAD
CAPRO INDUSTRIES
CARIBOO CENTRAL RAILROAD
CFG COMMUNITY BANK
CHEMLINE INC
CLEARY GOTTLIEB STEEN
CHICAGO FREIGHT CAR LEASING
CS CREATIVE
DAKOT WEAR CERAMICS (PTY) LTD
DRIVES PLUS
EAST COAST TERMINAL COMPANY
ERNST & YOUNG LLP
EUFAULA PULPWOOD INC
FDF ENERGY SERVICES, LLC
GILSCOT-GUIDROZ INT'L
GORDY SIDETRACK CO INC
GUARANTEED RENTAL SERVICES
IIBD LTD
IMERYS KAOLIN FRACHT FWO INC
GREENBRIER LEASING COMPANY LLC
GREENBRIER MANAGEMENT SERVICES
GREENBRIER MANAGEMENT SERVICES LLC
INDUSTRIAL CHEMICALS, INC.
INDUSTRIAL MACHINE PIPING & WELDING MECHANICAL LLC
INTERSTATE INDUSTRIAL SANDS LLC
J H  WRIGHT & ASSOCIATES
KPMG LLP
LIVINGSTON INTERNATIONAL INC
IRAN GUADALUPE CARRASCO
KTJ 251 LLC
M-I L.L.C.
MICROSOFT CORPORATION
MIDWEST PROPPANT, LLC
NEW MEXICO TAXATION AND REVENUE DEP
NORFOLK SOUTHERN CORPORATION

NSF INTERNATIONAL
OAKLEY TRUCKING MOTION INDUSTRIES INC
PBR, INC
ROEHL TRANSPORTRITEKS, INC.
ROLANDO D PACHECO
SHI INTERNATIONAL CORP
SONNY GREER CONSTRUCTION LLC
TEXAS PACIFICO
THERMAFOAM OPERATING, LLC
TOTAL QUALITY LOGISTICS
WARD COUNTY AUDITOR
WELLS FARGO BANK
WELLS FARGO RAIL CORPORATION
WILDCAT MINERALS LLC

### Schedule 1(k)

### United States Trustee's Office for the Southern District of Texas – Region 7

Henry G. Hobbs, Jr., US Trustee
Diane Livingstone, Assistant U.S. Trustee
Hector Duran, Trial Attorney
Christine March, Trial Attorney
Stephen D. Statham, Trial Attorney
Jacqueline Boykin (Legal Data Technician)
Barbara Griffin (Bankruptcy Analyst)
Luci Johnson-Davis (Paralegal Specialist)
Linda Motton (Paralegal Specialist)
Glenn Otto (Bankruptcy Analyst)
Patricia Schmidt (Legal Assistant (Bankruptcy/OA))
Christy Simmons (Bankruptcy Analyst)
Gwen Smith (Legal Assistant (Bankruptcy/OA))
Clarissa Waxton (Bankruptcy Analyst)

## Schedule 1(l)

**United States Attorney's Office for the Southern District of Texas**

Ryan K. Patrick

**Schedule 1(m)**

**Utilities**

Alabama Power Company
AT&T
AT&T Mobility
Atmos Energy
Atmos Energy Louisiana
Big Bend Telephone Company Inc.
CCN Distributing Inc.
Central LA Electric Company
Century Link
Circle Sanitation Inc
City of Alice TX
Constellation Newenergy
CPL Business
Datavox Inc
Direct Energy Business
Dugas Oil Co., Inc
EAN Services LLC
Frontier Communications Corp.
Lassalle Gas Co., Inc.
Louisiana Water Company
Lytton Sanitation Services
Marshfield Utilities
Mississippi Welders
Oconee Electric Membership
Slemco
Southeast Gas
Verizon Wireless
Waste Management of Colorado
WE Energies
Weiler Fuels
Windstream Communications

**Schedule 1(n)**

**Major Customers**

ACCU-LINE WIRELINE SERVICES, LLC
AGSCO
All Seasons Foam Coating-Taxable
APPALACHIA TRANSFER SERVICES, LLC
ARCILLA MINING & LAND COMPANY LLC
Automatize Logistics, LLC.
Basic Concepts, Inc./IMG
Benmark Supply Comp
CARBO Ceramics Inc.
Carol Hall
CONCAST INC.
Danos, LLC
Dreschers Trucking
EATON CORPORATION
Edge Safety & Services
Elite Infrastructure
Environmental Containment Rings
Faulks Brothers Construction
FISHER CONTROLS INTERNATIONAL, LLC
GABRIEL MONTOYA
Go Foam LLC
Grinding & Dispersion Technologies
Halliburton Turkey - BV Branch
Hudbay Perú S.A.C.
Hydraulic & Fabrication Services
Janice M. Cigler
JPT TECHNOLOGIES
JustRite
KAORU IKUMA 515-294-7660
Kraken Oil and Gas
Lee Steier-Go Foam
Merrill Jamieson
O&G INDUSTRIES
OBSIDIAN CHEMICAL SOLUTIONS, LLC
Patriot Environmental
Petroplex Pipe & Construction
Precision Tank
PRESSURE PUMPING SERVICES
PRODUCTION TECHNOLOGY & SERVICES,
PRODUITS RLC, INC.
PSG GmbH

RKT Operating, LLC
Scala Energy Operating, LLC
SHELLY RUDOLF
SKULD LLC
Staghorn Petroleum II, LLC
Sterling Mechanical Services
STERNWEIS & SONS
Tall City Operations III
THE GASGUN LLC
TÜRKIYE PETROLLERI A.O.
TYR LOGISTICS
University of Adelaide
Vinicolor Indústria E Comércio De T
W&T Offshore
WBS Coatings, Inc.
WESCO INTEGRATED SUPPLY

## **Schedule 1(o)**

### **Major Competitors**

US Ceramics
Curimbaba
St. Gobain
CoorsTek
US Silica
Covia
Hi-Crush
Sentinel
Titan

**<u>Schedule 1(p)</u>**

**Parties to Litigation or Potential Litigation**

Well Site Supply
Midwest Proppant

## Schedule 1(q)

### Ordinary Course Professionals

ALSTON & BIRD LLP
AON CONSULTING, INC.
AXIOM MEDICAL CONSULTING LLC
BRACEWELL & GIULIANI LLP
BRACEWELL LLP
BRADLEY ARANT BOULT CUMMINGS LLP
BRICK & PATEL LLP
BROWN RUDNICK LLP
CARSTENS & CAHOON, LLP
CLEARY GOTTLIEB STEEN
DELOITTE & TOUCHE LLP
DELOITTE BELASTINGADVISEURS B.V.
DELOITTE TAX, LLP
ENSAFRICA
FENIX CONSULTING DELFT BV
FIELDSTONE EQUITY PARTNERS LLC
FISHERBROYLES LLP
GRANT THORNTON
HAN KUN LAW OFFICES
HARRY D SMITH CONSULTING
HAYNES AND BOONE LLP
HUNTON ANDREWS
INTERPONT
KPMG LLP
LELAND SNOW
LONGNECKER & ASSOCIATES
MSA PROFESSIONAL SERVICES INC
NORTON ROSE FULBRIGHT
PATTERSON & SHERIDAN LLP
POSTLETHWAITE & NETTERVILLE
RYAN LLC
STROOCK & STROOCK & LAVAN LLP
VELEZ CONSULTING
WHITLEY PENN LLP
WINSTEAD PC

## Schedule 1(r)

**Known Professionals for Secured/Unsecured Lenders**

Stroock & Stroock & Lavan LLP
Norton Rose Fulbright
Ankura Consulting

## Schedule 1(s)

**Parties to Material Contracts with the Debtors (> $1 million in value remaining)**

Halliburton Company
Dakot Group
Greenbrier Leasing Company LLC
Greenbrier Management Services LLC
Greenbrier Management Services
Wells Fargo Rail Corporation
The Cit Group/Equipment
Greenbrier Management Services
Smbc Rail Services LLC
XTO
Texas Pacifico Transportation, Ltd.
Beltway 8, NO. 5, LP
Kenerike Lemay, LLC
FRACSOLUTIONS Technologies LLC
ITHACA CENTRAL Railroad LLC
U.S. Oral Surgery Management LLC
The Oasis at Pavillion Parkway
Mineral Manufacturing Corporation

## **Schedule 1(t)**

## **Counterparties to Joint Operating Contracts with the Debtors/Other Joint Venture Partners**

FracGeo
Dakot Milling Media Proprietary Limited

## Schedule 1(u)

### Parties to Material Unexpired Leases with the Debtors (Landlords)

CHAMPION RESOURCES (Superior Derrick)
COVIA EUROPE APS
DAVID MCCORKLE
DAVIS STORAGE & WAREHOUSE, INC.
DIXIE INVESTMENTS LP
DSV AIR & SEA (LLC)
EAST COAST TERMINAL COMPANY
Executive Workspace
GBP WESTWAY HOUSTON, LLC
I-10 EC CORRIDOR #2 LP
IBERIA PARISH AIRPORT AUTHORITY
KTJ 251 LLC
LAZ PARKING
PARMA LAS COLINAS TOWERS LLC
PARMENTER LAS COLINAS
QINGDAO FREE TRADE ZONE LUHAI
RULEWAVE B.V.
WELL SITE SUPPLY, INC.
WELTHA J-K, LC
WILDCAT MINERALS LLC
YOUROFFICE-DENVER
PARAGON ERP MIDLAND, LLC

<u>**Schedule 1(v)**</u>

**Major Benefits Administrators or Additional Third-Party Administrators**

Voya Financial
Prudential
Lockton
BlueCross BlueShield of Texas
Liberty Mutual
ComPsych
MDLIVE
Discovery Benefits

## Schedule 1(w)

**Material Suppliers and Vendors (greater than $ 1 million spend in the last 6 months)**

ALABAMA POWER COMPANY
ARCILLA MINING & LAND COMPANY LLC
BANKDIRECT CAPITAL FINANCE
BLUE CROSS BLUE SHIELD OF TX
CANADIAN NATIONAL RAILROAD
CARBO INTERNATIONAL EURASIA LLC
CHEMLINE INC
COULEE FRAC SAND LLC
GILSCOT-GUIDROZ INT'L
GREENBRIER LEASING COMPANY LLC
GREENBRIER MANAGEMENT SERVICES
GREENBRIER MANAGEMENT SERVICES LLC
HANSEN SAND PRODUCTS, LLC
KTJ 251 LLC
MARAWOOD SAND & GRAVEL
OCONEE ELECTRIC MEMBERSHIP
PRUDENTIAL
ROEHL TRANSPORT, INC
SCANA ENERGY MARKETING
SOUTHEAST GAS
THERMAFOAM OPERATING, LLC
WILDCAT MINERALS LLC

## <u>Schedule 1(x)</u>

**Proposed DIP Lenders, Agents, and Related Parties**

Wilks Brothers, LLC
Equify, LLC

**<u>Exhibit C</u>**

**Engagement Letter**

**Alix**Partners

May 17, 2020

To The Official Committee of Unsecured Creditors of CARBO Ceramics Inc.

**Re:**    **Agreement for Intellectual Property Valuation Expert Services**

Dear Committee Members:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and the Unsecured Creditors Committee of CARBO Ceramics, Inc. (the "Company") and certain of its affiliates and subsidiaries (the "Committee") for the engagement of AlixPartners to provide intellectual property valuation expert services to the Committee with respect to the Company's Chapter 11 reorganization cases currently pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. The Committee and AlixPartners are each a "party," and together the "parties."

**Fair Market Value**

Fair Market Value is defined as the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. In performing this valuation, we assume that the existing business of the Company will be ongoing.

**Valuation Methodologies**

In valuing the intellectual property, AlixPartners will consider all relevant and appropriate valuation methodologies. The methodologies ultimately employed will be based on AlixPartners' judgment and experience in valuing other intellectual property as well as a review of the Company's intellectual property and its unique characteristics.

Any opinions offered shall be based solely on Richard Lee's judgment.

**Work Product**

AlixPartners' work product may include written reports, analysis, and worksheets to support the specific tasks as outlined above, and other materials in connection with the scope of services as described above. For the avoidance of doubt, AlixPartners' work product, including information, reports, analysis, and worksheets and other materials prepared or analyzed by AlixPartners in connection with these services may be distributed to the Committee and legal advisors. No part of AlixPartners' work product may, however, be otherwise reproduced, disseminated, quoted, or referred to with or without attribution to AlixPartners, at any time in any manner or for any purpose, without AlixPartners' prior written approval and receipt of AlixPartners' Report Access Letter. The Committee acknowledges and agrees that the rights under this Agreement are personal to it and may not be assigned or transferred to any other party. In the event of any breach of this

# AlixPartners

Unsecured Creditors Committee of CARBO Ceramics Inc.
May 17, 2020
Page 2 of 11

agreement by its officers, directors, employees, controlled affiliates, agents or legal advisors to whom it has provided the information, the Committee shall accept full liability for such breach. AlixPartners' work product is and will be subject to such qualifications and restrictions as are customary for us in such matters.

## Objectives and Tasks

AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners will likely perform is as follows:

- Estimate the value of the Company's intellectual property, including patents, patent applications, trademarks, domain names, developed software, customer contracts, and any other identified intellectual property.

- Development of valuation models pertinent to the identified intellectual property, including gathering market and industry information required to support various assumptions.

- Evaluate any proposed sale process of the Company's intellectual property and related bids and participate in any meetings with bidders or auction, as required.

- Assist in the review of the Company's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Company or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

In addition, the Committee acknowledges and agrees it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity before submitting its Work Product to the Committee.

## Staffing

Richard Lee will be the managing director responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may

**AlixPartners**

Unsecured Creditors Committee of CARBO Ceramics Inc.
May 17, 2020
Page 3 of 11

periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

**Timing and Fees**

AlixPartners commenced this engagement on May 17, 2020, pending Bankruptcy Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

If these terms meet with your approval, please sign and return a copy of this Agreement.

**Terms and Conditions**

The Committee agrees to all the terms of the Agreement, and the Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners and its principals, employees, subcontractors, representatives, agents and counsel, as set forth in Section 7 of the General Terms and Conditions.  Section 7 of the General Terms and Conditions provides that the Company will indemnify AlixPartners against certain claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement.

* * *

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Richard Lee

# **Alix**Partners

Unsecured Creditors Committee of CARBO Ceramics Inc.
May 17, 2020
Page 4 of 11

Managing Director

Acknowledged and Agreed to:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CARBO CERAMICS INC.

By:

Its:

Dated:

On behalf of the Official Committee of Unsecured Creditors of CARBO Ceramics Inc. and certain of its affiliates and subsidiaries.

**AlixPartners**

**Schedule 1**

**Fees and Expenses**

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$1,000 – US$1,195 |
| Director | US$800 – US$950 |
| Senior Vice President | US$645 – US$735 |
| Vice President | US$470 – US$630 |
| Consultant | US$175 – US$465 |
| Paraprofessional | US$295 – US$315 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3. **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5. **Retainer:** AlixPartners does not require a retainer in connection with this engagement, but we reserve the right to request a retainer in the future.

6. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt.

**AlixPartners**

**Data Protection Schedule**

**Processing, Personal Data and Data Subjects**

In connection with this Agreement, AlixPartners will not be receiving any Personal Data subject to the General Data Protection Regulation ((*EU*) *2016/679*) (the "GDPR") or any applicable legislation implementing any provisions of the GDPR as may be enacted time to time (together the "Data Protection Legislation").

**AlixPartners, LLP**
General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Committee Responsibilities

The Committee will undertake responsibilities as set forth below:

    1.  Use all reasonable efforts to cause the Company to provide AlixPartners with (i) reliable and accurate detailed information, materials, and documentation concerning the Company; and (ii) access to management and other representatives of the Company as reasonably requested by AlixPartners.

    2.  Make decisions and take future actions, as the Committee determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Committee's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Committee's management.

## Section 2. Billing, Payments and Taxes

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

## Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Committee.

AlixPartners is providing advisory and consulting services only, and will not make decisions for the Committee. While AlixPartners may from time to time suggest options available to the Committee, the ultimate decision as to such options rests with the Committee, and AlixPartners makes no promise or guarantee about the outcome of the Committee's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

## Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Committee's suppliers and/or vendors, in connection

| AlixPartners, LLP |
| General Terms and Conditions |

with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Committee and a general description of such services, but shall not provide any other information about its involvement with the Committee. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Committee in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law. The Committee may not rely on any draft or interim Work Product.

### Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Committee and delivers to the Committee as part of this engagement (collectively known as "Work Product") shall be owned by the Committee and shall constitute Committee Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement. In addition, the Committee acknowledges and agrees that before submitting its Work Product to the Committee, it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Committee shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Committee acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Committee are

provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement

The Committee acknowledges that it is retaining AlixPartners solely to assist and advise the Committee as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters

The Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners Parties (defined below), whereby:

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Committee. The Committee's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

### Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two-party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two-party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American

**AlixPartners, LLP**
General Terms and Conditions

Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Committee due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMMITTEE, THE COMMITTEE MEMBERS, THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

### Section 11. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Committee shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Committee will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

AlixPartners, LLP
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: General Counsel

and if to the Committee, to its retained counsel. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

### Section 12. Bankruptcy Related Matters

The Committee shall apply promptly to the Bankruptcy Court for approval of the Committee's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide services unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Committee shall assist, or cause their counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Committee and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Committee will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed

fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Committee; and (iii) the I/C must represent that he/she will not work for the Committee or other parties in interest in this case during the time AlixPartners is involved in providing services to the Committee. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

### Section 13. Data Protection

All capitalized terms used in this Section and not otherwise defined in this Agreement shall have the meanings given to them in the General Data Protection Regulation ((EU) 2016/679) (the "GDPR") and all applicable legislation implementing any provisions of the GDPR as may be enacted from time to time (together the "Data Protection Legislation").

The parties acknowledge and agree that, in performing services pursuant to this Agreement, AlixPartners may from time to time be required to Process certain Personal Data on behalf of the Committee. In such cases: (1) the Committee will ensure that it is lawfully permitted to transfer the Personal Data to AlixPartners for the purposes of AlixPartners performing services under this Agreement; and (2) AlixPartners shall (i) act as the Committee's Processor for the purposes of the Data Protection Legislation; (ii) only Process such Personal Data in accordance with the Committee's written instructions (including when making an international transfer of Personal Data) unless required to do so by law; (iii) implement appropriate technical and organizational measures to reasonably protect that Personal Data against unauthorized or unlawful Processing and accidental, unauthorized or unlawful loss, destruction, alteration, damage, disclosure or access; and (iv) obtain commitments from all AlixPartners' personnel who have access to and/or Process such Personal Data to keep such Personal Data confidential.

If AlixPartners is Processing Personal Data relating to individuals located in the EU or otherwise subject to the Data Protection Legislation, (x) AlixPartners and the Committee shall each comply with all relevant provisions of the Data Protection Legislation, and (y) the nature and extent of such Processing shall be set out in the GDPR Data Protection Schedule of this Agreement. AlixPartners shall, in relation to any Personal Data processed by AlixPartners in connection with this Agreement: (1) at the Committee's cost, assist the Committee in complying with its obligations

**AlixPartners, LLP**
General Terms and Conditions

as the Controller (or as Processor, as the case may be) of the Personal Data, to respond to requests from Data Subjects exercising their rights set out in Articles 12 to 22 of the GDPR; (2) notify the Committee without undue delay on becoming aware of a Personal Data Breach; (3) upon termination or expiration of this Agreement, at the written direction of the Committee either delete or return any Personal Data and any copies thereof to the Committee (except to the extent AlixPartners is required by law to retain such Personal Data, and except for Personal Data located on AlixPartners' disaster recovery or backup systems where it will be destroyed upon the normal expiration of the backup files); and (4) maintain appropriate records to demonstrate compliance with this Section.

AlixPartners is part of an international business, headquartered in the United States of America ("US"). AlixPartners may in the ordinary course of its business, including the performance of the services under this Agreement, transfer Personal Data received outside the US to its US-based affiliates. AlixPartners' US-based affiliates are certified under the EU-US Privacy Shield framework and any transfer of Personal Data from outside the US to its US-based affiliates will be transferred subject to, and in accordance with, the Privacy Shield requirements. AlixPartners' entities located in the EU have also entered into standard data protection clauses (in accordance with Article 46.2 (c) of the GDPR) with their non-EU-based affiliates. The Committee acknowledges and agrees that AlixPartners, as reasonably required for the performance of the services pursuant to this Agreement, be permitted to transfer Personal Data to its affiliates, subject to, and in accordance with, the Privacy Shield requirements and/or the aforementioned standard data protection clauses. Except as allowed above, AlixPartners shall not transfer any Personal Data received in the EU and subject to the Data Protection Legislation outside of the European Economic Area without the prior written consent of the Committee.

The Committee consents to AlixPartners appointing third party Processors of Personal Data under this Agreement. AlixPartners confirms that it will enter into a written agreement with any third-party Processor prior to supplying them with the Personal Data, incorporating terms which are substantially similar to those set forth in this Section. As between the Committee and AlixPartners, AlixPartners shall remain fully liable for all acts or omissions of any third-party Processor appointed by AlixPartners pursuant to this paragraph.